ELLEN F. ROSENBLUM
Attorney General
TRACY ICKES WHITE #904127
Senior Assistant Attorney General
ANDREW HALLMAN #083480
Assistant Attorney General
YUFENG LUO #184009
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email: Tracy.I.White@doj.state.or.us
        Andrew.Hallman@doj.state.or.us
        Yufeng.Luo@doj.state.or.us

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| PAUL MANEY; GARY CLIFT; GEORGE NULPH; THERON HALL; DAVID HART; MICAH RHODES; and SHERYL LYNN SUBLET, *individually, on behalf of a class of other similarly situated*,<br><br>                    Plaintiffs,<br><br>        v.<br><br>STATE OF OREGON; KATE BROWN, COLETTE PETERS; HEIDI STEWARD; MIKE GOWER; MARK NOOTH; ROB PERSSON; and KEN JESKE,<br><br>                    Defendants. | Case No.  6:20-cv-00570-SB<br><br>DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>**Request for Oral Argument** |

Page 1 -   DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
TIW/rrc/#10182925

## LR 7-1(A) CERTIFICATION

Counsel for defendants certify that the parties have conferred on this motion for partial summary judgment and the parties were unable to reach agreement.

## MOTION

Defendants move for partial summary judgment pursuant to Federal Rules of Civil Procedures 56.  Judgment should be granted on the damages part of the Eighth Amendment claim and the entirety of the negligence claim for the following reasons:

1. The damages portion of the Eighth Amendment claim is barred by qualified immunity[1].  There is no clearly established law regarding the appropriate response to the world-shaking COVID-19 pandemic.

2. The state claim for negligence is barred by the statutory doctrine of discretionary immunity.

This motion is supported by the declarations[2] previously filed in support of defendants' response to plaintiffs' motion for preliminary injunction.  In addition, this motion is supported by the Supplemental Declaration of Joe Bugher, accompanying this motion.

## LEGAL MEMORANDUM

### I.    Introduction.

The COVID-19 pandemic is an extraordinary event.  There is no controlling case law explaining how to address such a situation in the prison context.  Every country, every state, every institution is grappling to figure out how to handle the many complex issues that have arisen.  The Oregon Department of Corrections ("ODOC"), in particular, has taken enormous measures to adjust nearly every aspect of its institutions in order to mitigate the dangers to its Adults in Custody ("AICs").  Their extraordinary measures, combined with the unprecedented

---

[1] Defendants recognize that, at this juncture, the claim for injunctive relief on the § 1983 claim will continue, regardless of this motion.

[2] These are the Declarations of Heidi Steward (Doc. 83), Daniel Dewsnup (Doc. 84), Gary Russell (Doc. 85), Ken Jeske (Doc. 86), Joe Bugher (Doc. 87), Brandon Kelly (Doc. 88), Jacob Humphreys (Doc. 89).

        TIW/rrc/#10182925

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

nature of the pandemic, are more than sufficient to establish qualified immunity on the claim that they acted with deliberate indifference in violation of the Eighth Amendment.

Additionally, the steps the ODOC has taken have been made at the highest levels of State and ODOC government. The questions of how to address this unprecedented situation are inherently ones requiring discretionary judgment regarding policy and practice. As such, the State is protected by discretionary immunity from the negligence claim.

The Court should grant judgment in favor of defendants on 1) the damages portion of the Eighth Amendment claim., and 2) the entire negligence claim.

## II.    Undisputed facts.

### A.    The COVID-19 pandemic.

The unparalleled nature of the COVID-19 pandemic is undisputed.[3] COVID-19 first emerged in the United States in January 2020. *See* CDC Morbidity and Mortality Weekly Report (June 5, 2020).[4] It was previously called "2019 novel coronavirus." CDC Coronavirus Disease 2019 (COVID-19), "About COVID-19" (last updated June 16, 2020). The name reflects the nature of the disease—novel. It is so called because a "novel coronavirus is a new coronavirus that has not been previously identified." *Id.*

The virus quickly spread throughout the world. SAC ¶¶ 45, 46. Its sudden appearance and rise in the United States is documented in CDC data, particularly the graph entitled "New Cases by Day."[5] This data shows the chilling increase in disease prevalence in the United States from zero to more than four million cases in little more than six months. *Id.*

The disease was soon declared a pandemic by the World Health Organization ("WHO"). SAC ¶ 56 (pandemic declared on March 11, 2020). As defined by plaintiffs, "Pandemics occur

---

[3] The facts regarding the COVID-19 pandemic are taken from plaintiffs' Second Amended Complaint ("SAC") and the U.S. Centers for Disease Control and Prevention ("CDC").

