IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAUL MANEY; GARY CLIFT; GEORGE
NULPH; THERON HALL; DAVID HART;
MICAH RHODES; SHERYL LYNN
SUBLET; and FELISHIA RAMIREZ,
personal representative for the ESTATE OF
JUAN TRISTAN, individually, on behalf of a
class of other similarly situated,

Plaintiffs,

v.

KATE BROWN; COLETTE PETERS;
HEIDI STEWARD; MIKE GOWER; MARK
NOOTH; ROB PERSSON; KEN JESKE;
PATRICK ALLEN; JOE BUGHER; GARRY
RUSSELL; and STATE OF OREGON,

Defendants.

Case No. 6:20-cv-00570-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiffs Paul Maney, Gary Clift, George Nulph, Theron Hall, David Hart, Micah

Rhodes, and Sheryl Lynn Sublet, adults in custody ("AIC") at four Oregon Department of

Corrections ("ODOC") institutions, and Felishia Ramirez, the personal representative for the

Estate of Juan Tristan (together, "Plaintiffs"), filed a fourth amended complaint ("FAC") alleging

PAGE 1 – OPINION AND ORDER

constitutional and state law violations against defendants Governor Kate Brown ("Governor Brown"), Oregon Health Authority ("OHA") Director Patrick Allen ("Director Allen"), several ODOC officials, and the State of Oregon (together, "Defendants").

Now before the Court is Defendants' motion to dismiss and motion to strike portions of Plaintiffs' FAC (ECF No. 245), Plaintiffs' motion for entry of an order of dismissal without prejudice of plaintiff Micah Rhodes ("Rhodes") (ECF No. 249), Defendants' request pursuant to the Court's informal discovery dispute resolution procedure to take additional depositions and interview AICs, and Plaintiffs' request to compel Defendants to produce the names of any AICs who have received positive COVID-19 antibody test results. The Court has jurisdiction over this matter under 28 U.S.C. §§ 1331, 1343(a)(3)-(4), and 1367, and all parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636.

For the reasons discussed below, the Court grants in part and denies in part Defendants' motion to dismiss, denies Defendants' motion to strike, grants in part Defendants' motion to compel, grants Plaintiffs' motion to compel, and grants Plaintiffs' motion to dismiss plaintiff Rhodes without prejudice.

## BACKGROUND

Plaintiffs filed this action in April 2020, alleging that Defendants (1) violated the Eighth Amendment by acting with deliberate indifference to their health and safety by failing adequately to protect them from COVID-19 through social distancing, testing, sanitizing, medical treatment, masking, and vaccines, and (2) were negligent in failing to carry out proper preventative measures. (*See* ECF No. 1.) Plaintiffs assert allegations on behalf of themselves and a class of similarly situated AICs, and propose three classes: (1) the "Damages Class"; (2); the "Vaccine Class"; and (3) the "Wrongful Death Class." (FAC ¶¶ 24-26.)

On August 3, 2020, Defendants moved for partial summary judgment on the damages portion of Plaintiffs' Eighth Amendment claim and on the entirety of Plaintiffs' state negligence claim. (ECF No. 115.) On December 15, 2020, the Court granted in part and denied in part Defendants' motion for partial summary judgment. (Mot. Summ. J. Op. & Order, ECF No. 149.)

On January 21, 2021, Plaintiffs moved for a preliminary injunction requiring ODOC to offer all AICs housed in ODOC facilities a COVID-19 vaccine, and sought provisional class certification of the Vaccine Class, which includes: "All adults in custody housed at Oregon Department of Corrections facilities (ODOC) who have not been offered COVID-19 vaccinations." (Pls.' Mot. Prelim. Inj.; Pls.' Mot. to Certify Class at 2.) On February 2, 2021, the Court granted Plaintiffs' motion for provisional class certification of the Vaccine Class and motion for a preliminary injunction, ordering Defendants to "offer all AICs housed in ODOC facilities, who have not been offered a COVID-19 vaccine, a COVID-19 vaccine as if they had been included in Phase 1A, Group 2, of Oregon's Vaccination Plan." (Mot. Prelim. Inj. Op. & Order at 34.)

On May 3, 2021, Plaintiffs filed the FAC and a motion to certify the Damages Class and Wrongful Death Class. (ECF Nos. 223 and 203.) Defendants now move to dismiss and to strike portions of Plaintiffs' FAC, and request leave to conduct additional discovery. Plaintiffs move for an order dismissing plaintiff Rhodes without prejudice, and ask the Court to compel Defendants to disclose the names of all AICs who have received positive results on a COVID-19 antibody test.

