IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PAUL MANEY; GARY CLIFT; GEORGE
NULPH; THERON HALL; DAVID HART;
SHERYL LYNN SUBLET; and FELISHIA
RAMIREZ, personal representative for the
ESTATE OF JUAN TRISTAN, individually,
on behalf of a class of others similarly
situated,

               Plaintiffs,

      v.

KATE BROWN; COLETTE PETERS;
HEIDI STEWARD; MIKE GOWER; MARK
NOOTH; ROB PERSSON; KEN JESKE; and
PATRICK ALLEN,

               Defendants.

Case No. 6:20-cv-00570-SB

**OPINION AND ORDER**

---

**BECKERMAN, U.S. Magistrate Judge.**

       Plaintiffs Paul Maney, Gary Clift, George Nulph, Theron Hall, David Hart, and Sheryl

Lynn Sublet, adults in custody ("AIC") at Oregon Department of Corrections ("ODOC")

institutions, along with Felishia Ramirez, the personal representative for the Estate of Juan

Tristan (together, "Plaintiffs"), filed a sixth amended complaint ("SAC") alleging constitutional

and state law violations against defendants Governor Kate Brown ("Governor Brown"), Oregon

PAGE 1 – OPINION AND ORDER

Health Authority ("OHA") Director Patrick Allen ("Director Allen"), several ODOC officials, and the State of Oregon (together, "Defendants"). (ECF No. 282.)

Now before the Court is Defendants' motion to dismiss Plaintiffs' claim for damages based on Defendants' alleged "fail[ure] initially to prioritize adults in custody for COVID-19 vaccine distribution." (Defs.' Mot. to Dismiss ("Defs.' Mot.") at 4, ECF No. 281.) The Court has jurisdiction over this matter under 28 U.S.C §§ 1331, 1343(a)(3)-(4), and 1367, and all parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636. The Court held a hearing on Defendants' motion on January 3, 2022. For the reasons discussed herein, the Court grants in part and denies in part Defendants' motion to dismiss.

## BACKGROUND

Plaintiffs filed this action in April 2020, alleging that Defendants (1) violated the Eighth Amendment by acting with deliberate indifference to Plaintiffs' health and safety by failing adequately to protect them from COVID-19, and (2) were negligent in failing to carry out proper preventative measures. (*See* ECF No. 1.) Defendants now seek dismissal of Plaintiffs' vaccine priority claim arguing that Defendants are immune from liability under the Public Readiness and Emergency Preparedness Act ("PREP Act"). (Defs.' Mot. at 4; SAC ¶¶ 54-56, 88, 93(d).) For the reasons that follow, the Court grants in part and denies in part Defendants' motion to dismiss.

## DISCUSSION

### I.    LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678).

## II.   ANALYSIS

Defendants move to dismiss Plaintiffs' vaccine priority claim on the ground that the PREP Act provides immunity for any loss caused by the prioritization or allocation of the COVID-19 vaccine. (Defs.' Mot. at 5-12.)

### A.    Overview of the PREP Act

"Passed in 2005, the PREP Act authorizes the Secretary of the Department of Health and Human Services [(the "Secretary")] to issue a declaration determining that 'a disease or other health condition or other threat to health constitutes a public health emergency.'" *Parker through Parker v. St. Jude Operating Co., LLC*, No. 3:20-CV-01325-HZ, 2020 WL 8362407, at *3 (D. Or. Dec. 28, 2020) (citing 42 U.S.C. § 247d-6d(b)). The Secretary issued such a declaration with respect to the ongoing COVID-19 pandemic. *See Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19*, 85 Fed. Reg. 15,198-01 (Mar. 17, 2020) (the "Declaration"). To date, the Secretary has issued nine amendments to the Declaration.

The PREP Act's immunity provision provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure[.]" 42 U.S.C. § 247d-6d(a)(1). The scope of the PREP Act's immunity provision is broad:

> The immunity under paragraph (1) applies to any claim for loss that has a causal
> relationship with the administration to or use by an individual of a covered
> countermeasure, including a causal relationship with the design, development,

clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure.

42 U.S.C. § 247d-6d(a)(2)(B); *see also Garcia v. Welltower OpCo Grp. LLC*, 522 F. Supp. 3d 734, 739 (C.D. Cal. 2021) ("Once the Secretary has issued a declaration, the PREP Act provides sweeping immunity for certain claims against certain covered individuals[.]"). "Covered Persons who are afforded liability immunity under [the] Declaration are 'manufacturers,' 'distributors,' 'program planners,' 'qualified persons,' and their officials, agents, and employees, as those terms are defined in the PREP Act[.]" Decl., 85 Fed. Reg. at 15,201. A "program planner" is "a State or local government, . . . a person employed by the State or local government, or other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of a . . . qualified pandemic or epidemic product, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance . . . in accordance with" the Declaration. 42 U.S.C. § 247d-6d(i)(6). A covered countermeasure includes "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19[.]" Decl., 85 Fed. Reg. at 15,202.

