**Juan C. Chavez**, OSB No. 136428
**Brittney Plesser**, OSB No. 154030
**Franz Bruggemeier**, OSB No. 163533
**Alex Meggitt**, OSB No. 174131
**Benjamin Haile**, OSB No. 040660
OREGON JUSTICE RESOURCE CENTER
P.O. Box 5248
Portland, OR 97208
Tel: (503) 944-2270

**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
**Sarah R. Osborn**, OSB No. 222119
SUGERMAN DAHAB
707 SW Washington St. Ste. 600
Portland, OR 97205
Tel: (503) 228-6474

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| PAUL MANEY; GARY CLIFT; GEORGE NULPH; THERON HALL; DAVID HART; SHERYL LYNN SUBLET; and FELISHIA RAMIREZ, personal representative for the ESTATE OF JUAN TRISTAN, individually, on behalf of a class of other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF OREGON; KATE BROWN, COLETTE PETERS; HEIDI STEWARD; MIKE GOWER; MARK NOOTH; ROB PERSSON; KEN JESKE; PATRICK ALLEN; JOE BUGHER; and GARRY RUSSELL,<br><br>Defendants. | Case No. 6:20-cv-00570-SB<br><br>**PLAINTIFFS' MOTION TO COMPEL**<br><br>ORAL ARGUMENT REQUESTED<br><br>EXPEDITED CONSIDERATION REQUESTED |

**LOCAL RULE 7-1(a) CERTIFICATION**

Counsel for Plaintiffs certifies that they conferred in good faith with counsel for Defendants on the issues raised in this motion. Defendants oppose the motion.

**MOTION**

Pursuant to Federal Rule of Civil Procedure ("Rule") 37, Plaintiffs respectfully move the Court for an order compelling Defendants to make available for deposition in this action (1) Kevin Gleim, Special Projects Attorney at the Office of the Governor, and (2), the Honorable Kate Brown, former Governor of the State of Oregon. Gleim served as an attorney in the Governor's Office during the Class Period and, according to information learned in a deposition taken on March 20, 2023, spoke "all the time, every day" with ODOC staff to determine the scope and process for early releases that Defendant Brown chose to make for the purposes of reducing the prison population. Defendant Brown was the Governor of the State of Oregon during the Class Period and, as explained below, personally participated in certain actions and inactions that are central to Plaintiffs' claims.

Defendants have refused to make Kevin Gleim and Defendant Brown available for depositions on the ground that their depositions are either impermissible or otherwise outside the scope of discovery.[1] Plaintiffs therefore respectfully move for an order compelling Defendants to make them available for those depositions. Plaintiffs' motion is supported by the Declaration of Nadia Dahab and the exhibits attached thereto.

**MEMORANDUM**

Rule 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). When a party fails to produce discovery that falls within the scope of Rule 26(b)(1), Rule 37(a)(1) allows the requesting party to "move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The party opposing the motion "carries the heavy burden of showing why discovery

---

[1] Plaintiffs have noticed the depositions of both Gleim and Brown. Dahab Decl. ¶¶ 2 (Ex. A), 3 (Ex. B).

1 – PLAINTIFFS' MOTION TO COMPEL

should be denied," *Dence v. Wellpath, LLC*, 2022 WL 17261990, at *1 (D. Or. Nov. 29, 2022) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)), and must do so by establishing that the discovery request is overly broad, unduly burdensome, irrelevant, or disproportional in light of "the issues at stake" in the case, Fed. R. Civ. P. 26(b)(1), (b)(2)(C). In the context of depositions, "a strong showing is required before a party will be denied entirely the right to take a deposition." *Blankenship*, 519 F.2d at 429 (internal quotation marks omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

By this motion, Plaintiffs seek an order compelling Defendants to make Kevin Gleim and the Honorable Kate Brown—whose testimony, in Plaintiffs' view falls well within the scope of discovery—available for a deposition in this case. As explained below, Gleim participated in certain actions that are central to Plaintiffs' claims; his testimony is therefore relevant and within the scope of permissible discovery under Rule 26. The Honorable Kate Brown, for her part, is a named Defendant and made several decisions from which Plaintiffs' claims arise or relate. Defendants cannot satisfy their burden under Rule 26 to foreclose entirely their depositions.

