**Kerry J. Shepherd, OSB #944343**
KerryShepherd@MarkowitzHerbold.com
**Molly K. Honoré, OSB #125250**
MollyHonore@MarkowitzHerbold.com
**Jermaine F. Brown, OSB #073415**
JermaineBrown@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085
Fax: (503) 323-9105

Special Assistant Attorneys General for Defendants
[Additional Counsel of Record Listed on Signature Page]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

PAUL MANEY; GARY CLIFT; GEORGE NULPH; THERON HALL; DAVID HART; SHERYL LYNN SUBLET; and FELISHA RAMIREZ, personal representative for the ESTATE OF JUAN TRISTAN, individually, on behalf of a class of other similarly situated,

Plaintiffs,

v.

STATE OF OREGON; KATE BROWN; COLETTE PETERS; HEIDI STEWARD; MIKE GOWER; MARK NOOTH; ROB PERSSON; KEN JESKE; PATRICK ALLEN; JOE BUGHER; and GARRY RUSSELL,

Defendants.

Case No. 6:20-cv-00570-SB

**DEFENDANTS' OPPOSITION TO BOBBIN SINGH'S MOTION TO QUASH DEPOSITION SUBPOENA**

## INTRODUCTION

The Court should deny Mr. Singh's motion to quash because the testimony sought is discoverable and relevant to the viability of plaintiffs' new theory that the closure of two prisons constituted cruel and unusual punishment, Mr. Singh's First Amendments rights are not infringed or implicated by his testimony, and he will not be unduly burdened by sitting for a deposition.

## ARGUMENT

### I. Mr. Singh's statements about his opposition to, or his support for, prison closures and other COVID-19 related issues are relevant to plaintiffs' theory that prison closures violated the Eighth Amendment.

In 2021, the State closed two prisons: Mill Creek Correctional Facility and Shutter Creek Correctional Institution. (Conrad Wilson, *Oregon Gov. Kate Brown Reverses Course, Keeps Warner Creek Prison Open*, OPB, May 14, 2021, https://www.opb.org/article/2021/05/14/oregon-gov-kate-brown-warner-creek-prison-closure/.) Recently, plaintiffs have asserted that the State should not have closed these prisons during the pandemic because that made it harder for adults in custody state-wide to socially distance. (Pls' Mot. to Compel (Dkt. 441) at 7-8.)

Mr. Singh's testimony is relevant to this theory. Mr. Singh is the Executive Director of the Oregon Justice Resource Center (OJRC). While OJRC is plaintiffs' counsel in this case, it is also an advocacy organization that promotes issues related to AIC rights and criminal justice reform. (*See About Us*, Oregon Justice Resource Center, https://ojrc.info/about-us (last visited May 5, 2023).) There is nothing privileged or sacrosanct about OJRC's advocacy activities to wall them from discovery. As Mr. Singh explains in his motion, "OJRC is by far the largest and most directed critic of the state's prison policies." (Bobbin Singh's Mot. To Quash Dep. Subpoena (Dkt. 448) ("Mot.") at 4.) Despite OJRC's critical eye toward Oregon's prison's policies, when the State announced the closure of Mill Creek and Shutter Creek, Mr. Singh and OJRC supported the closures, stating "We should not live in a state where a community feels it necessary to celebrate the continued operation of a prison . . . ." (*Id.* at 3.) Mr. Singh's statements in support of these prison closures are relevant to plaintiffs' assertions that the prison

closures constituted cruel and unusual punishment.[1] OJRC is frequently a critic of State prison policies and specifically advocates for the rights of AICs to be free from "cruel and unusual conditions of confinement." (*Civil Rights Project*, Oregon Justice Resource Center, https://ojrc.info/civil-rights-project (last visited May 5, 2023).). But Mr. Singh's public statements suggest that OJRC *supported* the State's prison closures. Thus, Mr. Singh could have relevant testimony regarding whether the prison closures—or other State policies—constituted cruel and unusual punishment.

