IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| PAUL MANEY; GARY CLIFT; GEORGE NULPH; THERON HALL; DAVID HART; SHERYL LYNN SUBLET, and FELISHIA RAMIREZ, a personal representative for the ESTATE OF JUAN TRISTAN, individually, on behalf of a class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF OREGON; KATE BROWN; COLETTE PETERS; HEIDI STEWARD; MIKE GOWER; MARK NOOTH; ROB PERSSON; KEN JESKE; PATRICK ALLEN; JOE BUGHER; and GARRY RUSSELL,<br><br>Defendants. | Case No. 6:20-cv-00570-SB<br><br>**OPINION AND ORDER** |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiffs Paul Maney, Gary Clift, George Nulph, Theron Hall, David Hart, and Sheryl Lynn Sublet, adults in custody ("AIC") at Oregon Department of Corrections ("ODOC") institutions, along with Felishia Ramirez, the personal representative for the Estate of Juan Tristan (together, "Plaintiffs"), filed a motion for an order compelling former Governor Kate

PAGE 1 – OPINION AND ORDER

Brown ("Governor Brown"), former Oregon Health Authority Director Patrick Allen, several ODOC officials, and the State of Oregon (together, "Defendants") to make Kevin Gleim ("Gleim"), former Special Projects Attorney at the Office of the Governor, available for deposition.[1] (ECF No. 441.) Defendants filed a motion for protective order, seeking to bar Gleim's deposition. (ECF No. 446.) All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636.

For the reasons that follow, the Court grants Plaintiffs' motion for an order compelling Defendants to make Gleim available for deposition and denies Defendants' motion for a protective order barring Gleim's deposition.

## PROCEDURAL BACKGROUND

Plaintiffs filed this class action in April 2020, alleging that Defendants failed to protect AICs in ODOC's custody from the heightened risk that COVID-19 presented in the custodial setting. (*See* Sixth Am. Compl. ("SAC"), ECF No. 282.) A jury trial is scheduled to begin in July 2024. (*See* ECF No. 435.)

In May 2020, in the early days of the COVID-19 pandemic, Plaintiffs filed a motion for temporary restraining order and preliminary injunction to require Defendants to reduce the AIC population at each ODOC facility, appoint an expert to effectuate the rapid downsizing of those facilities, require Defendants to provide safe and non-punitive housing separation of AICs in each ODOC facility based on their COVID-19 infection status, require Defendants to create and enforce procedures to reduce the risk of COVID-19 transmission in ODOC facilities consistent with public health guidance, and immediately implement new procedures to bring ODOC in

---

[1] Plaintiffs also moved for an order compelling Defendants to make Governor Brown available for deposition. The Court addresses that request in a separate opinion.

compliance with expert guidance and appoint an independent monitor to ensure such compliance. (ECF No. 14.) Following an evidentiary hearing (ECF No. 107), the Court denied Plaintiffs' motion (ECF No. 108).

In August 2020, Defendants filed a motion for partial summary judgment arguing, as relevant here, that qualified immunity bars Plaintiffs' Eighth Amendment claims and discretionary immunity bars Plaintiffs' negligence claims. (ECF No. 115.) Following oral argument (ECF No. 147), the Court denied Defendants' motion with respect to qualified immunity, but granted the motion in part with respect to discretionary immunity and entered partial summary judgment on Plaintiffs' negligence claims. (Op. & Order, ECF No. 149.) Specifically, the Court "agree[d] that discretionary immunity protects the State from negligence liability for public policy decisions made by policymakers with authority, but Plaintiffs' negligence claim here challenges more than just high-level policy decisions." (*Id.* at 14.) The Court entered summary judgment on Plaintiffs' negligence claims challenging Defendants' deliberative policy decisions, but not on their claims challenging failures to act or to implement policy decisions. (*Id.* at 14-25.)

In July 2021, Defendants filed a motion to dismiss Plaintiffs' fourth amended complaint arguing, as relevant here, that Defendants cannot be held liable under the Eighth Amendment for Governor Brown's discretionary exercise of her constitutional clemency powers and that none of the remaining allegations state a claim against Governor Brown. (ECF No. 245.) Following oral argument (ECF No. 262), the Court denied Defendants' motion to dismiss with respect to Plaintiffs' claim against Governor Brown, holding that Plaintiffs alleged sufficient facts that a causal connection exists between Plaintiffs' alleged injuries and Governor Brown's involvement

PAGE 3 – OPINION AND ORDER

in implementing and overseeing ODOC's policies, and that Governor Brown knew or reasonably should have known the consequences of her actions or inaction.[2] (Op. & Order at 12-15.)