[4] https://www.cdc.gov/coronavirus/2019-ncov/cdcresponse/about-COVID-19.htmlps://www.cdc.gov/mmwr/volumes/69/wr/mm6922e1.htm.

[5] *See* CDC Coronavirus Disease 2019 (COVID-19), "Cases in the U.S." (last accessed July 28, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

Page 3 -    DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

when a new virus emerges to infect people and can sustainably spread between people. Because there is little to no pre-existing immunity against the new virus, it spreads easily amongst humans." SAC ¶ 45 n.12.

The governor of Oregon declared a state of emergency on March 8, 2020; the president of the United States soon followed, declaring a national emergency on March 13, 2020. SAC ¶¶ 54, 57.

### B. The parties.

As set forth in the complaint, the plaintiffs are AICs held at various institutions within ODOC.[6] SAC ¶¶ 3-9. The plaintiffs allege that due to their age and/or medical conditions, they are at increased risk of COVID-19 infection and death. SAC ¶¶ 3-9. For the purposes of this motion, defendants do not dispute these allegations.

Defendants[7] are 1) the State of Oregon[8]; 2) Kate Brown, the Governor of Oregon; 3) Colette Peters, the Director of ODOC; 4) Heidi Steward, the Deputy Director of ODOC; 5) Mike Gower, the Assistant Director of Operations for ODOC; 6) Mark Nooth, the Eastside Administrator of ODOC; 7) Rob Persson, the Westside Institutions Administrator for ODOC; and 8) Ken Jeske, the Administrator for Oregon Corrections Enterprises[9]). SAC ¶¶ 10-17. Because the individuals manage some or all of ODOC's response to the COVID-19 crisis, many of the references below will refer simply to ODOC.

### C. Defendants' response to the pandemic.

The Court has been fully informed on defendants' response to the pandemic in the briefs and hearing on plaintiffs' motion for preliminary injunction. The Court has also issued an

---

[6] One plaintiff, Micah Rhodes, has since been released.

[7] Although the individual defendants are sued in both their official and their individual capacities, only the individual capacity allegations are at issue in this motion.

[8] The State of Oregon ("State") is the only new party added by the Second Amended Complaint. The State is a defendant only for the negligence claim.

[9] The Complaint incorrectly refers to "Oregon Correctional Industries." It is actually "Oregon Corrections Enterprises." *See* Jeske Declaration for discussion.

Page 4 -    DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
        TIW/rrc/#10182925

extensive ruling on the issue.  Therefore, rather than repeating all those facts here, defendants incorporate their response to plaintiffs' motion, including all the declarations.  (Doc. 82.)  In addition, defendants are submitting the Supplemental Declaration of Joe Bugher, which updates the Court on ODOC's continued and evolving response to the crisis.

In short, ODOC has taken numerous, concrete steps to prevent and control the spread of COVID-19 within its facilities.  The key components of ODOC's COVID-19 response are 1) education and tracking, 2) sanitation, hygiene, and personal protective equipment, 3) testing and medical care, 4) social distancing, 5) isolation and quarantine, and 6) screening protocols. These actions are set forth fully in the supporting declarations.  This Court has concluded that "ODOC has made a valiant effort to date to respond to the COVID-19 pandemic."  Doc. 108, Opinion and Order, *Maney v. Brown*, No. 6:20-CV-00570-SB, 2020 WL 2839423, at 32 (D. Or. June 1, 2020).  The Supplemental Bugher Declaration confirms that ODOC's efforts have evolved, but not diminished as the pandemic continues.

**D.  The claims.**

Plaintiffs challenge defendants' response to the COIVD-19 pandemic within ODOC.

Plaintiffs bring two claims.  The first claim is under 42 U.S.C. § 1983 for a violation of the Eighth Amendment.  Specifically, plaintiffs allege that defendants[10] are deliberately indifferent to the risk of harm presented by COVID-19.  This claim seeks injunctive relief as well as damages.  The damages are sought only for a limited, as-yet-uncertified group of AICs called the "Damages Class."  SAC ¶ 154.  This group allegedly consists of those AICS who have been continuously housed at ODOC since February 1, 2020 and have been diagnosed with COVID-19 illness.  SAC ¶ 20.  This motion is directed against only the damages portion of this claim.

---

[10]This claim can only be against the individual defendants in their individual capacities, not against the State.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (states are not persons under § 1983).

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

The second claim alleges the State's response to COVID-19 has been negligent.  This claim also seeks damages on behalf of the so-called "Damages Class."  SAC ¶¶ 157-158.  This motion is directed at the entirety of the negligence claim.

## III.   Standards for summary judgment.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011); see also Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute regarding a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial.  *Id.*  "This burden is not a light one * * *. The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

As explained below, plaintiffs cannot meet their burden in this matter.

## IV.   The Eighth Amendment claim for damages is barred by qualified immunity:  There is no clearly established law mandating the appropriate response to this pandemic.

Plaintiffs' Eighth Amendment claim for damages cannot prevail because defendants are protected by qualified immunity.  No ruling of the Supreme Court or Ninth Circuit has ever addressed the proper response to this type of situation, much less elevated the response to a constitutional requirement.  The Court in this very case has ruled that plaintiffs are not likely to be able to show deliberate indifference.  It is, therefore, impossible to find that defendants behaved in a way that clearly violated the law.

### A.   Qualified immunity standard.

Qualified immunity is a defense to damages claims brought under 42 U.S.C. § 1983. Qualified immunity applies when a government official's conduct ""does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.""" *White v. Pauly*, __ US __, 137 S. Ct. 548, 551 (2017) (citations omitted).  Qualified immunity is

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

extended in recognition that government officials must be given "breathing room to make reasonable but mistaken judgements" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted).

"Qualified immunity is 'an *immunity from suit* rather than a mere defense to liability.'" *Conner v. Heiman*, 672 F.3d 1126, 1130, *reconsid. denied*, 2012 WL 4613435 (9th Cir. 2012) (italics in original) (citation omitted). Thus, a ruling should be made early in the case when the defense is dispositive. *Id.; see also Saucier v. Katz*, 533 U.S. 194, 200 (2001) (qualified immunity should be ruled upon as early as practicable if it will be dispositive). "[D]etermination of whether the law governing the conduct at issue is clearly established is a question of law for the court." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).

There are two prongs to analyzing qualified immunity. *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). The first prong is whether the officer violated plaintiff's constitutional rights. *Id.* at 655-56. The second prong is whether the rights were "'clearly established' at the time of the violation." *Id.* at 656 (citation omitted). The prongs may be evaluated in any order. *Id.*

In order to avoid qualified immunity, "'"[E]xisting precedent must have placed the statutory or constitutional question beyond debate."'" *White,* 137 S. Ct. at 551 (citations omitted, brackets in original). Moreover, "the clearly established law must be 'particularized' to the facts of the case. * * * Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *Id.* at 552 (citation omitted, ellipses in original).

The Supreme Court has "'"repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality."'" *Kisela v. Hughes*, __ U.S. __, 138 S. Ct. 1148, 1152 (2018) (citation omitted). As the Ninth Circuit has made clear, "a plaintiff must prove that 'precedent on the books' at the time the officials acted 'would have made clear to [them] that [their actions] violated the Constitution.'" *Hamby v. Hammond*, 821 F.3d 1085 (9th Cir. 2016) (brackets in original) (quoting *Taylor v. Barkes*, 575 U.S. 822 (2015)).

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

**B.  Standard for showing deliberate indifference.**

Reviewing the clearly established law for Eighth Amendment claims makes plain that plaintiffs cannot establish that defendants acted with deliberate indifference, let alone that they should reasonably have known they were doing so.

Defendants note again that the Court has been fully briefed and has issued an extensive ruling on this topic.  Again, defendants incorporate their brief in response to plaintiffs' motion for preliminary injunction.

In short, conditions run afoul of the Eighth Amendment when they fall short of the two-part deliberate indifference test set forth in *Farmer v. Brennan*, 511 U.S. 825 (1994).  First, plaintiffs must show that the deprivations alleged are objectively sufficiently serious, posing "a substantial risk of serious harm." *Id.* at 834.

Second, plaintiffs must show that the defendant is "deliberately indifferent" to the plaintiff's well-being.  *Farmer,* 511 U.S. at 834.  The standard "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  *Id.* (citation omitted).  Deliberate indifference is greater than mere negligence, and it requires a showing that the "official [knew] of and [disregarded] an excessive risk to inmate health or safety." *Id.*  Furthermore, prison officials who are aware of a substantial risk to health or safety "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 842.

There is one more requirement for this claim:  Plaintiffs must show that each individual defendant was personally involved in the alleged constitutional deprivation, or that there is a sufficient causal connection between each individual's wrongful action or inaction and the constitutional violation.  *Starr v. Baca*, 652 F.3d 1202, 1207, *rehearing en banc denied,* 659 F.3d 860 (9th Cir. 2011), *cert. denied,* 556 U.S. 982 (2012).  In other words, vicarious liability is not allowed.  *Id.*  As applied to this case, plaintiffs cannot establish deliberate indifference of the individual defendants based on anecdotes of line employees acting contrary to policy without

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

defendants' knowledge, acquiescence, or reckless indifference. *Id.* at 1207-08. For instance, isolated examples of employees without masks, shortages of cleaning materials, and the like, would not be deemed deliberate indifference by defendants, absent additional evidence of wrongdoing.

In evaluating qualified immunity for deliberate indifference claims, the analysis is less on whether the defendants subjectively believed they could be violating the constitution, and more on whether, given the available case law, a reasonable person in defendants' position would have understood that their actions were unconstitutional. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 600 (9th Cir. 2019).[11]

### C. Defendants have not been deliberately indifferent regarding the pandemic.

The Court has already concluded that, as of the date of its opinion on June 1, 2020, "ODOC has not acted with indifference. On the contrary, the evidence that Defendants presented made it clear that ODOC officials are already doing their best in response to this unprecedented crisis." Doc. 108, Opinion and Order at 5. "In sum, the Court finds that to date, Defendants have responded reasonably to the serious risks posed by the COVID-19 pandemic, and Plaintiffs are therefore unlikely to succeed in demonstrating that Defendants acted with deliberate indifference." *Id.* at 38.

While the Court's opinion necessarily addresses only the situation as of that date, there is no evidence that defendants' efforts since then have diminished. Rather, ODOC's "valiant" efforts have continued and evolved along with the situation. *See* Supplemental Declaration of Joe Bugher.

---

[11] The Court in *Horton* appears to define the objective standard to include not just whether there is a situation that is objectively serious, but whether there is clear authority that would cause a reasonable person to know that particular conduct in that situation would violate the constitution. *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 600 (9th Cir. 2019) This is distinguished from the subjective state of mind of the defendant.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Because there has been no weakening in ODOC's response since the hearing, the Court's finding should be conclusive of the qualified immunity defense, as well as defendants' right to prevail on the merits of the Eighth Amendment Claim.

### D.  There is no clearly established law regarding this unprecedented situation.

#### 1.  This Court's ruling precludes a finding that defendants should know their response to the pandemic is unconstitutional.

Despite the above, defendants recognize that the Court may find there to be a material dispute of fact as to whether defendants' ongoing response to the pandemic continues to live up to the constitutional standard—though defendants contend their response remains solid. Nevertheless, the Court's ruling supports qualified immunity in two ways.

First, the Court's conclusion indicates that even if defendants could conceivably be deemed deliberately indifferent, such a finding is unlikely.  If the Court could not find that defendants were probably violating the Constitution, defendants likewise could not have reasonably known they were doing so.  *See White,* 137 S. Ct.  at 551 ("'"[E]xisting precedent must have placed the statutory or constitutional question beyond debate."'") (citations omitted, brackets in original).

Second, the Court's ruling in itself would cause any reasonable party in defendants' position to believe their response was appropriate and to continue along that path.  Unless plaintiffs can show that defendants' response has drastically deteriorated since the hearing (which is not true), defendants could not reasonably have believed they should act differently.

Under these circumstances, it would be illogical to find that the defendants violated any clearly established rights of which they should have known.

#### 2.  There is no controlling law establishing how prison officials should respond to a pandemic of this nature.

Besides the Court's decision, there is no unambiguous, controlling authority that would demonstrate to defendants how they should respond to the COVID-19 pandemic.

Page 10 -  DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
TIW/rrc/#10182925

It is undisputed that COVID-19 is a once-in-a generation disease; a "novel" virus; a condition that is disrupting the world. No case could have, or does, establish rules for how prison officials must respond to this unique situation. To the best knowledge of defense counsel, there are no published cases from the Ninth Circuit or Supreme Court setting forth the requisite constitutional standard for prisons in light of COVID-19.

It is true that the Supreme Court has established that willful indifference to an inmate's risk of disease could implicate the Eighth Amendment. *See, e.g., Helling v. McKinney*, 509 U.S. 25, 33 (1993) (prison authorities may not "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year.").

It would be incorrect, however, to apply *Helling's* general proposition to hold officials liable for failing to enact particular containment strategies in response to COVID-19. This would violate the Supreme Court's frequent exhortations not to conduct the inquiry at a high level of generality.

As a recent example of the level of specificity required when making qualified immunity inquiries, the Ninth Circuit framed a suit by inmates exposed to a heightened risk of Valley Fever as adjudicating "the right to be free from heightened exposure to Valley Fever.*" Hines v. Youseff*, 914 F.3d 1218, 1229 (9th Cir.), *cert denied,* 140 S. Ct. 159 (2019).

This is not to say that existing precedent must discuss *identical* facts. Blatantly egregious conduct that violates the constitution, even if under novel circumstances, is not protected. *Hines*, 914 F.3d at 1230. However, there does need to be controlling precedent which places the issue "'beyond debate;'" that means the authority must be "from the Ninth Circuit or the Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction.'" *Martinez v. City of Clovis*, 943 F.3d 1260, 1275 (9th Cir. 2019) (citation omitted).

Here, there is no controlling law or consensus dictating the proper response to this situation. Courts around the country have been confronted with the difficult task of adjudicating COVID-19 related cases in the prison context. If the alleged conduct were obviously unlawful,

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

one would expect courts uniformly to find a likelihood of Eighth Amendment violations in cases where prison officials have taken measures that were imperfect. But courts have largely found the opposite – foreclosing the possibility of defendants overcoming qualified immunity.[12] Although these cases are very fact-specific and focus on the subjective component of deliberate indifference, prison administrators might reasonably view these and similar cases and determine that their own conduct does not run afoul of the Eighth Amendment.

In light of the Court's own decision in this very case, the decisions of other courts, and the lack of decisions from the Ninth Circuit or Supreme Court, defendants cannot be found to have violated any clearly established rights. They are thus entitled to qualified immunity on damages.

The Court should grant judgment for defendants on the damages portion of the Eighth Amendment claim

## V.    Negligence claim fails because the State has discretionary immunity.

Plaintiffs also sue the State of Oregon for negligence under the Oregon Tort Claims Act, Or. Rev. State. Chap. 30. However, the Act grants immunity for "any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Or. Rev. Stat. § 30.265(6)(c).

"Discretionary immunity applies to policy judgments made by a person or body with governmental discretion that are 'decisions involving the making of policy, but not to routine

---

[12] *See Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020) (Eighth Amendment claim unlikely to succeed where dormitory style living made physical distancing impossible and where testing capacity was limited); *Swain v. Junior*, 961 F.3d 1276 (11th Cir. 2020) (impossibility of achieving social distancing does not establish deliberate indifference for Eighth Amendment purposes in light of other efforts); *Money v. Pritzker*, No. 20-CV-2093, 2020 WL 1820660 (N.D. Ill. Apr. 10, 2020) (fact that AICs live, eat, and sleep in close quarters where social distancing is impossible does not establish Eighth Amendment violation); *Sanchez v. Brown*, No. 3:20-CV-00832-E, 2020 WL 2615931 (N.D. Tex. May 22, 2020) (finding no Eighth Amendment violation in prison context even where six feet of social distancing was not possible); *Frazier v. Kelley*, No. 4:20-CV-00434-KGB, 2020 WL 2561956 (E.D. Ark. May 19, 2020) (fact that six feet of social distance between AICs was not able to be maintained at all times along with evidence suggesting AICs with claimed symptoms of COVID-19 were being denied testing unlikely to violate Eighth Amendment).

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

decisions made by employees in the course of their day-to-day activities, even though the decision involves a choice among two or more courses of action.'" *Rush v. Corvallis School District 509J*, 291 Or. App. 252, 256 (2018) (citation omitted).

Discretionary immunity has three criteria:  the decision "must be the result of a choice, that is, the exercise of judgment; that choice must involve public policy, as opposed to the routine day-to-day activities of public officials; and the public policy choice must be exercised by a body or person that has, either directly or by delegation, the responsibility or authority to make it." *Ramirez v. Hawaii T&S Enterprises, Inc.*, 179 Or. App. 416, 419, *rev. denied*, 335 Or. 114 (2002).

All the requirements for discretionary immunity are met here.

First, the decisions involve the exercise of judgment.  The State had to choose the best methods to apply CDC and Oregon Health Authority guidelines and the rapidly evolving science on COVID-19 to the particular situations within each of its fourteen institutions.  This fully aligns with the nature of a discretionary decision, as explained by the Oregon Supreme Court:

> "'In other words, insofar as an official action involves both the *determination of facts and simple cause-and-effect relationships and also the assessment of costs and benefits, the evaluation of relative effectiveness and risks, and a choice among competing goals and priorities,* an official has 'discretion' to the extent that he has been delegated responsibility for the latter kind of value judgment.'"

*Mosley v. Portland School Dist. No. 1J*, 315 Or. 85, 90 (1992) (citation omitted; emphasis added).

 Second, the choice was one of public policy.  It was no ordinary, day-to-day decision by a low-level employee.  On the contrary, again, it has been a careful balancing act to determine what practices should be followed, how they should change over time, how they should be enforced, and how—if it all-they should differ by institution.  Defendants have had to weigh the practical considerations against the public policy concerns of safety for AICs, staff, and the public; institutional order; and their statutory obligations under Or. Rev. Stat. § 423.020(1)(a-c).

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

*See* Supp. Bugher Decl ¶ 17. None of these decisions were routine decisions. Rather, they were ones that have fundamentally altered the daily functioning of every state prison in Oregon.

Third, the decisions have been made by the highest-ranking people in the Oregon Department of Corrections and of the State. As set forth in the declarations and the Complaint, the defendants are the Governor of Oregon, the Director of ODOC, the Deputy Director of ODOC, the Assistant Director of Operations for ODOC, the Eastside Administrator of ODOC, the Westside Institutions Administrator for ODOC, and the Administrator for Oregon Corrections Enterprises. These are the people charged with the responsibility for making the difficult, and therefore discretionary, decisions about managing and setting the course for ODOC.

Defendants anticipate that plaintiffs may argue that some of the alleged problems stem from the actions of on-the-ground line employees in applying policies. However, that is not what the specifications of negligence primarily allege. Rather, they challenge policies regarding a) mask requirements, b) screening, c) sanitation and disinfection, d) staff training, e) social distancing and release, f) testing, g) quarantining AICs pending test results, h) quarantining AICs after transfers, i) canceling programs, and j) housing for AICs diagnosed with COVID-19. SAC ¶ 154. In other words, plaintiffs' allegations of negligence are based on defendants' policies themselves, and not on an alleged failure to properly implement those policies.

All the criteria for discretionary immunity have been met. Discretionary immunity applies here to mandate judgment for defendants on the negligence claim.

## VI. Conclusion

As a matter of law, defendants have established two types of immunity.

First, the individual defendants are protected by qualified immunity from the damages portion of the first claim for relief (Eighth Amendment). Not only have they behaved reasonably in the face of a bewilderingly rapid pandemic, but they have done so with no clear legal authority

Page 14 -  DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT
TIW/rrc/#10182925

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

to guide them.  As such, their conduct cannot and does not violate plaintiff's clearly established rights.

Second, the State is protected by discretionary immunity from the second claim for relief (negligence).  All its decisions about how to respond to the COVID-19 pandemic have been policy judgments made by high-ranking government officers applying their discretion with little guidance under unique circumstances.  This is the exact type of situation that calls for the protection of discretionary immunity.

Defendants respectfully ask the Court to grant this motion and to dismiss the damages portion of the Eighth Amendment claim (and thereby the individual defendants in their individual capacities) and the whole of the negligence claim (and thereby the State as a defendant).  This would leave only the claim for injunctive relief against the official capacity defendants.

DATED August  3  , 2020.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


       s/ Tracy Ickes White
TRACY ICKES WHITE #904127
Senior Assistant Attorney General
Trial Attorney
ANDREW HALLMAN #083480
Assistant Attorney General
YUFENG LUO #184009
Assistant Attorney General
Tel (503) 947-4700
Fax (503) 947-4791
Tracy.I.White@doj.state.or.us
Andrew.Hallman@doj.state.or.us
Yufeng.Luo@doj.state.or.us
Of Attorneys for Defendants

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791