///

///

///

**DISCUSSION**

## I.    STANDARDS OF REVIEW

### A.    Rule 12(f)

Under Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "A matter is immaterial if it has no essential or important relationship to the claim for relief or the defenses being pleaded." *Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 271 (N.D. Cal. 2015). "A motion to strike should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject matter of the litigation." *Menchu v. Multnomah Cnty. Health Dep't*, No. 3:20-cv-00559-AC, 2021 WL 2450780, at *3 (D. Or. May 3, 2021) (quoting *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004)). "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Id.*

### B.    Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure governs motions to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "'The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quoting *Twombly*, 550 U.S. at 556).

### C.    Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure governs motions to dismiss for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). When a party challenges subject matter jurisdiction, the burden of proof is on the party asserting that jurisdiction exists. *See Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (holding that "[t]he party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists") (citations omitted).

## II.    ANALYSIS

### A.    Motion to Strike

Defendants move this Court for an order striking allegations from Plaintiffs' FAC relating to Defendants' alleged failure to release AICs from custody during the COVID-19 pandemic. (Defs.' Mot. to Dismiss & Mot. to Strike ("Defs.' Mot.") at 4-8.) Specifically, Defendants argue that the Court should strike paragraphs 46-49, 86-93, and 110(e) of the FAC as immaterial based on the Court's prior ruling that discretionary immunity precludes Plaintiffs from pursuing a negligence claim based on the State's alleged "fail[ure] to release or relocate AICs to allow for adequate social distancing[.]" (Mot. Summ. J. Op. & Order at 21-22; Defs.' Mot. at 4-5; *see also United States v. Jingles*, 682 F.3d 811, 817 (9th Cir. 2012) ("Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." (quoting *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988)))).

Plaintiffs do not dispute that in light of the Court's prior ruling, their allegations relating to the failure to release AICs are immaterial to their negligence and wrongful death claims. Rather, Plaintiffs argue that the allegations are relevant to their Eighth Amendment deliberate indifference claims because Defendants' knowledge of the inability to socially distance within ODOC facilities coupled with their decision not to release AICs from ODOC custody to ensure

proper social distancing "tends to establish that Defendants knew of and disregarded an excessive risk to inmate health or safety." (Pls.' Opp'n to Defs.' Mot. ("Pls.' Opp'n") at 8.)

"Allegations in a complaint should not be stricken when they provide relevant background information or are 'arguably relevant' to an actionable claim." *Menchu*, 2021 WL 2450780, at *6 (citation omitted); *see also Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1085 (S.D. Cal. 2017) ("[A]llegations that provide background information, historical material, 'or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to defendant.'" (quoting *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 773 (N.D. Cal. 2010))).

Paragraphs 46-49 of the FAC include allegations that at least twenty-four other jurisdictions across the United States have released AICs from correctional facilities to prevent COVID-19 outbreaks, and that Defendants have not implemented similar measures. (FAC ¶¶ 46-49.) Paragraphs 86-90 include allegations that experts agree that downsizing prison populations is the most important tool to combat the spread of COVID-19 among residents, staff, and the community. (*See id.* ¶¶ 86-90, alleging that public health experts and corrections officials have advocated for "[d]ownsizing jail populations" to "allow[] those who remain incarcerated to better maintain social distancing," "reduce the risk of contraction and transmission of COVID-19," "reduce the level of risk [for AICs] within those facilities," and "flatten the curve of COVID-19 cases among incarcerated populations and limit the impact of transmission . . . inside correctional facilities"). In paragraphs 91-93, Plaintiffs identify the mechanisms by which Defendants could release AICs (e.g., early release, clemency, house arrest), allege that AICs "should be provided the adequate care recommended by health experts, including their release if safe," and assert that the Court "may find it necessary" to "request the convening of a three-judge court to determine

whether a prisoner release order should be entered." (*Id.* ¶¶ 91-93.) Finally, Plaintiffs alleged in

paragraph 110(e) that Defendants were negligent by "failing [to] arrange for alternative housing,

transfers, alternative incarceration, or, if necessary, release to achieve necessary social

distancing." (*Id.* ¶ 110(e).)

The Court declines to strike these allegations from the FAC. Paragraphs 46-49 and 86-93

provide relevant background and context to Plaintiffs' claims, are "arguably relevant" to

Plaintiffs' deliberate indifference claim, and are not unduly prejudicial to Defendants. *See*

*Epstein v. United States*, No. 16-cv-2929-BAS (WVG), 2017 WL 4227054, at \*4 (S.D. Cal.

Sept. 21, 2017) ("[S]triking this material from the TAC is unnecessary because the Court regards

such material as providing background information only."); *Dettrich v. Shinseki*, No. CIV. 1:10-

434 WBS, 2011 WL 3204729, at \*7 (D. Idaho July 26, 2011) ("The court is not convinced that

inclusion of these allegations is redundant, immaterial, impertinent, or scandalous. Simply

because a particular word, phrase, or fact in a complaint might not entitle plaintiff to recover

does not bar plaintiff from asserting additional historical or background information."). With

respect to paragraph 110(e), Defendants represent that Plaintiffs offered to replead paragraph 110

to challenge only Defendants' implementation and enforcement of social distancing policies

throughout ODOC's facilities as a basis for their negligence claim. (Defs.' Mot. at 5.) The Court

agrees with that approach and orders Plaintiffs to amend paragraph 110 in their fifth amended

complaint. Otherwise, the Court denies Defendants' motion to strike.

### B.    Motion to Dismiss

Defendants argue that Plaintiffs' class claim for injunctive relief related to the

prioritization and distribution of the COVID-19 vaccine is now moot because Defendants have

offered the vaccine to all AICs, and that Plaintiffs fail to state a claim against Governor Brown and Director Allen.[1]

### 1.    Mootness

Defendants argue that Plaintiffs' claim for injunctive relief related to the prioritization and distribution of the COVID-19 vaccine is moot because Defendants have already made COVID-19 vaccines available to all AICs. The Court agrees.

"The doctrine of mootness, which is embedded in Article III's case or controversy requirement, requires that an actual, ongoing controversy exist at all stages of federal court proceedings." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017) (quoting *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011)). A claim is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980). If a claim is moot, a federal court lacks subject matter jurisdiction. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'") (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)). "The question of mootness 'focuses upon whether we can still grant relief between the parties.'" *Dream Palace v. Cnty. of Maricopa*, 384 F.3d 990, 999-1000 (9th Cir. 2004) (quoting *In re Pattullo*, 271 F.3d 898, 901 (9th Cir. 2001)). "The party asserting mootness bears the heavy burden of establishing that there remains no effective relief a court can provide." *Bayer*, 861 F.3d at 862.

---

[1] Defendants also move to dismiss Plaintiffs' Eighth Amendment claim to the extent it is premised on Defendants' alleged failure to release AICs from ODOC custody. (Defs.' Mot. at 8.) Plaintiffs acknowledge that they "do not allege a deprivation of their Eighth Amendment rights based on a failure by Governor Brown to release them." (Pls.' Opp'n at 11.)

On February 2, 2021, the Court granted Plaintiffs' motion for a preliminary injunction and entered the following order with respect to the Vaccine Class: "Defendants shall offer all AICs housed in ODOC facilities, who have not been offered a COVID-19 vaccine, a COVID-19 vaccine as if they had been included in Phase 1A, Group 2, of Oregon's Vaccination Plan." (Mot. Prelim. Inj. Op. & Order at 34.) After the Court granted Plaintiffs' motion, Defendants provided four joint status reports to the Court, updating the Court on their efforts to vaccinate AICs. (ECF Nos. 182, 185, 187, & 195.) In the latest report, Defendants represented that they had fully complied with the Court's order to offer and administer vaccines, and that the overall vaccine acceptance rate among AICs at that time was 70%. (ECF No. 195 at 2.)

Defendants assert that in light of their compliance with the preliminary injunction, Plaintiffs cannot show the requisite threat to future injury necessary to confer jurisdiction on this Court to grant any additional injunctive relief with respect to vaccine distribution. (Defs.' Mot. at 10; Defs.' Reply at 4.) Plaintiffs respond that COVID-19 continues to present an ongoing risk to AICs, and that new and potentially unvaccinated individuals entering ODOC facilities must have access to a COVID-19 vaccine to protect against further spread of the virus. (Pls.' Opp'n at 13.) Defendants reply that ODOC continues to offer the vaccine to AICs, "has developed a plan to provide [eligible] AICs with access to boosters[,]" and "has access to enough vaccine doses to distribute boosters to any AIC who wishes to receive one." (Defs.' Resp. to Pls.' Sec. Not. of Add'l Auths. at 2.)

The Court concludes that Plaintiffs have failed to establish the existence of a credible threat that AICs will again be subjected to an injury relating to the availability of the COVID-19 vaccine while in ODOC custody. *See Bayer*, 861 F.3d at 864 ("A request for injunctive relief remains live only so long as there is some present harm left to enjoin.") (quotation omitted); *see*

*also O'Neal v. City of Seattle*, 66 F.3d 1064, 1066 (9th Cir. 1995) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983))).

Although Plaintiffs point to legitimate concerns regarding the absence of herd immunity in the United States, the efficacy of the COVID-19 vaccines against emerging variants of the virus, and "vaccine hesitancy" among ODOC staff,[2] they have not offered any evidence to demonstrate a "real or immediate" threat that Defendants will again prioritize eligibility for COVID-19 vaccines in a manner that violates the constitutional rights of the members of the Vaccine Class. *See Hernandez v. City of San Jose*, No. 16-CV-03957-LHK, 2019 WL 4450930, at *19 (N.D. Cal. Sept. 17, 2019) ("In order to have standing for prospective injunctive relief, a plaintiff must establish a 'real and immediate threat of repeated injury.'" (quoting *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011))); *see also Sample v. Johnson*, 771 F.2d 1335, 1340 (9th Cir. 1995) ("Plaintiffs must demonstrate that a 'credible threat' exists that they will again be subject to the specific injury for which they seek injunctive or declaratory relief."). Oregon's initial vaccine prioritization plan that gave rise to the constitutional injury in this case no longer exists, as all Oregonians (ages twelve and over) are now eligible to receive a COVID-19 vaccine and vaccine supply in Oregon currently exceeds demand. Plaintiffs have not presented any evidence to suggest that Defendants have discontinued or will discontinue offering the COVID-19 vaccine to any AIC who wants to be vaccinated, and Defendants have presented

---

[2] Defendants point out that all executive branch employees of Oregon state government must be vaccinated against COVID-19 as of October 18, 2021. (Defs.' Resp. to Pls.' Sec. Not. of Add'l Auths. at 3) (citing Executive Order No. 21-29, COVID-19 Vaccination Requirement for State Executive Branch, https://www.oregon.gov/gov/Documents/executive_orders/eo_21-29.pdf).

evidence that a plan is in place to continue to provide the vaccine to all AICs and to provide a booster vaccine to any eligible AICs.

While Plaintiffs are correct that continuing to offer the vaccine to individuals entering ODOC custody is necessary to prevent further spread of COVID-19 within ODOC facilities, "[a]llegations that a defendant's conduct will subject unnamed class members to the alleged harm is insufficient to establish standing to seek an injunction on behalf of the class." *Hernandez*, 2019 WL 4450930, at *19 (citing *Hodgers-Durgin v. De la Fina*, 199 F.3d 1037, 1044-45 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."). At this juncture, Plaintiffs' concerns about vaccine availability for future AICs are speculative and insufficient to support standing for their injunctive relief claim. *See Munns v. Kerry*, 782 F.3d 402, 411-12 (9th Cir. 2015) ("Despite being harmed in the past, the [plaintiffs] must still show that the threat of injury in the future is 'certainly impending' or that it presents a 'substantial risk' of recurrence for the court to hear their claim for prospective relief." (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013))); *Hernandez*, 2019 WL 4450930, at *19 ("The threat of harm cannot be 'speculative.'" (quoting *Lyons*, 461 U.S. at 111)); *J.M. v. Major*, No. 6:18-cv-00739-YY, 2018 WL 7104882, at *4 (D. Or. Oct. 2, 2018) ("The showing must be objective; plaintiffs' attestation 'that the injury might recur will not suffice to demonstrate the capability of repetition of an injury." (quoting *Sample*, 771 F.2d at 1343)).

Plaintiffs have already prevailed on their claim for injunctive relief on behalf of the Vaccine Class. Now that Defendants have complied with the Court's injunction, Plaintiffs fail to establish that there remains a "real and immediate threat" that Defendants will fail to offer the COVID-19 vaccine to members of the Vaccine Class, and therefore they lack standing and this

Court no longer has subject matter jurisdiction over Plaintiffs' claim for injunctive relief. Accordingly, the Court dismisses Plaintiffs' injunctive relief claim on behalf of the Vaccine Class.

### 2.    Liability of State Officials

Defendants argue that Plaintiffs have failed to state a claim for personal liability against defendants Governor Brown and Director Allen. (Defs.' Mot. at 12.) The Court disagrees.

"A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). "The requisite causal connection can be established . . . by setting in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*.

"There is no *respondeat superior* liability under [42 U.S.C.] § 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (affirming summary judgment in favor of prison administrators who had not known of or been personally involved in any of the AIC's alleged constitutional violations). However, "[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr*, 652 F.3d at 1208.

Defendants argue that Plaintiffs have failed to state a claim against Governor Brown and Director Allen because they do not allege any personal involvement in the conduct giving rise to Plaintiffs' alleged injuries. (Defs.' Mot. at 12-14.) Plaintiffs respond that they have adequately

alleged that both Governor Brown and Director Allen were personally involved in developing and overseeing ODOC's COVID-19 policies and were aware of the harmful consequences of these policymaking decisions, and that the evidence discovered to date supports these allegations. (Pls.' Opp'n at 15-16.)

State officials can be held individually liable under Section 1983 if the policies they implement are "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a constitutional violation.'" *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *see also OSU Student All. v. Ray*, 699 F.3d 1053, 1076 (9th Cir. 2012) ("[Section] 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which subjects, or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution.").

Plaintiffs allege in the FAC that during a state of emergency, Governor Brown is authorized to make, enforce, or terminate any policy, rule, or regulation of any state agency, including ODOC. (*See* FAC ¶ 12, alleging that Governor Brown (1) "retains ultimate executive authority over ODOC," (2) "during a state of emergency . . . has authority to suspend provisions of any order or rule of any state agency, if the Governor determines and declares that strict compliance with the provision or rule would in any way prevent, hinder or delay mitigation of the effects of the emergency," and (3) is "authorized to make rules and regulations necessary to carry out the purposes of the declared emergency"). Plaintiffs also allege that Director Allen directly participated in developing and implementing ODOC policy in response to the COVID-

19 pandemic.[3] (*See id.* ¶ 19, "Defendant Patrick Allen is the Director of the Oregon Health
Authority (OHA)" and "OHA [] worked closely with ODOC to develop and implement guidance
and recommendations for the management of COVID-19 in ODOC facilities, including through
weekly meetings with ODOC staff[.]").

Plaintiffs also assert that Defendants have "failed to continuously implement and enforce
quarantine policies to prevent incarcerated adults from coming into contact from others who had
contracted or otherwise been exposed to COVID-19" by failing to: "promptly and continuously
implement and enforce a mask mandate"; "implement and enforce guidelines and/or procedures
relating to sanitation and disinfection"; "follow CDC Guidelines and implement necessary public
health measures to protect against the spread of COVID-19 in ODOC institutions, including by
failing to implement and enforce proper quarantines and/or social distancing for individuals who
contracted or became exposed to COVID-19 and by allowing mixing between and among adults
in custody and ODOC staff and contractors without regard to the risk that adults in custody
would or could become exposed to COVID-19"; and "prioritize adults in custody for COVID-19
vaccine distribution." (FAC ¶¶ 73(e), 101.) Plaintiffs allege that in doing so, Defendants "acted
with callous disregard for the rights, serious medical needs, and physical safety of Plaintiffs."
(FAC ¶ 102.)

The Court concludes that Plaintiffs have alleged sufficient facts to suggest that a causal
connection exists between Governor Brown and Director Allen's involvement in developing,

---

[3] Defendants have acknowledged that both Governor Brown and Director Allen
developed and implemented ODOC's COVID-19 policies. (*See* Decl. of Nadia H. Dahab Ex. E;
Mot. Summ. J. Hg. Tr. (Nov. 13, 2020) at 24, defense counsel stated that "[w]e have conceded
that each of the individually-named defendants have high-level supervisory authority for
policymaking"; Defs.' Reply to Mot. Summ. J. at 8, "It is undisputed that Governor Brown had
some general personal involvement in developing ODOC policy in response to the COVID-19
pandemic.").

overseeing, and authorizing ODOC's policies and Plaintiffs' alleged injuries, and that

Defendants knew or reasonably should have known the consequences of those policies. *See*

*Starr*, 652 F.3d at 1207 ("The requisite causal connection can be established . . . by knowingly

refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably

should have known would cause others to inflict a constitutional injury."). Accordingly, the

Court denies Defendants' motion to dismiss Plaintiffs' claims against Governor Brown and

Director Allen.[4]

### C.    Motion to Dismiss Micah Rhodes

Plaintiffs move to dismiss plaintiff Rhodes as a plaintiff without prejudice because

Rhodes has been released from ODOC custody, he did not test positive for COVID-19 while in

ODOC custody, and he is therefore not currently a member of the proposed Damages Class. (*See*

*Pls.' Mot. for Entry of Order ("Pls.' Mot.") at 1-2*, adding that "it is possible . . . that he may

return to ODOC custody before the end dates of the designated class periods of the Damages

[Class]," "become a member of that class," and "be entitled to relief as part of the class[.]").

Defendants argue that Rhodes lacks standing and therefore dismissal should be with prejudice.

(Defs.' Opp'n to Pls.' Mot. for Entry of Order at 3.)

A "dismissal for lack of Article III standing is a dismissal for lack of subject matter

jurisdiction." *Stevenson v. Cnty. of Churchill*, 617 F. App'x 805, 806 (9th Cir. 2015); *see also*

*Kertesz v. Ferguson*, 851 F. App'x 804, 804 (9th Cir. 2021) ("The district court properly

dismissed [the plaintiff's] action for lack of subject matter jurisdiction because [the plaintiff]

failed to allege facts sufficient to demonstrate Article III standing."). "In general, dismissal for

lack of subject matter jurisdiction is without prejudice." *Missouri ex rel. Koster v. Harris*, 847

---

[4] As a result, Defendants' objections to Plaintiffs' pending discovery requests relating to
Governor Brown and Director Allen are now moot.

F.3d 646, 656 (9th Cir. 2017); *see also O'Campo v. Ghoman*, 622 F. App'x 609, 609-10 (9th Cir. 2015) (holding that the district court erred in dismissing the complaint for failure to establish Article III standing with prejudice because "a dismissal for lack of jurisdiction is not an adjudication on the merits"); *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1106-07 (9th Cir. 2006) ("[D]ismissal for want of standing must be 'without prejudice.'") (citation omitted). Accordingly, the Court dismisses plaintiff Rhodes without prejudice.

### D.    Discovery Disputes

On May 3, 2021, Plaintiffs filed a motion for class certification (ECF No. 203), and Defendants have not yet filed a response. Plaintiffs stipulated to Defendants' request to depose the named Plaintiffs, as well as the putative class members who provided declarations in support of Plaintiffs' motion for class certification, for a total of sixteen depositions. (ECF No. 239.) Defendants now seek a discovery order allowing them to: (1) depose up to an additional seventy putative class members who provided declarations in connection with earlier motions; and (2) interview AICs who are not represented by counsel.

#### 1.    Additional Depositions

Defendants seek to depose up to seventy absent class members who provided declarations in support of Plaintiffs' earlier motions in this case, nine of which Plaintiffs cross-referenced in their motion for class certification.[5] Of the seventy, Defendants have identified three declarants

---

[5] Defendants have identified these declarants as Mari-Teresa Gillespie (ECF No. 42), Jamahl Maner (ECF No. 31), Mylo Lupoli (ECF No. 48), Nathan Adams (ECF No. 49), Lisandro Sanchez (ECF No. 40), Christopher Mitchell (ECF No. 21), Brandon Borba (ECF No. 20), Mickey Weis (ECF No. 47), and D. White (ECF No. 24). (*See* Pls.' Mot. to Certify at 11-13 n. 37-46.)

whose declarations are arguably inconsistent with the evidence relied upon by Plaintiffs in support of their motion for class certification.[6]

"Generally, courts do not permit discovery from absent class members." *Rojas v. Marko Zaninovich, Inc.*, No. 1:09-00705 AWI JLT, 2011 WL 2636071, at *4 (E.D. Cal. July 5, 2011) (citing *McPhail v. First Command Fin. Planning*, 251 F.R.D. 514, 517 (S.D. Cal. 2008)). However, "the rules pertaining to such discovery are flexible, especially where the proposed deponents have been identified as potential witnesses or have otherwise 'injected' themselves into the litigation." *Brown v. Wal-Mart, Inc.*, No. 09-cv-03339-EJD (SVK), 2018 WL 339080, at *1 (N.D. Cal. Jan. 9, 2018); *see also A.B. v. Pac. Fertility Ctr.*, No. 06-cv-2671-BTM (WMc), No. 18-cv-01586-JSC, 2019 WL 6605883, at *1 (N.D. Cal. Dec. 3, 2019) ("[D]iscovery of absent class members is generally not permitted unless the class member has inserted herself into the litigation."); *cf. Antoninetti v. Chipotle, Inc.*, No. 06-cv-2671-BTM (WMc), 2011 WL 2003292, at *2 (S.D. Cal. May 23, 2011) (holding that absent class members who submitted declarations in support of the plaintiff's motion for class certification "have injected themselves into the litigation" and therefore "cannot claim noninvolvement as a means of avoiding discovery[,]" but not reaching the question of whether absent class members who submitted declarations in support of earlier motions necessarily injected themselves into the litigation of later motions).

"The proponent of discovery must demonstrate three factors to justify discovery of absentee class members: (1) whether the information sought is relevant; (2) whether the information is not readily obtainable from the representative parties or other sources; and (3)

---

[6] At oral argument, Defendants identified these declarants as Jacob Strock (ECF No. 30), Skyler Floro (ECF No. 56), and Mallory Seck (ECF No. 95).

whether the request is not unduly burdensome and made in good faith." *Brown*, 2018 WL 339080, at *1 (citation omitted); *see also Moreno v. Autozone, Inc.*, No. C-05-4432 MJJ (EMC), 2007 WL 2288165, at *1 (N.D. Cal. Aug. 3, 2007) (finding that discovery of absent class members is appropriate where "the proponent of the deposition demonstrates discovery is not sought to take undue advantage of class members or to harass class members, and is necessary to the trial preparation").

Defendants argue that the Court should allow them to take additional depositions of up to seventy AICs who submitted declarations in this case, in addition to the sixteen agreed-upon depositions, because the declarants have injected themselves into this litigation and the requested depositions are necessary to address the claims and defenses in this case. Plaintiffs respond that Defendants have failed to demonstrate that more than sixteen depositions are necessary, and the request is unduly burdensome.

The Court concludes that Defendants have met their burden of demonstrating the need to depose the three AIC declarants whose sworn statements arguably conflict with the factual assertions in Plaintiffs' motion for class certification. Plaintiffs do not dispute the relevance of the requested testimony, Defendants cannot obtain the anticipated testimony from another source, and three short additional depositions are not unduly burdensome. *See Rojas*, 2011 WL 2636071, at *4 (granting the defendants' request to depose four additional absent class members because of inconsistencies in several declarations submitted by witnesses in support of the plaintiffs' motion for class certification); *see also Moreno*, 2007 WL 2288165, at *1 (finding that "[r]easonable cross examination of the declarants as to facts asserted therein is reasonably necessary to Defendant's preparation of its opposition to the class certification motion" where "the declarants appear to possess information which may not be documented and thus not within

Defendant's possession absent a deposition"). Therefore, the Court grants Defendants' request to depose the three identified AICs for up to two hours each.

Turning to Defendants' request to depose dozens of additional putative class members who submitted declarations in support of earlier motions, the Court concludes that Defendants are able adequately to defend the class certification motion with the nineteen depositions discussed above, especially in addition to the AIC interviews discussed below, and any additional depositions would be cumulative and not proportional to the needs of the case at this time. *See Rojas*, 2011 WL 2636071, at *4 ("In the face of this already gathered information, Defendant fails to demonstrate that the [] information that could be gained from deposing the [witness] would add to, rather than duplicate—the quantum of information already known on this topic.").

In summary, Defendants have met their burden to depose the three absent class members whose declarations include factual assertions that are arguably inconsistent with Plaintiffs' current position, but not the dozens of additional absent class members. The parties shall meet and confer to determine a schedule for any remaining depositions to take place within the next thirty days.

### 2.    AIC Interviews

Defendants also request leave to interview unrepresented AICs. Plaintiffs object, arguing that all AICs are represented parties as members of the Vaccine Class, and therefore Rule 4.2 of the American Bar Association's Model Rules of Professional Conduct ("ABA Model Rules") bars any communication with AICs except through counsel.[7] Plaintiffs also argue that allowing

---

[7] ABA Model Rule 4.2 provides that: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." ABA Rule 4.2, available at

counsel for Defendants to interview AICs creates potential for abuse and risk to absent class members because of the inherently coercive relationship between ODOC personnel and AICs.

"Communications with prospective plaintiffs in a collective action prior to certification of the class are generally allowed so long as the communications are not misleading, coercive, or improper." *Nancy Allision & Holly Burney v. Dolich*, No. 3:14-CV-1005-AC, 2014 WL 12792546, at *7 (D. Or. Dec. 16, 2014) (citation omitted). To protect the parties and putative class members, a court may: (1) "restrict[] the communications between the parties and the prospective plaintiffs;" or (2) "order[] a corrective notice to remedy the effect of improper communications." *Id.* The Court's authority to regulate communications with putative class members "should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 104 (1981); *see In re Logitech, Inc.*, 784 F. App'x 514, 517 (9th Cir. 2019) ("[A]ny restriction on communications that would frustrate the policies of Rule 23 must follow 'a specific record showing . . . the particular abuses . . . threatened' and the district court must 'giv[e] explicit consideration to the narrowest possible relief which would protect the respective parties.'") (quoting *Gulf Oil*, 452 U.S. at 102); *see also McKenzie Law Firm, P.A. v. Ruby Receptionists, Inc.*, No. 3:18-cv-1921-SI, 2020 WL 2789873, at *1 (D. Or. May 29, 2020) ("When exercising its authority under Rule 23(d) to limit a defendant's communications to class members, a court need not find that actual misconduct has occurred; it is enough for a court to find that there is a threat of abuse or other potential for interference with the rights of the

---

https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/rule_4_2_communication_with_person_represented_by_counsel/ (last visited Sept. 28, 2021).

PAGE 20 – OPINION AND ORDER

parties."). The moving party bears the burden of establishing the "particular abuses by which it is threatened." *Gulf Oil*, 452 U.S. at 102.

As an initial matter, in light of this Court's conclusion that the Vaccine Class claims are now moot, many of the AICs with whom Defendants seek to communicate are no longer represented parties with respect to this litigation, and therefore ABA Model Rule 4.2 does not apply except to putative members of the Damages and Wrongful Death Classes.

Turning to Plaintiffs' argument that allowing defense counsel to communicate with AICs about this lawsuit creates the potential for coercion, the Court concludes that any risk of abuse can be mitigated here. Defense counsel seeks to send communications to AICs inquiring whether they are willing to speak with defense counsel about the facts and circumstances relating to the allegations in this case, and to submit unsworn declarations. Defendants assure Plaintiffs and this Court that any decision by AICs regarding whether to speak with defense counsel will be voluntary, off the record, and not under the penalty of perjury.[8] While the Court recognizes that communications between defense counsel and AICs pose a potential for abuse based on the power differential between ODOC officials and AICs, Plaintiffs have not alleged that defense counsel has engaged in any improper communications with AICs to date. *See Gulf Oil*, 452 U.S. at 104 (noting that "the mere possibility of abuses in class action litigation does not justify routine adoption of a communications ban" between parties and potential class members); *Cedano v. Thrifty Payless, Inc.*, No. CV-10-237-HZ, 2011 WL 8609402, at *12 (D. Or. May 9, 2011) ("At this point, I find imposing any limitations on communications that either party may have with putative class members would be based on speculation and conjecture, especially in

---

[8] The parties shall confer ahead of time regarding whether the interviews, or any notes, recordings, or transcripts therefrom, are discoverable.

light of the fact that the parties have failed to even assert that any abuse in communications has occurred. . . . Accordingly, I will not address this issue at this point in time."). Furthermore, a blanket prohibition on communications between Defendants and all AICs would interfere with the right of Defendants to investigate and prepare their defense in this case.

In weighing the rights of the parties, the Court concludes that, at this juncture of the case, imposing a blanket limitation on communications between Defendants and AICs is inappropriate. *See In re Logitech, Inc.*, 784 F. App'x at 517 ("[A]ny restriction on communications that would frustrate the policies of Rule 23 must follow 'a specific record showing . . . the particular abuses . . . threatened[.]") (citation omitted). However, to protect against the inherent coercion between prison officials and unrepresented AICs and to mitigate the risk that AICs will misapprehend the interview request or their right to decline, defense counsel shall confer with Plaintiffs' counsel with respect to (i) the form and content of the communication that defense counsel intends to send to AICs; (ii) the format of the meetings and whether defense counsel intends to record the interviews; and (iii) how defense counsel will ensure that they are not contacting any putative members of the Damages Class or the Wrongful Death Class. The parties may contact the Court to resolve any disputes.

### 3.   Antibody Test Results

Plaintiffs asked the Court pursuant to its informal discovery dispute resolution procedure to compel Defendants to disclose a list of AICs who received a positive (i.e., reactive) result on a COVID-19 antibody test. Defendants declined to produce the requested confidential medical information without a Court order. The Court finds that the identities of AICs who tested positive for COVID-19 antibodies are relevant to Plaintiffs' claims and proportional to the needs of the case. Accordingly, the parties shall confer and submit an agreed-upon proposed order for the Court's signature allowing disclosure of the requested information.

PAGE 22 – OPINION AND ORDER

## CONCLUSION

For the reasons stated, the Court DENIES Defendants' motion to strike (ECF No. 245),

GRANTS in part and DENIES in part Defendants' motion to dismiss (ECF No. 245), GRANTS

IN PART Defendants' request to take additional depositions and interview unrepresented AICs,

GRANTS Plaintiffs' motion for an order of dismissal without prejudice of plaintiff Micah

Rhodes (ECF No. 249), and GRANTS Plaintiffs' request to compel Defendants to disclose a list

of AICs who have tested positive for COVID-19 antibodies.

Plaintiffs shall file a Fifth Amended Complaint consistent with this opinion by October 5,

2021.

Defendants' response to Plaintiffs' motion to certify the class (ECF No. 203) is due thirty

days from the date of the last of the nineteen depositions authorized herein. The parties shall

notify the Court of the relevant dates.

DATED this 28th day of September, 2021.

HON. STACIE F. BECKERMAN
United States Magistrate Judge