### B.    Scope of PREP Act Immunity

Courts analyzing the scope of the PREP Act have consistently held that the PREP Act's immunity provision applies to those who administer or use covered countermeasures, but does not apply to a *failure* to administer or use a covered countermeasure. *See, e.g., Est. of Jones v. St. Jude Operating Co., LLC*, No. 3:20-CV-01088-SB, 2020 WL 8361924, at *10 (D. Or. Oct. 14, 2020) (finding that the PREP Act did not apply to a plaintiff's claims "based on what [d]efendants failed to do to stop the entry and spread of COVID-19 . . . not on their improper administration or misuse of any specific COVID-19 drug, vaccine, test kit, PPE, or other covered

countermeasure"); *see also Reed v. Sunbridge Hallmark Health Servs., LLC*, No. CV 21-3702-

JFW(AGRX), 2021 WL 2633156, at *5 (C.D. Cal. June 25, 2021) (holding that "the PREP Act

does not prevent plaintiffs from bringing state law claims based on an alleged failure to use

covered countermeasures" (citing *Est. of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F.

Supp. 3d 518, 523, 531 (D.N.J. 2020))); *Est. of Maglioli*, 478 F. Supp. 3d at 531 (holding that the

failure to "observe a wide range of appropriate safety precautions" "would not be preempted by

the PREP Act, which is designed to protect those who employ countermeasures, not those who

decline to employ them"); *cf. Casabianca v. Mount Sinai Med. Ctr.*, No. 112790/10, 2014 WL

10413521, at *4-5 (N.Y. Sup. Ct. Dec. 2, 2014) (holding that a treating physician's failure to

provide the plaintiff with the H1N1 vaccine was "in no way covered by [the] PREP [Act], and

the immunity from suit claimed by the defendants here simply does not exist" because "[t]he

language [of the PREP Act] makes clear that the vaccine must be administered to or used by a

patient").

    However, on December 9, 2020, eight months after the Secretary first invoked the PREP

Act for COVID-19, the Secretary provided in a Fourth Amended Declaration ("FAD") that

failing to administer a covered countermeasure "can" be subject to immunity under certain

circumstances:

> Where there are limited Covered Countermeasures, not administering a Covered
> Countermeasure to one individual in order to administer it to another individual
> can constitute 'relating to . . . the administration to . . . an individual' under 42
> U.S.C. 247d-6d. For example, consider a situation where there is only one dose of
> a COVID-19 vaccine, and a person in a vulnerable population and a person in a
> less vulnerable population both request it from a healthcare professional. In that
> situation, the healthcare professional administers the one dose to the person who
> is more vulnerable to COVID-19. In that circumstance, the failure to administer
> the COVID-19 vaccine to the person in a less-vulnerable population 'relat[es] to
> . . . the administration to' the person in a vulnerable population. The person in the
> vulnerable population was able to receive the vaccine only because it was not
> administered to the person in the less-vulnerable population. Prioritization or

purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections.

(Fourth Am. Decl., 85 Fed. Reg. at 79,197) (footnote omitted). Defendants rely on the FAD to argue that Defendants' vaccine allocation decisions fall within the scope of PREP Act immunity. (Defs.' Mot. at 9) (quoting Fourth Am. Decl., 85 Fed. Reg. at 79,191).

### C.    PREP Act Immunity Here

Plaintiffs allege that Defendants violated their constitutional rights by failing to prioritize AICs for vaccine distribution. Specifically, Plaintiffs allege that Defendants placed ODOC correctional officials and staff, as well as residents of other congregate care facilities, in Phase 1A of Oregon's vaccine rollout, but excluded AICs from Phase 1A. (See SAC ¶¶ 54-56, 88, 93(d).) Defendants argue that the PREP Act provides immunity for their COVID-19 vaccine allocation decisions.

For PREP Act immunity to apply here, Defendants must demonstrate that (1) they are covered persons; (2) Plaintiffs' claim is one for loss; and (3) the loss was caused by, arose out of, related to, or resulted from the administration to or use by an individual of a covered countermeasure. See 42 U.S.C. § 247d-6d(a)(1). Plaintiffs do not dispute that Defendants are covered persons, that Plaintiffs' Eighth Amendment claim is one for loss, or that COVID-19 vaccines are covered countermeasures. (Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss at 5 n.6.) The parties disagree, however, on whether Defendants are entitled to immunity for their exclusion of AICs from Phase 1A.

The Court first looks to the language and context of the PREP Act to determine the scope of the statute's immunity. See Connell v. Lima Corp., 988 F.3d 1089, 1097 (9th Cir. 2021) ("We determine if a statute's meaning is plain or ambiguous by looking to 'the language itself, the specific context in which that language is used, and the broader context of the statute as a

PAGE 6 – OPINION AND ORDER

whole.'" (quoting *Robinson v. Shell Oil Co*., 519 U.S. 337, 341 (1997))). The PREP Act provides

that "a covered person shall be immune from suit and liability under Federal and State law with

respect to all claims for loss caused by, arising out of, relating to, or resulting from the

administration to or the use by an individual of a covered countermeasure[.]" 42 U.S.C. § 247d-

6d(a)(1). Per its express statutory terms, the PREP Act applies to the "administration to or use

of" a covered countermeasure, not the failure to administer or use a covered countermeasure. *See*

*Est. of Jones*, 2020 WL 8361924, at *9; *accord Reed*, 2021 WL 2633156, at *5.

       However, the FAD further provides that "[p]rioritization or purposeful allocation of a

Covered Countermeasure, particularly if done in accordance with a public health authority's

directive, can fall within the PREP Act and this Declaration's liability protections." (Fourth Am.

Decl., 85 Fed. Reg. at 79,197).[1] At least one court in the Ninth Circuit has recognized that the

FAD "makes clear that an 'inaction claim' is not necessarily beyond the scope of the PREP

Act[.]" *Lyons v. Cucumber Holdings, LLC*, 520 F. Supp. 3d 1277, 1285 (C.D. Cal. 2021); *see*

*also Anson v. HCP Prairie Vill. KS OPCO LLC*, 523 F. Supp. 3d 1288, 1299 (D. Kan. 2021)

("[B]ased on the recent amendment, an 'inaction claim' is not necessarily beyond the scope of

the PREP Act. The statute's immunity provision could cover a claim of inaction or failure to

administer countermeasures.").

---

       [1] Although neither party addressed *Chevron* deference with respect to the FAD, the Court
finds that some deference is appropriate given the PREP Act's broad grant of authority to the
Secretary. *See United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001) ("We hold that
administrative implementation of a particular statutory provision qualifies for *Chevron* deference
when it appears that Congress delegated authority to the agency generally to make rules carrying
the force of law, and that the agency interpretation claiming deference was promulgated in the
exercise of that authority."); *Chevron, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-44
(1984) ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation
of authority to the agency to elucidate a specific provision of the statute by regulation. Such
legislative regulations are given controlling weight unless they are arbitrary, capricious, or
manifestly contrary to the statute.").

The Secretary's guidance in the FAD provides that the PREP Act "can" provide immunity for decisions regarding the prioritization or allocation of covered countermeasures, such as the COVID-19 vaccine. (Fourth Am. Decl., 85 Fed. Reg. at 79,197.) The Secretary provides the example of a healthcare professional with one dose of the vaccine who administers it to a vulnerable person to the exclusion of a less vulnerable person.[2] (*Id.*) Notably, the Secretary uses the word "can" to modify "fall within the PREP Act," and not the word "shall," which leads the Court to conclude that the Secretary did not intend to provide absolute immunity for all decisions regarding the prioritization or allocation of the COVID-19 vaccine. *See Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1158 (9th Cir. 2004) (applying canons of statutory interpretation to interpret regulations); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) ("The preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (quotation omitted); *Sec. & Exch. Comm'n v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) ("Congress's explicit decision to use one word over another in drafting a statute is material."). Indeed, interpreting the FAD to provide absolute immunity for all COVID-19 vaccine allocation decisions, even if the decision clearly violates the U.S. Constitution, would lead to an unreasonable result.[3] *See United States v. Iron Mountain Mines, Inc.*, 812 F. Supp. 1528, 1558 (E.D. Cal. 1992) ("It remains a fundamental canon of statutory construction that 'the

---

[2] Plaintiffs acknowledged at oral argument that the Secretary's example does not necessarily apply only to vaccine allocation amongst individuals, but could also apply to vaccine allocation amongst groups of individuals, as relevant here.

[3] As discussed at oral argument, Defendants' interpretation of the PREP Act would extend absolute immunity to decisions to prioritize the COVID-19 vaccine based solely on an individual's race, religion, or political affiliation.

unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result.'" (quoting 2A Sutherland, Statutory Construction § 45.12 at 61 and citing *Beisler v. Comm'r of Internal Revenue*, 814 F.2d 1304, 1307 (9th Cir. 1987))).

The Court returns to the text of the FAD to discern any additional guidance from the Secretary as to which vaccine prioritization decisions are immune from liability. The text of the FAD directs: "Prioritization or purposeful allocation of a Covered Countermeasure, *particularly if done in accordance with a public health authority's directive*, can fall within the PREP Act and this Declaration's liability protections."[4] (Fourth Am. Decl., 85 Fed. Reg. at 79,197) (emphasis added). The Secretary uses the word "particularly" instead of "only" to modify "if done in accordance with a public health authority's directive." This suggests not only that the Secretary intended to immunize vaccine prioritization decisions that are consistent with a public health authority's directive, but that immunity might also apply in other scenarios. For example, the Secretary's own scenario of a healthcare professional deciding on her own accord to administer the vaccine to the more vulnerable individual may not necessarily be a decision made in accordance with a public health authority's directive, but is consistent with public health guidance on relative vulnerabilities. The Secretary limited his example to a decision administering the vaccine to the more vulnerable individual, suggesting that immunity would not

---

[4] Similar limiting language is found elsewhere in the PREP Act, including protecting a program planner from a finding of "willful misconduct" if the "program planner . . . *acted consistent with applicable directions, guidelines, or recommendations* by the Secretary regarding the administration or use of a covered countermeasure that is specified in the declaration under subsection (b)[.]" 42 U.S.C. § 247d-6d(c)(4) (emphasis added).

apply to a decision to administer the vaccine to less vulnerable individuals to the exclusion of the more vulnerable.

It is not clear from the text of the FAD how far the Secretary intended to extend PREP Act immunity, but as discussed above, the FAD's plain language suggests that the Secretary did not intend to confer absolute immunity. As the only clear guidance in the FAD provides that immunity extends to prioritization or purposeful allocation of the vaccine in accordance with a public health authority's directive or public health guidance, the Court finds that the FAD does not extend PREP Act immunity to vaccine prioritization decisions, as here, that are contrary to public health guidance.

As relevant to the Court's analysis, Defendants included four tiered groups within the state's Phase 1A vaccine prioritization in the early days of Oregon's COVID-19 vaccine rollout. Phase 1A/Group 2 included "those living and working in congregate care facilities and those working in correctional settings" yet excluded "individuals *living* in correctional settings." (Vaccine Op. & Order at 2, ECF No. 178.) As this Court previously found, Plaintiffs are likely to succeed on their claim that Defendants' exclusion of AICs from Phase 1A/Group 2 was deliberately indifferent to Plaintiffs' serious medical needs because Defendants recognized that those living in congregate care settings are particularly vulnerable to COVID-19 but excluded AICs from receiving the vaccine in Phase 1A/Group 2. (Vaccine Op. & Order at 29-30.) The Court also found that Defendants' failure to include AICs in the same group as those working in correctional settings was contrary to then-current guidance from the Centers for Disease Control ("CDC") encouraging the vaccination of AICs and correctional staff "at the same time because of their shared increased risk of disease." (Vaccine Op. & Order at 29) (citation omitted). Thus,

the Court has already recognized that Defendants' exclusion of AICs from Phase 1A/Group 2 was contrary to public health guidance, and therefore the FAD provides no protection.

In summary, although the PREP Act does not expressly provide immunity for failing to administer the COVID-19 vaccine to individuals or groups of individuals, the FAD opens the door to extending immunity to the prioritization or purposeful allocation of the COVID-19 vaccine. However, the FAD's immunity is not absolute, and is intended to apply particularly to vaccine prioritization decisions in accordance with a public health authority's directive or public health guidance. Assuming without deciding that the PREP Act applies to a public health authority's vaccine allocation plan (as opposed to a health care professional allocating the vaccine consistent with the public health authority's plan), the Court finds that the FAD does not extend immunity to the situation present here where Defendants excluded AICs from the COVID-19 vaccine priority group contrary to Defendants' own public health guidance and CDC guidance dictating that AICs should be included. As a result, Defendants' exclusion of AICs from Phase 1A/Group 2 does not fall within the PREP Act's immunity provision as expanded by the FAD.

### D. Dismissal of Vaccine Priority Claim Against Certain Defendants

In their motion, Defendants argue that Plaintiffs have alleged only that Governor Brown and Director Allen are persons with supervisory authority over OHA, the agency responsible for the allocation and distribution of vaccines in Oregon, and that Plaintiffs fail to allege that the other individual defendants "played any role in deciding how and when AICs would be prioritized for vaccination." (Defs.' Mot at 7-8; *see also* SAC ¶¶ 54-56, 88, 93(d).) Plaintiffs' counsel acknowledged at oral argument that Plaintiffs have not pleaded sufficient allegations to support a vaccine priority claim against these other defendants. Accordingly, the Court dismisses

without prejudice the vaccine priority claims against all defendants other than Governor Brown and Director Allen.

**CONCLUSION**

For the reasons stated, the Court DENIES Defendants' motion to dismiss the vaccine priority claims as to Governor Brown and Director Allen, and GRANTS the motion with respect to the other defendants (ECF No. 281). Plaintiffs need not file a further amended complaint at this time.

**IT IS SO ORDERED.**

DATED this 8th day of February, 2022.

HON. STACIE F. BECKERMAN
United States Magistrate Judge