**I.      Plaintiffs are entitled to depose Kevin Gleim.**

The federal rules establish a liberal framework for obtaining discovery. *See Hickman v. Taylor*, 329 U.S. 495, 501 (1947). Rule 26 thus allows a party to "obtain discovery of any matter, not privileged, that is relevant to any claim or defense of any party." Fed. R. Civ. P. 26(b)(1). "[T]he definition of relevancy 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bear on, any issue that is or may be in the case.' " *Woodward Stuckart, LLC v. United States*, 2012 WL 1890364, at *1 (D. Or. May 23, 2012) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Plaintiffs in this case allege § 1983 and state-law negligence and wrongful death claims against the State of Oregon and several state officials, including the former Director and Deputy Director of the Oregon Department of Corrections (ODOC), the former Director of the Oregon Health Authority (OHA), and the former Governor of the State of Oregon. In their operative

complaint, Plaintiffs allege that Defendants, through their actions and inactions, failed to protect adults in ODOC's custody (also known as AICs) from the heightened risk that COVID-19 presents in the custodial setting. They further allege that, by way of those actions and inactions, Defendants were negligent and deliberately indifferent to the AICs' serious medical needs. Among those actions and inactions includes Defendants' failures to implement and enforce policies intended to achieve social distancing consistently with public health guidance. ECF 282, at 37. Plaintiffs further contend that Defendant Brown was deliberately indifferent because, among other things, she failed to more broadly exercise her release, commutation, and reprieve authority to reduce the prison population and create space for social distancing within ODOC's institutions, and because she only further reduced the space available for social distancing by closing certain institutions. Kevin Gleim is in possession of information relevant to those claims.

      Mr. Gleim was an attorney in the Governor's Office during the Class Period.[2] Defendants did not initially identify Mr. Gleim as a custodian with information relevant to Plaintiffs' claims, but during a recent deposition of Nathaline Frener, ODOC's former Assistant Director of Correction Services and the ODOC staff person charged with overseeing the COVID-19 early release program, Plaintiffs learned for the first time that ODOC, through Ms. Frener, spoke with Gleim "all the time, every day" for the purpose of determining, assessing, and implementing the COVID-19 early release and commutation program that Defendant Brown directed and oversaw. Ms. Frener testified that Gleim was the primary person designated to implement that process in the Governor's Office.[3]

---

[2]     He is not ODOC's attorney, however. Thus, conversation between Gleim and ODOC staff are not protected by the attorney-client privilege.

[3]     *See* Frener Depo. at 48:21–49:19. Notably, Defendants not only failed to identify Gleim as a custodian of information relevant to Plaintiffs' claims, but also affirmatively represented to undersigned counsel that Governor's Office staff primarily communicated with Heidi Steward and Colette Peters, and not other ODOC staff, on issues relating to COVID-19. Dahab Decl. ¶ 4. Neither representation was correct. Because those representations formed the basis of the search terms on which the parties agreed for documentary discovery, counsel was unable to identity Gleim as a custodian of relevant information before March 20, 2023. Dahab Decl. ¶ 4.

3 – PLAINTIFFS' MOTION TO COMPEL

Defendants contend that Mr. Gleim's testimony relating to the COVID-19 early release/commutation program is outside the scope of permissible discovery under Rule 26 because, according to Defendants, early release decisions fall entirely outside the scope of this Court's authority to adjudicate. In Defendants' view,

> Governor Brown's exercise of her authority to grant reprieves, commutations, and pardons is discretionary and "courts have no authority to inquire into the reasons or motives which actuate the Governor in exercising the power." Governor Brown's decision to exercise (or not exercise) her discretionary authority cannot form the basis of a claim for an Eighth Amendment violation. Further, this Court has already concluded that Defendants are entitled to discretionary immunity based on policies relating to the release of AICs, and therefore Plaintiffs cannot pursue a claim for negligence based on the State's alleged "fail[ure] to release or relocate AICs [adults in custody] to allow for adequate social distancing."

Dahab Decl. ¶ 5, Ex. C (citations omitted). Defendants effectively reprise the arguments they made in support of their motion to strike Plaintiffs' allegations relating to release, which this Court denied. ECF 272 (holding that the early release allegations "provide relevant background and context to Plaintiffs' claims, are 'arguably relevant' to Plaintiffs' deliberate indifference claim, and are not unduly prejudicial to Defendants).[4]

Then and now, Defendants' arguments miss the point. Plaintiffs do not challenge, and have never challenged, any particular decision that Defendant Brown (or anyone in her office) made in the exercise of her release, clemency, of reprieve authority. Nor do they challenge the early release/commutation program as a whole or the particular criteria that Defendant Brown determined should govern an AIC's eligibility for release. *See* Dahab Decl. ¶ 6, Ex. D (listing those criteria). Instead, Plaintiffs contend that Defendant Brown's knowledge of the inability to socially distance in ODOC's institutions, coupled with her decision not to release AICs from ODOC custody to ensure social distancing, tends to establish that Defendants knew of and disregarded an excessive risk to inmate health or safety in violation of the Eighth Amendment. This, at its core, is deliberative indifference. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994)

---

[4]   Without restating them here, Plaintiffs incorporate herein by reference their arguments in response to Defendants' motion to strike the release allegations. *See* ECF 254, at 6–11.

(an official who is deliberately indifferent must "kno[w] of and disregar[d] an excessive risk to inmate health or safety"). That is particularly true where the decision not to further reduce the prison population through the early release/commutation program was motivated by reasons other than AIC health and safety.[5]

Gleim is in possession of information relevant to Plaintiffs' claims—specifically, information relating to Defendant Brown's early release program and the process involved in implementing that program. Plaintiffs are entitled to his deposition.

## II.   Plaintiffs are entitled to depose the Honorable Kate Brown.

Federal cases provide a framework for determining when to protect a current or former government official from a deposition under Rule 26(c). *See Smith v. City of Stockton*, 2017 WL 11435161, at *2 (E.D. Cal. Mar. 27, 2017). Under that framework, "an individual objecting to a deposition must first demonstrate he is sufficiently high-ranking to invoke the deposition privilege." *Estate of Levingston v. Cty. of Kern*, 320 F.R.D. 520, 525 (E.D. Cal. 2017). Upon such a showing, the court then considers whether "extraordinary circumstances" justify deposing the official, based on "(1) whether the deponent has unique first-hand, nonrepetitive knowledge of the facts at issue in the case; and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Id.*; *see Coleman*, 2008 WL 4300437, at *3 (plaintiffs must show that deponent "possess[es] personal knowledge of facts critical to the outcome of the proceedings and that such information cannot be obtained by other means").

Courts have discretion to limit the timing and scope of that deposition to avoid the "potential for abuse or harassment." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). As many courts have explained, "high ranking government officials have greater duties and time constraints than other witnesses and . . . without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Thomas v.*

---

[5]   *Cf.* Frener Depo. at 91:18–93:19 (decision to release only those convicted of non-person crimes means that ODOC was releasing those who are *more* likely to reoffend; ODOC suggested to Governor that the early release program be opened up to "have a bigger impact" but understood that doing so would be a "harder . . . sell").

5 – PLAINTIFFS' MOTION TO COMPEL

*Cate*, 715 F. Supp. 2d 1012, 1048 (E.D. Cal. 2010). To that end, such depositions generally are not permitted in the absence of "extraordinary circumstances." Extraordinary circumstances exist when the official has personal knowledge relating to material issues in the litigation and when that information may not be available through other sources. *Coleman v. Schwarzenegger*, 2008 WL 4300437, at *2 (E.D. Cal. Sept. 15, 2008). With respect to former government officials, however, "one important rationale for the rule is absent." *Thomas*, 715 F. Supp. 2d at 1049–50 (rationale based on interference with official duties does not exist as to former officials)). Thus, there is a "marked difference between current and former government officials in terms of the likely frequency and onerousness of discovery requests." *Jackson Mun. Airport Auth. v. Reeves*, 2020 WL 5648329, at *3 (S.D. Miss. Sept. 22, 2020) (internal quotations marks omitted).

This Court has already exercised its discretion to limit the timing of Defendant Brown's deposition. In November 2022, when Brown was in office, Defendants moved for a protective order barring her deposition on the ground that Plaintiffs had failed to establish extraordinary circumstances. ECF 410. This Court granted in part and denied in part that motion, concluding that Plaintiffs had not "met the burden of demonstrating extraordinary circumstances to justify taking Governor Kate Brown's deposition before the end of her current term." *Id.* The Court noted that "Plaintiffs ha[d] not yet exhausted other less intrusive discovery methods, such as depositing Governor Brown's staff or serving interrogatories." *Id.* The Court therefore "barr[ed] Governor Brown's deposition prior to January 9, 2023," but denied the request to "ba[r] Governor Brown's deposition altogether," allowing "leave to renew if Plaintiffs notice her deposition again after exhausting less intrusive discovery methods." *Id.*

Defendant Brown is no longer in office, and Plaintiffs have undertaken extensive less-intrusive discovery to narrow the scope of discovery necessary directly from her. But a deposition is still necessary; as explained below, Defendant Brown possesses information central to Plaintiffs' claims that Plaintiffs cannot obtain through any other means. Her deposition should therefore be allowed.

### A. Brown was personally involved in the actions giving rise to Plaintiffs' claims and has unique, personal knowledge of information central to those claims.

Courts will generally consider subjecting a high-ranking government official to a deposition only if the official has first-hand knowledge related to the claims at issue and other persons cannot provide the necessary information. *See Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007); *Thomas*, 715 F. Supp. 2d at 1049. That is the case with respect to Defendant Brown. Defendant Brown was involved in (and made) decisions that are central to Plaintiffs' claims, including decisions relating to early release or commutations of the sentences for AICs and decisions relating to the closure of certain ODOC institutions. And although she presumably was aware of the health risks of COVID-19 in the corrections setting and the impossibility of social distancing in ODOC facilities,[6] she failed to undertake additional steps to increase the space available for social distancing or inquire with ODOC about the possibility or need to do so.

As Governor, Brown was the Executive head of state, overseeing all state agencies, including ODOC. Peters Depo at 23:2–10 (ODOC Director reports directly to the Governor). In that capacity, Brown made decisions relating to the health and safety of AICs confined in ODOC's facilities. For instance, early in the pandemic, she commissioned a workgroup to "evaluate the potential of releasing individuals from ODOC's custody" to "reduce the likelihood of COVID-19 and increase ODOC's ability to practice social distancing." Dahab Decl. ¶ 7, Ex. E. Over the next several months, she wrote Defendant Peters multiple times requesting that Peters identify vulnerable AICs for possible commutation based on certain criteria that Brown provided. Dahab Decl. ¶¶ 6 (Ex. D), 8 (Ex. F). Brown changed that criteria over time and granted limited commutations in response. Dahab Decl. ¶ 9, Ex. G.

---

[6] Because they have not been able to depose her, Plaintiffs have not been able to fully understand the scope of that awareness and understanding. Depositions of Governor's Office staff at the time have not been particularly illuminating. *See, e.g.*, Severe Depo. at 16:20–25 ("Q. And do you know whether the Governor knew that [social distancing] was impossible? A: I mean, I don't know if anybody ever said it exactly like that, like impossible . . . ."); Blosser Depo. at 47:9–13 ("Q. . . . [T]he letter [from Lisa Hay about the dangers of COVID-19 in the corrections setting] is addressed to Governor Brown. Would you have forwarded this to Governor Brown at any point? A. I don't know.").

7 – PLAINTIFFS' MOTION TO COMPEL

Brown also made decisions relating the closure of certain ODOC facilities, including Mill Creek Correctional Facility and Shutter Creek Correctional Institution, both of which were closed during the COVID-19 emergency.[7] Those decisions required other institutions to absorb the Shutter Creek and Mill Creek populations, increasing the density of those institutions and decreasing opportunities for social distancing.[8] And Brown had the authority, but apparently did not exercise it, to undertake additional steps to increase the space available for social distancing or inquire with ODOC about the possibility or need to do so.

Furthermore, no one other than Defendant Brown can testify to her reasons, mental impressions, or process in making those decisions. The depositions that Plaintiffs already have taken bear that out. ODOC staff, including then-Director Peters and then-Deputy Director Steward, testified that Brown made ultimate decisions relating to both release and facility closure.[9] They could not testify, however, as to why Defendant Brown made them.[10]

Indeed, the ODOC depositions that Plaintiffs have taken have only given rise to more questions than answers. Peters testified that she met one-on-one with Governor Brown during the Class period about issues relating to COVID-19, but she has no recollection about the topics the two discussed.[11] She also did not recall whether ODOC ever asked the Governor for additional funding or staff to bring online mothballed facilities or to use other ODOC space for social

---

[7] *See* Jake Thomas, *Why Salem's Mill Creek Correctional Facility Will Be Shuttered in July*, Salem Reporter (Jan. 28, 2021), https://www.salemreporter.com/2021/01/28/why-salems-mill-creek-correctional-facility-will-be-shuttered-by-july/ (last visited Apr. 10, 2023); Amanda Slee, *Curtains for Shutter Creek: Oregon Governor Sticks With Plan to Close Prison by January*, KCBY (July 28, 2021), https://kcby.com/news/local/curtains-for-shutter-creek-oregon-governor-sticks-with-plan-to-close-prison-by-january (last visited Apr. 10, 2022).

[8] These were not the only decisions that Brown made that gave rise to the harms suffered by Plaintiffs and members of the certified classes. As this Court is aware, also made several decisions relating to the delivery of COVID-19 vaccines to AICs in early 2021. *See* ECF 178.

[9] *See, e.g.*, Peters Depo. at 103:9–104:17 (Governor made the closure decisions); Gower Depo. at 135:17–136:1 (closure decisions are made between the director and "her boss, the Governor").

[10] *See, e.g.*, Peters Depo. at 104:1–17 (that "would be a question for the Governor").

[11] Peters Depo. at 27:12–19; 28:14–23 ("Q. In those . . . meetings do you recall . . . what issues you might have discussed with the Governor? A. I don't recall specifically, but—yeah, I don't recall specifically . . . generally about COVID-related issues.").

8 – PLAINTIFFS' MOTION TO COMPEL

distancing.[12] She did not recall whether ODOC provided input to the Governor's office about the conditions of eligibility for early release,[13] but testified that the Governor alone made the ultimate decisions on that issue.[14] She also did not know why the Governor made certain decisions about institution closures, noting that those questions were for the Governor alone.[15]

> **B.    Plaintiffs have exhausted less-intrusive discovery methods.**

In pursing answers to those questions, Plaintiffs have exhausted less-intrusive means of discovering the information but have still been unable to do so. Since this Court's November 2022 order, Plaintiffs have propounded interrogatories on Defendant Brown[16] and have deposed then-Governor Brown's Public Safety and Health Policy Advisors, Constantin Severe and Tina Edlund. Based on information learned during those depositions, they also deposed then-Governor Brown's Chief of Staff, Nik Blosser.[17]

Those depositions did not, however, provide the answers to which Plaintiffs are entitled.[18] They did not, for instance, clarify the scope of Defendant Brown's understanding of the risk of COVID-19 in the corrections setting or the nature and efficacy of any COVID-19

---

[12]    Peters Depo. at 64:18–25; 65:3–9 ("Q. Did you ever, in the early stage of the pandemic, ask the legislature or the Governor for additional funding to staff or reopen those facilities? A. I don't recall, specifically. Q. Did you ever consider doing that? A. I don't recall.").

[13]    Peters Depo. at 83:9–13 ("Q. Did you provide input to the Governor regarding conditions of eligibility? A. I don't recall being a part of those conversations. I'm not saying it didn't happen.").

[14]    Peters Depo. at 83:21–25 ("A. You know, for me, the commutation authority is a very special constitutional authority, and so that really would be the opinion of the Governor, and the Governor alone, as to what criteria she would want to consider as she makes these very difficult decisions.").

[15]    Peters Depo. at 104:1–17 ("Q. And you don't know . . . what factors made her close the other two over Warner Creek? A. No."); *id.* at 105:2–16 (Q. And did you ever consider whether closing institutions in the pandemic would negatively impact the ability of DOC to provide social distancing space for AICs? A. I don't recall having that thought or having those conversations.").

[16]    Dahab Decl. ¶ 5, Ex. C.

[17]    Edlund testified that information would typically flow from the ODOC through Mr. Severe and then either directly to the Governor or through her Chief of Staff. Edlund Depo. at 52:13–53:9. According to Blosser, he was "the top advisor to the Governor," meaning "the chief proxy for the Governor when she can't be there dealing with congress, dealing with the administration, dealing with agency leaders, dealing externally in the business community, and just basically doing everything you can to support the Governor achieving her goals." Blosser Depo. at 10:19–11:14.

[18]    As noted above, Plaintiffs have requested, but Defendants have refused, the deposition of Kevin Gleim.

9 – PLAINTIFFS' MOTION TO COMPEL

relating safety measures that ODOC had undertaken.[19] Nor did they answer Plaintiffs' questions about the closure of ODOC's institutions[20] or the reasons or process for Brown's early release program,[21] and they did not clarify whether Defendant Brown ever considered the use of alternative spaces for social distancing.[22] Thus, in the absence of a deposition of Defendant Brown herself, Plaintiffs continue to lack information necessary to prove their claims for relief.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully urge the Court to enter an order compelling the depositions of Kevin Gleim and the Honorable Kate Brown.

---

[19]     *See, e.g.*, Severe Depo. at 16:20–25 ("Q. And do you know whether the Governor knew that [social distancing] was impossible? A. . . . I don't know if anybody ever said it exactly like that, like impossible . . . ."); Blosser Depo. at 47:9–13 ("Q. . . . [T]he letter [from Lisa Hay about the dangers of COVID-19 in the corrections setting] is addressed to Governor Brown. Would you have forwarded this to Governor Brown at any point? A. I don't know."); *id.* at 62:17–19 ("Q. Did OHA recommend social distancing in prisons? A. I don't remember. I don't know."); *id.* at 64:2–4 ("Q. Was six feet of social distancing possible in Oregon prisons? A. I don't know."); Edlund Depo. at 54:8–16 ("Q. Is social distancing possible in Oregon's prisons? A. I don't know. Q. Are you [the Governor's Health Policy Advisor] familiar with the strategies the governor's office took or considered taking to protect against the spread of COVID-19 in Oregon's prisons? A. I don't know."); *id.* at 67:15–17 (Q. Was the governor aware of [issues] with respect to mask noncompliance? A. I don't know."); *id.* at 73:4–74:12 (Q. Did [the Health Policy Advisor] ever have any specific conversations with Mr. Severe or Mr. Blosser or anyone else in the governor's office about specific strategies for managing COVID-19 in prison? A. No.").

[20]     Blosser Depo. at 84:1–6 ("Q. Who . . . makes the final decision on which [institutions] to close and which ones to leave open? A. You know, I'm not 100 percent sure if the Governor has to tell Colette to do that or if Colette does it. I'm not 100 percent sure.").

[21]     Blosser Depo. at 72:23–25 ("Q . . . [T]hen how did she go about making the ultimate decision? A. I don't remember exactly that."); *id.* at 74:1–4 ("Q. Did the Governor have some goal for how far to reduce the prison population at this time? A. I don't remember that—if we had a specific goal in mind or not."); *id.* at 9–14 ("Q. Were any . . . public health professionals involved in the process to— A. I assume they were. I don't know.").

[22]     Blosser Depo. at 91:1–12 ("Q. Was there ever any consideration given to using Deer Ridge space for—to put beds in Deer Ridge? A. Not that I—I don't know."); *id.* at 91:25–92:5 ("Q. Okay. Did the Governor or the Governor's Office ever talk with DOC about the possibility of using those mothballed facilities or other unused space? A. I don't know. Not that I remember being witness to."); *id.* at 92:13–16 ("I mean, to the question of did – did DOC ask for money to open the mothballed facility? I don't know, not to me, not that I remember. But you have to remember, like, agencies were asking for money all the time every day and so it's possible but I don't remember it if it happened."); *id.* at 94:6–11 ("Q. . . . DOC never came to the Governor's Office to—with the proposal to put online unused space? A. I can't say if they did or didn't to the Governor's Office. I don't remember seeing that.").

10 – PLAINTIFFS' MOTION TO COMPEL

DATED this 10th day of April, 2023.

Respectfully submitted,

**Juan C. Chavez**, OSB No. 136428
**Brittney Plesser**, OSB No. 154030
**Franz Bruggemeier**, OSB No. 163533
**Alex Meggitt**, OSB No. 174131
**Benjamin Haile**, OSB No. 040660
OREGON JUSTICE RESOURCE CENTER
P.O. Box 5248
Portland, OR 97208
Tel: (503) 944-2270
Fax: (971) 275-1839

/s/ Nadia H. Dahab
**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
**Sarah R. Osborn**, OSB No. 222119
SUGERMAN DAHAB
707 SW Washington St. Ste 600
Portland, OR 97205
Tel: (503) 228-6474
Fax: (503) 228-2556

11 – PLAINTIFFS' MOTION TO COMPEL