Separately, it is important to note that plaintiffs have made State officials' understanding of and response to advocacy by OJRC an issue in this case. Mr. Singh communicated with Defendants about ODOC policies pertaining to COVID-19. During depositions, plaintiffs asked at least one witness about an email received from Mr. Singh regarding COVID-19 policies and how the State responded to Mr. Singh's recommendations. (12/19/22 Severe Dep. at 146:21 - 147:25, Ex. 4, attached to Decl. of Anit Jindal in Supp. of Defs' Opp'n to Bobbin Singh's Mot. to Quash Dep. Subpoena ("Jindal Decl.") as Ex. 1.)

Plaintiffs have also made an issue of Defendants' response to advocacy groups generally. For example, in depositions, plaintiffs have presented State officials with recommendations made by different advocacy groups on issues pertaining to ODOC's COVID-19 response and questioned officials about how they responded to those recommendations. Specifically, plaintiffs have asked witnesses about their response to recommendations in separate memoranda from the "Amend Program" operated by U.C. San Francisco regarding population reduction issues, and by the Federal Public Defender's Office. (12/19/22 Severe Dep. at 178:15-180:2, Ex. 16, attached to Jindal Decl. as Ex. 1 (Oregon Public Safety Advisor testifying about prison

[1] For the avoidance of doubt, the closure of two specific prisons at the tail end of the class period is irrelevant to plaintiffs' claims. Plaintiffs did not plead prison closures as a basis for liability and the closure of these prisons was not a "systemwide" policy that persisted "throughout the class period." Further, defendants' role in implementing these closures is subject to a host of immunity doctrines, including qualified immunity and legislative immunity. Similarly, defendants' receipt of unsolicited emails from advocacy groups is of minimal probative value in determining deliberate indifference. But because plaintiffs' have raised these issues, defendants have the right to seek discoverable information regarding them.

recommendations from Oregon's Federal Public Defender); 03/02/23 Blosser Dep. at 45:10-50:25, Exs. 2, 3, attached to Jindal Decl. as Ex. 2 (Governor Brown's Chief of Staff testifying about same); 01/18/23 Peters Dep. at 39:25-45:20, Exs. 1, 2, attached to Jindal Decl. as Ex. 3 (Oregon DOC Director testifying about prison reform advocacy by Director of Amend Program).) By the same token, the State wants discovery from Mr. Singh about any of his advocacy, including the quoted passage above, that may support the State's decision to close prisons. Given OJRC's prominent role as the State's premier advocacy organization for AIC rights, the State is entitled to know whether OJRC supported the State's position on facility closures, whether OJRC communicated its views on prison closures to others, and if so who in State government (e.g., legislators, agency staff) OJRC communicated with regarding prison closures.

**II. Mr. Singh's First Amendment rights are not being infringed or even implicated.**

Mr. Singh's First Amendment arguments are misplaced. He argues that the requested discovery here infringes on his First Amendment right of free speech. In the Ninth Circuit, the party asserting this privilege "must demonstrate ... a 'prima facie showing of arguable first amendment infringement.'" *Brock v. Local 375, Plumbers Int'l Union of Am.*, 860 F.2d 346, 349–50 (9th Cir. 1988) (citation omitted). This prima facie showing requires Mr. Singh to demonstrate that enforcement of the deposition subpoena will result in "consequences which objectively suggest an impact on, or 'chilling' of," his First Amendment rights. *Id.* at 350.

Further, the Ninth Circuit has held that "[b]are allegations of possible first amendment violations are insufficient to justify judicial intervention." *McLaughlin v. Serv. Employees Union*, 880 F.2d 170, 175 (9th Cir. 1989, as amended July 17, 1989). Instead, Mr. Singh must provide "objective and articulable facts, which go beyond broad allegations or subjective fears." *Brock*, 860 F.2d at 350 n. 1; *SpeechNow.org v. Fed. Election Comm'n*, No. CV 08-7056 JFW (FMOx), 2009 WL 10675043, at *4 (C.D. Cal. Jan. 16, 2009) (quoting same).

Mr. Singh has not explained how answering questions at a deposition would have a deterrent effect on his First Amendment rights. Mr. Singh is free to express his opinions on prison closures publicly or privately as he sees fit. The State is not prohibiting Mr. Singh from

expressing his opinions in any way. The case law addressing First Amendment challenges to discovery requests discuss freedom of *association* harm created by compelled disclosure of confidential member lists of civil rights organizations. Courts have been reluctant to extend the privilege to other forms of First Amendment activity, likely because every deposition or document request inquires into the witness's prior statements, which would include protected speech. *See Perry v. Schwarzenegger*, 264 F.R.D. 576, 580 (N.D. Cal. 2009) ("These cases from the civil rights struggles of the 1950s would thus appear to offer proponents scant support for refusing to produce information other than rank-and-file membership lists . . . ."). Here, Mr. Singh has not demonstrated that his First Amendment rights are implicated by this subpoena.

**III. Mr. Singh would not be unduly burdened by sitting for a deposition.**

Regarding the argument that the burden on Mr. Singh is "undue," he is correct that courts often apply a balancing test—the relevance of the information versus the burden on the witness. As this Court has put it, the Court determines whether "the burden or expense of the proposed discovery" outweighs "its likely benefit." *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630, 637 (D. Or. 2015) (quoting FRCP 26(b)(1).).

But Mr. Singh is incorrect when he says his status as a non-party weighs in favor of finding undue burden. He cites *Dart Indus. Co., Inc. v. Westwood Chemical Co*. 649 F.2d 646, 649 (9th Cir. 1980) for that proposition, but in *Dart*, the Ninth Circuit merely opined that "[w]hile discovery is a valuable right and should not be unnecessarily restricted, the 'necessary' restriction *may* be broader when a non-party is the target of discovery." *Id.* (emphasis added) (internal citation omitted). Much more recently, the Ninth Circuit clarified that it "will not read 'undue burden' differently just because a non-party was subpoenaed." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012). And, relying on *Mount Hope*, this Court has acknowledged that non-party discovery is not evaluated any differently from discovery requests to parties. *St. Jude*, 305 F.R.D. at 637. Mr. Singh's status as a non-party does not give him any special consideration here.

The burden on Mr. Singh to appear at a deposition is minimal. It will consist of a few hours of his time, and he is a lawyer who is familiar with the deposition process. (*See Bobbin*

*Singh, Executive Director & Co-Founder*, Oregon Justice Resource Center, https://ojrc.info/bobbin-singh (last viewed May 5, 2023).)

## CONCLUSION

This is a routine demand for discoverable information, and Mr. Singh has not explained how his First Amendment rights would be infringed, nor has he demonstrated any undue burden. The Court should deny Mr. Singh's motion to quash.

DATED this 8th day of May, 2023.

ELLEN ROSENBLUM
ATTORNEY GENERAL
FOR THE STATE OF OREGON

By: *s/ Anit K. Jindal*

Kerry J. Shepherd, OSB #944343
KerryShepherd@MarkowitzHerbold.com
Molly K. Honoré, OSB #125250
MollyHonore@MarkowitzHerbold.com
Jermaine F. Brown, OSB #073415
JermaineBrown@MarkowitzHerbold.com
*Special Assistant Attorneys General for Defendants*

R. Kyle Busse, OSB #070994
KyleBusse@MarkowitzHerbold.com
Chad A. Naso, OSB #150310
ChadNaso@MarkowitzHerbold.com
Anit K. Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com
*Attorneys for Defendants*

Tracy Ickes White, OSB #904127
Tracy I.White@doj.state.or.us
DEPARTMENT OF JUSTICE
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
*Attorneys for Defendants*

1443108