In April 2022, the Court granted Plaintiffs' motion to certify two classes of plaintiffs: (a) the "damages" class, with respect to Plaintiffs' Eighth Amendment deliberate indifference and negligence claims, defined as "[a]ll adults incarcerated in Oregon Department of Corrections facilities who: (1) were incarcerated on or after February 1, 2020; (2) while incarcerated, tested positive or were otherwise diagnosed with COVID-19; and (3) if they became incarcerated after February 1, 2020, tested positive or were otherwise diagnosed with COVID-19 at least fourteen days after they entered Oregon Department of Corrections custody;" and (b) the "wrongful death" class, with respect to Plaintiffs' wrongful death claims, defined as "[e]states of all adults incarcerated at Oregon Department of Corrections facilities continuously since February 1, 2020, who died during the Wrongful Death Class period, and for whom COVID-19 caused or contributed to their death[.]" (Op. & Order at 53-54, ECF No. 377.) Defendants sought permission to appeal the Court's class certification opinion, but the Ninth Circuit denied Defendants' request in May 2022. (*See Maney v. State of Or.*, No. 22-80033, ECF No. 4.)

On April 10, 2023, Plaintiffs filed the motion to compel at issue here, and Defendants responded with their motion for protective order on April 17, 2023. (ECF Nos. 441, 446.) The Court heard oral argument on the motions on May 24, 2023. (ECF No. 462.)

## LEGAL STANDARDS

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

---

[2] The Court noted Defendants' early acknowledgment in this litigation that Governor Brown was personally involved with authorizing and overseeing ODOC's COVID-19 policies. (Op. & Order at 14 n.3, ECF No. 272.)

proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). Rule 26 lists the relevant proportionality factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Rule 26(c) also provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by, among other things, not allowing a deposition or limiting its scope. FED. R. CIV. P. 26(c)(1).

## DISCUSSION

Plaintiffs move to compel the deposition of Gleim, who was an attorney in Governor Brown's office during the relevant time period. During a recent deposition, Nathaline Frener, ODOC's former Assistant Director of Correctional Services, testified that she spoke with Gleim "all the time, every day" for the purpose of determining, assessing, and implementing Governor Brown's early release program. (Pls.' Mot. Compel ("Pls.' Mot.") at 3, ECF No. 41.) Frener testified that Gleim was the primary person designated to implement that program in the Governor's office. (*Id.*) Plaintiffs seek to depose Gleim regarding the early release program and the processes involved in implementing that program. (*Id.* at 5.)

Defendants object to any deposition of Gleim, on the grounds that his testimony is irrelevant, privileged, and not proportional to the needs of the case. (Defs.' Mot. Prot. Order & Opp'n to Pls.' Mot. ("Defs.' Mot.") at 18, ECF No. 446.) Specifically, Defendants argue that the early release program is irrelevant to Plaintiffs' theories of liability, Gleim's testimony regarding internal deliberations is privileged, and any resulting discovery would not be proportional to the needs of the case, especially in light of the volume of discovery Defendants have already produced to date. (*Id.* at 18-20.)

PAGE 5 – OPINION AND ORDER

The Court finds that Gleim's testimony is relevant to Plaintiffs' claims and proportional to the needs of the case.³ Plaintiffs allege that other states and experts widely viewed the release of AICs at the onset of the COVID-19 pandemic as critical to preventing the spread of the virus in prisons (*see, e.g.*, SAC ¶¶ 40, 79-86), but that Defendants did not engage in meaningful population reduction measures. Governor Brown is a named defendant in this class action litigation, and Plaintiffs allege that she was deliberately indifferent to protecting members of the class from COVID-19 exposure. Although Plaintiffs are not directly challenging Governor Brown's early release decisions, the information she and others received in connection with the early release program, as well as her decision to close two ODOC institutions during the pandemic, is relevant to her knowledge of whether the population density at ODOC institutions allowed for adequate distancing to protect AICs from the spread of COVID-19. Those facts are relevant to Plaintiffs' claims that Governor Brown and the other defendants knew of, but disregarded, an excessive risk to AICs' health and safety.

Gleim's testimony is also proportional to the needs of the case. At the time Plaintiffs moved for class certification, the "damages class" consisted of over 3,600 AICs who were infected with COVID-19 while in ODOC custody and the "wrongful death" class consisted of forty-five AICs who died as a result of COVID-19. (Op. & Order at 11, ECF No. 377.) Although Plaintiffs have not yet articulated an estimated damages amount, there is no dispute that the amount in controversy is significant. This is not the case of a single AIC seeking to depose high-level state officials to prove an individual claim for relief.

///

---

³ With respect to privilege, Gleim may assert any valid claim of privilege prior to or during his deposition. However, Plaintiffs have represented that they are primarily interested in Gleim's testimony about his non-privileged communications with ODOC.

Furthermore, although Plaintiffs have deposed other witnesses about the early release program, at least one witness has pointed to Gleim as a key figure in the administration of that program and one of ODOC's primary contacts in the Governor's office. For all of these reasons, the Court finds that the benefits of Gleim's deposition outweigh its burden or expense. However, in the interest of proportionality and acknowledging the number of depositions Defendants have accommodated to date, the Court will limit the deposition to two hours.

## CONCLUSION

For the reasons stated, the Court GRANTS Plaintiffs' motion to compel the deposition of Kevin Gleim (ECF No. 441), DENIES Defendants' motion for protective order barring the deposition (ECF No. 446), and ORDERS Defendants to make Gleim available for a deposition, not to exceed two hours, at a time and location convenient to Gleim.

**IT IS SO ORDERED.**

DATED this 7th day of June, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge