IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| PAUL MANEY; GARY CLIFT; GEORGE NULPH; THERON HALL; DAVID HART; SHERYL LYNN SUBLET, and FELISHIA RAMIREZ, a personal representative for the ESTATE OF JUAN TRISTAN, individually, on behalf of a class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF OREGON; KATE BROWN; COLETTE PETERS; HEIDI STEWARD; MIKE GOWER; MARK NOOTH; ROB PERSSON; KEN JESKE; PATRICK ALLEN; JOE BUGHER; and GARRY RUSSELL,<br><br>Defendants. | Case No. 6:20-cv-00570-SB<br><br>**OPINION AND ORDER** |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiffs Paul Maney, Gary Clift, George Nulph, Theron Hall, David Hart, and Sheryl

Lynn Sublet, adults in custody ("AIC") at Oregon Department of Corrections ("ODOC")

institutions, along with Felishia Ramirez, the personal representative for the Estate of Juan

Tristan (together, "Plaintiffs"), filed a motion for an order compelling former Governor Kate

PAGE 1 – OPINION AND ORDER

Brown ("Governor Brown"), former Oregon Health Authority Director Patrick Allen, several ODOC officials, and the State of Oregon (together, "Defendants") to make Governor Brown available for a deposition.[1] (ECF No. 441.) Defendants filed a motion for protective order, seeking to bar Governor Brown's deposition. (ECF No. 446.) All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636.

For the reasons that follow, the Court grants Plaintiffs' motion for an order compelling Defendants to make Governor Brown available for deposition and denies Defendants' motion for a protective order barring Governor Brown's deposition.

## PROCEDURAL BACKGROUND

Plaintiffs filed this class action in April 2020, alleging that Defendants failed to protect AICs in ODOC's custody from the heightened risk that COVID-19 presented in the custodial setting. (*See* Sixth Am. Compl. ("SAC"), ECF No. 282.) A jury trial is scheduled to begin in July 2024. (*See* ECF No. 435.)

In May 2020, in the early days of the COVID-19 pandemic, Plaintiffs filed a motion for temporary restraining order and preliminary injunction to require Defendants to reduce the AIC population at each ODOC facility, appoint an expert to effectuate the rapid downsizing of those facilities, require Defendants to provide safe and non-punitive housing separation of AICs in each ODOC facility based on their COVID-19 infection status, require Defendants to create and enforce procedures to reduce the risk of COVID-19 transmission in ODOC facilities consistent with public health guidance, and immediately implement new procedures to bring ODOC in compliance with expert guidance and appoint an independent monitor to ensure such

---

[1] Plaintiffs also moved for an order compelling Defendants to make Kevin Gleim, former Special Projects Attorney at the Office of the Governor, available for deposition. The Court granted Plaintiffs' motion to compel in a separate opinion.

compliance. (ECF No. 14.) Following an evidentiary hearing (ECF No. 107), the Court denied Plaintiffs' motion (ECF No. 108).

In August 2020, Defendants filed a motion for partial summary judgment arguing, as relevant here, that qualified immunity bars Plaintiffs' Eighth Amendment claims and discretionary immunity bars Plaintiffs' negligence claims. (ECF No. 115.) Following oral argument (ECF No. 147), the Court denied Defendants' motion with respect to qualified immunity, but granted the motion in part with respect to discretionary immunity and entered partial summary judgment on Plaintiffs' negligence claims. (Op. & Order, ECF No. 149.) Specifically, the Court "agree[d] that discretionary immunity protects the State from negligence liability for public policy decisions made by policymakers with authority, but Plaintiffs' negligence claim here challenges more than just high-level policy decisions." (*Id.* at 14.) The Court entered summary judgment on Plaintiffs' negligence claims challenging Defendants' deliberative policy decisions, but not on their claims challenging failures to act or to implement policy decisions. (*Id.* at 14-25.)

In October 2020, Plaintiffs requested a deposition of Governor Brown, as well as (now former) ODOC Director Colette Peters ("Director Peters"), and the Court held an informal telephonic discovery hearing. (Oct. 23, 2020 Hrg. Tr., ECF No. 416.) The Court denied Plaintiffs' request to depose Director Peters at that time, on the ground that the information Plaintiffs sought was available from a less burdensome or alternative source, namely, (then) Deputy Director Heidi Steward ("Steward") or Health Services Administrator Joe Bugher ("Bugher"). (*Id.* at 14, "And so I deny the request, but without prejudice to revisit the issue after the deposition of Deputy Director Steward and Mr. Bugher, if plaintiff deposes him as well. If they have deposed both of those individuals and have identified questions that only Director

PAGE 3 – OPINION AND ORDER

Peters can answer, then we will revisit the request and have another conversation about it and about whether either a limited deposition or written interrogatories is the appropriate response to address that issue."). The Court deferred the question of Governor Brown's deposition pending further briefing, but instructed the parties that it expected Plaintiffs to serve interrogatories and a detailed deposition notice before the question would be appropriate for the Court's review. (*See id.* at 15-18.)

In July 2021, Defendants filed a motion to dismiss Plaintiffs' fourth amended complaint arguing, as relevant here, that Defendants cannot be held liable under the Eighth Amendment for Governor Brown's discretionary exercise of her constitutional clemency powers and that none of the remaining allegations state a claim against Governor Brown. (ECF No. 245.) Following oral argument (ECF No. 262), the Court denied Defendants' motion to dismiss with respect to Plaintiffs' claim against Governor Brown, holding that Plaintiffs alleged sufficient facts that a causal connection exists between Plaintiffs' alleged injuries and Governor Brown's involvement in implementing and overseeing ODOC's policies, and that Governor Brown knew or reasonably should have known the consequences of her actions or inaction.[2] (Op. & Order at 12-15.)

In April 2022, the Court granted Plaintiffs' motion to certify two classes of plaintiffs: (a) the "damages" class, with respect to Plaintiffs' Eighth Amendment deliberate indifference and negligence claims, defined as "[a]ll adults incarcerated in Oregon Department of Corrections facilities who: (1) were incarcerated on or after February 1, 2020; (2) while incarcerated, tested positive or were otherwise diagnosed with COVID-19; and (3) if they became incarcerated after February 1, 2020, tested positive or were otherwise diagnosed with COVID-19 at least fourteen

---

[2] The Court noted Defendants' early acknowledgment in this litigation that Governor Brown was personally involved with authorizing and overseeing ODOC's COVID-19 policies. (Op. & Order at 14 n.3, ECF No. 272.)

days after they entered Oregon Department of Corrections custody;" and (b) the "wrongful death" class, with respect to Plaintiffs' wrongful death claims, defined as "[e]states of all adults incarcerated at Oregon Department of Corrections facilities continuously since February 1, 2020, who died during the Wrongful Death Class period, and for whom COVID-19 caused or contributed to their death[.]" (Op. & Order at 53-54, ECF No. 377.) Defendants sought permission to appeal the Court's class certification opinion, but the Ninth Circuit denied Defendants' request in May 2022. (*See Maney v. State of Or.*, No. 22-80033, ECF No. 4.)

On October 31, 2022, Defendants filed a motion for protective order to prevent Plaintiffs from deposing Governor Brown while she remained in office, "so that Governor Brown can focus on state business, including the upcoming transition to a new administration, and not have to sit for a premature and potentially unnecessary deposition." (Defs.' Mot. Prot. Order at 2, ECF No. 410). Plaintiffs opposed the motion. (ECF No. 414.) The Court granted Defendants' motion for a protective order with respect to Governor Brown's deposition, holding that "Plaintiffs have not met their burden of demonstrating extraordinary circumstances to justify taking Governor Kate Brown's deposition before the end of her current term." (ECF No. 419.) The Court found that "[s]pecifically, Plaintiffs have not yet exhausted other less intrusive discovery methods, such as deposing Governor Brown's staff or serving interrogatories." (*Id.*, "The Court therefore enters a protective order barring Governor Brown's deposition prior to January 9, 2023. The Court denies Defendants' request for a protective order barring Governor Brown's deposition altogether, with leave to renew if Plaintiffs notice her deposition again after exhausting less intrusive discovery methods.").

///

///

PAGE 5 – OPINION AND ORDER

On April 10, 2023, Plaintiffs filed the motion to compel at issue here, and Defendants responded with their motion for protective order on April 17, 2023. (ECF Nos. 441, 446.) The Court heard oral argument on the motions on May 24, 2023. (ECF No. 462.)

## LEGAL STANDARDS

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). Rule 26 lists the relevant proportionality factors: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Rule 26(c) also provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by, among other things, not allowing a deposition or limiting its scope. FED. R. CIV. P. 26(c)(1).

## DISCUSSION

Plaintiffs move to compel the deposition of former Governor Brown. (Pls.' Mot. Compel ("Pls.' Mot.") at 5-10, ECF No. 441.) Plaintiffs seek to depose Governor Brown primarily on the topics of her early release program and her closure of two ODOC facilities during the COVID-19 pandemic. (*Id.*) Defendants object to any deposition of Governor Brown, on the ground that the deposition privilege applicable to high-ranking officials protects her from answering any of Plaintiffs' questions about her role in managing ODOC's response to the COVID-19 pandemic. (Defs.' Mot. Prot. Order & Opp'n to Pls.' Mot. ("Defs.' Mot.") at 8-18, ECF No. 446.)

///

///

PAGE 6 – OPINION AND ORDER

I.      "APEX" DEPOSITION PRIVILEGE

Defendants argue that the deposition privilege applicable to high-ranking government officials protects former Governor Brown from any deposition in this case, and that Plaintiffs have not established extraordinary circumstances to justify Governor Brown's deposition here. (Defs.' Mot. at 8-18.)

A.      Applicable Law

The Ninth Circuit recently articulated the standards applicable to the deposition privilege for high-ranking government or corporate officials, also known as the "apex" doctrine. In *In re U.S. Department of Education*, a Ninth Circuit panel issued a writ of mandamus and held that a district court clearly erred in allowing the deposition of former U.S. Secretary of Education Betsy DeVos ("Secretary DeVos") in connection with an action challenging a Department of Education ruling on student borrowers' applications to cancel federal student loans. *See In re U.S. Dep't of Educ.*, 25 F.4th 692 (9th Cir. 2022). The panel outlined three requirements a party must establish to depose a cabinet secretary: "(1) a showing of agency bad faith; (2) the information sought from the secretary is essential to the case; and (3) the information sought from the secretary cannot be obtained in any other way." *Id.* at 702; *see also Givens v. Newsom*, No. 2:20-cv-0852-JAM-CKD, 2021 WL 65878, at *5 (E.D. Cal. Jan. 7, 2021) (finding that depositions of high-ranking individuals are allowed "when there are allegations that the official acted with improper motive or acted outside the scope of his official capacity" (quoting *Coleman v. Schwarzenegger*, No. CIV S-90-0520-LKK-JFM-P, 2008 WL 4300437, at *3-4 (E.D. Cal. Sept. 15, 2008))); *Estate of Levingston v. Cnty. of Kern*, 320 F.R.D. 520, 525 (E.D. Cal. 2017) (holding that under the apex doctrine, "an individual objecting to a deposition must first demonstrate [s]he is sufficiently high-ranking to invoke the deposition privilege" and then the court considers whether there are "extraordinary circumstances" to justify the deposition, based

PAGE 7 – OPINION AND ORDER

on "(1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case; and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods") (simplified); *Coleman*, 2008 WL 4300437, at *3 (to demonstrate "extraordinary circumstances," a plaintiff must show that proposed high-ranking deponents "possess personal knowledge of facts critical to the outcome of the proceedings and that such information cannot be obtained by other means").

The panel sustained the district court's finding of agency bad faith, but disagreed with the district court that Secretary DeVos's testimony was essential to the case or that the information the plaintiffs sought was otherwise unobtainable. *In re U.S. Dep't of Educ.*, 25 F.4th at 704. The panel held that its reasoning applied even though DeVos was no longer serving as secretary.[3] *Id.* at 705.

Courts have recognized the rationale for the apex deposition privilege, finding that "high ranking government officials have greater duties and time constraints than other witnesses and . . . , without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1048 (E.D. Cal. 2010) (citation omitted); *Apple Inc. v. Samsung Elecs. Co., Ltd*., 282 F.R.D. 259, 263 (N.D. Cal. 2012) (recognizing that there is "tremendous potential for abuse or harassment" if courts allow depositions of high-ranking officials).

The Court has no reason to conclude that the Ninth Circuit would apply a different test to evaluate the deposition of a governor, who similar to a cabinet secretary is a high-ranking official

---

[3] One judge of the three-judge panel dissented, finding that "the district court did not clearly err in denying the motion to quash, particularly because of the salient feature that DeVos is a *former* secretary." *In re U.S. Dep't of Educ.*, 25 F.4th at 713.

serving in the executive branch. Accordingly, the Court applies the *In re U.S. Department of Education* test here to evaluate Plaintiffs' request to depose former Governor Brown.

      **B.**      **Deposition Privilege Applied to Governors**

Before applying the test, the Court notes that in prior cases, courts have allowed the depositions of both current and former governors. *See, e.g.*, *Fair Fight Action, Inc. v. Raffensperger*, 333 F.R.D. 689, 698 (N.D. Ga. 2019) (allowing deposition of the current governor of Georgia on three of eight requested topics); *Freedom From Religion Found., Inc. ("FFRF") v. Abbott*, No. A-16-CA-00233-SS, 2017 WL 4582804, at *11 (W.D. Tex. Oct. 13, 2017) (allowing deposition of the current governor of Texas, finding that "Governor Abbott is a party to this litigation in his individual capacity, and his motive in requesting removal of [the plaintiff's] exhibit [in the state capitol building] is central to [the plaintiff's] claims against him"); *Victory v. Pataki*, No. 02-CV-0031S(Sr), 2008 WL 4500202, at *2 (W.D.N.Y. Sept. 30, 2008) (allowing deposition of the former governor of New York regarding his involvement in the rescission of a decision by the New York State Parole Board and finding that the deposition was necessary to address the former governor's possible involvement in the decision and noting that "[t]here can be no question [] that a deposition of a former official can no longer pose the risk of interfering with governmental duties"); *Bagley v. Blagojevich*, 486 F. Supp. 2d 786, 788-90 (C.D. Ill. 2007) (allowing deposition of the current governor of Illinois in retaliation action where former correctional captains alleged that the governor was either the ultimate decision-maker or at least personally involved in the decision to eliminate their positions).

Courts have also denied depositions of both current and former governors. *See, e.g.*, *Givens*, 2021 WL 65878, at *6 (denying the plaintiff's request to depose the current governor of California, and holding that "[u]ntil plaintiffs can show the fruitlessness of other discovery avenues, a protective order will remain appropriate to prohibit the deposition of Governor

PAGE 9 – OPINION AND ORDER

Newsom in this case"); *Thomas*, 715 F. Supp. 2d at 1048-49 (denying the plaintiff's request to depose the current and former governors of California where the plaintiff sought information regarding the general process of reviewing parole applications); *Coleman*, 2008 WL 4300437, at *3-4 (denying the plaintiffs' request to depose the current governor of California in action challenging prison overcrowding because the "plaintiffs have not carried their burden of establishing that no other person possesses the information in question, particularly other members of the Governor's office or his administration, or that such information may not be obtained by other means"); *see also Am. Trucking Ass'n, Inc. v. Alviti*, 14 F.4th 76, 85 (1st Cir. 2021) (issuing writ of mandamus to quash subpoena of nonparty former governor of Rhode Island).[4]

### C. Analysis

The parties do not dispute that Governor Brown is a high-ranking government official for the purposes of the deposition privilege, and therefore the Court must determine if Plaintiffs have demonstrated extraordinary circumstances to allow them to depose the former governor. *See Thomas*, 715 F. Supp. 2d at 1049 ("There can be no doubt that Governor Schwarzenegger is a high-ranking government official for the purposes of the deposition privilege. Accordingly, the Court must determine whether Petitioner has demonstrated extraordinary circumstances which entitled him to depose the Governor.").

///

///

---

[4] Courts have also denied depositions of governors in cases where the governor simply had no personal knowledge of the dispute. *See, e.g.*, *Watson v. Schwarzenegger*, No. CV 05-0192-JFW(CTx), 2006 WL 8440703, at *3 (C.D. Cal. Jan. 20, 2006) ("Plaintiff speculates, with absolutely no factual support, that it is 'quite possible' that plaintiff's administrative appeal came to the personal attention of the Governor[.]").

1.  **Bad Faith or Improper Conduct**

With respect to the threshold showing of agency bad faith or improper conduct to justify a high-ranking government official's deposition, the Ninth Circuit panel in *In re U.S. Department of Education* "s[aw] no reason to question" the district court's finding that the Department of Education acted in bad faith by denying student loan applications using form letters despite previously claiming that lengthy delays in deciding applications for student debt relief were due to a time-intensive decisionmaking process. *In re U.S. Dep't of Educ.*, 25 F.4th at 703; *see also FFRF*, 2017 WL 4582804, at *11 n.24 (finding that the current Texas governor's "first-hand knowledge of his own motives" was reason to deny protection where the plaintiff "pled specific facts sufficient to support its allegation that Governor Abbott acted with improper motive").

Here, Plaintiffs allege that Governor Brown and the other defendants acted with deliberate indifference to the health and safety of AICs during the COVID-19 pandemic. An official acts with deliberate indifference if she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "If [an official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (citation omitted).

Although the deliberate indifference standard is not synonymous with bad faith, the Ninth Circuit has likened the two standards. *See Luke v. City of Tacoma*, No. 21-35440, 2022 WL 2168938, at *1 n.1 (9th Cir. June 16, 2022) ("Because of the absence of evidence upon which a reasonable juror could find that the individual defendants engaged in wrongful or bad faith

PAGE 11 – OPINION AND ORDER

conduct, we also reject [the plaintiff's] argument that the individual defendants acted with deliberate indifference[.]" (citing *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011))). At the very least, deliberate indifference reflects wrongful or improper conduct.

The Court finds that Plaintiffs' allegations that Governor Brown (as well as the other named defendants) acted with deliberate indifference to the health and safety of AICs during the COVID-19 pandemic is sufficient to meet the threshold requirement of either agency or individual bad faith or wrongful conduct. Plaintiffs' allegations here are no less serious than those cases in which courts have found that plaintiffs' allegations met the threshold seriousness requirement. *See, e.g.*, *In re U.S. Dep't of Educ.*, 25 F.4th at 703 (denying student loan applications with a form letter); *Raffensperger*, 333 F.R.D. at 698 (N.D. Ga. 2019) (engaging in voting irregularities); *FFRF*, 2017 WL 4582804, at *11 (removing an exhibit from the state capitol building); *Victory*, 2008 WL 4500202, at *2 (rescinding a parole decision); *Bagley*, 486 F. Supp. 2d at 788-90 (terminating state employees in retaliation).

For these reasons, the Court finds that Plaintiffs have met the threshold requirement to depose Governor Brown.

### 2. Essential to Plaintiffs' Claims

With respect to whether the information Plaintiffs seek from Governor Brown is essential, the *In re Department of Education* panel explained that the deponent's information must be not only relevant but also necessary. *In re U.S. Dep't of Educ.*, 25 F.4th at 704 ("Were we to allow the taking of depositions of cabinet-level officials in which relevant, but unnecessary information, was sought, we would risk distracting cabinet secretaries from their essential duties with an inundation of compulsory, unnecessary depositions and upsetting the proper balance of powers."). The panel found that the plaintiffs did not allege that former Secretary DeVos had

PAGE 12 – OPINION AND ORDER

information essential to their case, and in fact acknowledged that they could obtain relief without DeVos's testimony.[5] *Id.* at 704.

Courts are more likely to allow depositions of high-ranking officials who were personally involved in the events at issue, or who are named as a defendant in the litigation, because they possess direct factual information relevant to the case. *See, e.g.*, *Givens*, 2021 WL 65878, at *5 ("Plaintiffs are correct that courts often look more favorably on depositions of high-ranking officials when there are allegations that the official personally made the decision(s) at issue in the litigation.") (citations omitted); *Coleman*, 2008 WL 4300437, at *2 ("The extraordinary circumstances test may be met when high-ranking officials 'have direct personal factual information pertaining to material issues in an action,' and 'the information to be gained is not available through any other sources'" (quoting *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007))); *Thomas*, 715 F. Supp. 2d at 1049 ("Depositions of high ranking officials may be permitted where the official has first-hand knowledge related to the claim being litigated.") (citations omitted); *see also FFRF*, 2017 WL 4582804, at *11 (allowing limited deposition based on finding that "Governor Abbott is a party to this litigation in his individual capacity, and his motive in requesting removal of FFRF's exhibit is central to FFRF's claims against him"); *Bagley*, 486 F. Supp. 2d at 789 (allowing deposition of the governor where the plaintiffs alleged that "the Governor was either the ultimate decision maker or at least personally involved in the decision"); *Toussie v. Cnty. of Suffolk*, No. CV 05-1814, 2006 WL 1982687, at *2 (E.D.N.Y.

---

[5] The dissenting judge disagreed, finding that the "district court thoroughly explained why former Secretary DeVos had unique information that was necessary, or 'essential,' to the plaintiffs' . . . claims[,]" noting the district court's finding that "'material gaps at the highest rungs of the Department's decisionmaking record' revealed DeVos's personal involvement in the challenged conduct" and demonstrated the necessity for her testimony. *In re U.S. Dep't of Educ.*, 25 F.4th at 711. The dissenting judge further noted that the plaintiffs also alleged agency inaction, for which there existed no official and contemporaneous explanation. *Id.*

PAGE 13 – OPINION AND ORDER

July 13, 2006) (finding that "[g]enerally, the depositions of former government officials are granted where the official has been personally involved in the events at issue in the case").

Here, there is no dispute that Governor Brown was personally involved in making relevant decisions regarding ODOC's response to the COVID-19 pandemic in the state's prisons, and Governor Brown remains a named defendant in this class action. In addition, Plaintiffs have established that Governor Brown's testimony is necessary to prove their case, in particular their deliberate indifference claims against her. (Pls.' Mot. at 8-12; Pls.' Resp. at 6-7, ECF No. 451.) Although Plaintiffs have now deposed members of the Governor's staff, as well as ODOC officials, no other witness can testify about Governor Brown's knowledge with respect to the heightened risk that COVID-19 presented in the custodial setting and the actions she took or did not take with that knowledge. Plaintiffs are not directly challenging Governor Brown's early release decisions, but the information she received in connection with the early release program, as well as her decision to close two ODOC institutions during the pandemic, is relevant to her knowledge of whether the population density at ODOC institutions allowed for adequate distancing to protect AICs from the spread of COVID-19. Those facts are essential to Plaintiffs' burden to prove that Governor Brown and the other defendants knew of, but disregarded, an excessive risk to AICs' health and safety.

For these reasons, Plaintiffs have established that Governor Brown's testimony is both relevant and necessary, and therefore essential, to proving their claims.

### 3. Not Otherwise Obtainable

Finally, the Ninth Circuit panel held in *In re U.S. Department of Education* that to take the deposition of a high-ranking official, "the information sought cannot be obtainable in any other way." *In re U.S. Dep't of Educ.*, 25 F.4th at 704. The panel found that the district court had not considered less intrusive means of discovery, the plaintiffs had not established that the

PAGE 14 – OPINION AND ORDER

information they sought from Secretary DeVos was otherwise unobtainable, and the plaintiffs had not exhausted "all reasonable alternative sources" of information. *Id.* Specifically, the panel held that vague references by other deponents to their lack of decisionmaking authority was not sufficient to demonstrate that DeVos had information that the plaintiffs could not obtain elsewhere.[6] *Id.* at 705.

Similarly, the district court in *Givens* found that the plaintiffs had not demonstrated "that no other person possesses the information in question, particularly other members of the Governor's office or his administration, or that such information may not be obtained by other means." *Givens*, 2021 WL 65878, at *5 (quoting *Coleman*, 2008 WL 4300437, at *4). Specifically, the *Givens* court found that "it is likely that other lower-ranking members of [the governor's] office or administration would have relevant information about his actions." *Id.* (quoting *Coleman*, 2008 WL 4033437, at *4). In that case, the "plaintiffs ha[d] not attempted any less intrusive discovery methods or sources for the information they seek" and the court held that "[a]t a bare minimum, no deposition should be required of Governor Newsom until plaintiffs have first deposed the two [agency] fact witnesses currently scheduled for deposition later this month." *Id.* ("[T]he court is unconvinced that deposing the Governor will be the least burdensome method of discovery.").

So too in *Coleman*, where the district court found that the "plaintiffs have not carried their burden of establishing that no other person possesses the information in question,

---

[6] The dissenting judge noted that the plaintiffs took the depositions of the officials the Department designated as most likely to have relevant information, "but those officials then disclaimed authority to make the decisions at issue and intimated that the decisions rested with former Secretary DeVos." *In re U.S. Dep't of Educ.*, 25 F.4th at 704 ("No court of appeals has stated that *all* discovery methods must be exhausted in order to show that the information is not available from another source.").

PAGE 15 – OPINION AND ORDER

particularly other members of the Governor's office or his administration, or that such information may not be obtained by other means." *Coleman*, 2008 WL 4300437, at *3-4.

The posture of this litigation is different. As discussed above, the Court instructed the parties in October 2020 that Plaintiffs must first serve interrogatories and depose lower-ranking officials before deposing high-ranking officials in this case. The Court also denied Plaintiffs' request to depose Governor Brown in November 2022 while she was nearing the end of her tenure as governor, finding that "Plaintiffs have not met their burden of demonstrating extraordinary circumstances to justify taking Governor Kate Brown's deposition before the end of her current term." (ECF No. 419.) The Court found that Plaintiffs had "not yet exhausted other less intrusive discovery methods, such as deposing Governor Brown's staff or serving interrogatories." (*Id.*)

Plaintiffs have now returned to the Court at the close of discovery having served interrogatories on Governor Brown and deposed several of her staff members (including Constantin Severe, Tina Edlund, and Nik Blosser) and high-ranking ODOC officials (including Director Peters, Steward, and Bugher). None of those discovery methods have provided Plaintiffs with all of the information they require regarding what Governor Brown knew—both from the sources already deposed but also from all other available sources of information to which she was privy—about the heightened risk of COVID-19 in the state's prisons, particularly with respect to the population density absent early releases and as a result of prison closures. (*See* Pls.' Resp. at 8-11.) The Court finds that Plaintiffs have now exhausted less intrusive discovery mechanisms, and have established that the information they seek from Governor Brown is not otherwise available.

///

PAGE 16 – OPINION AND ORDER

### 4. Conclusion

In *In re U.S. Department of Education*, the Ninth Circuit panel emphasized that "[t]he significant protection from depositions that [high-ranking government officials] enjoy does not mean that they are above the law," citing the fact that in the treason case against Aaron Burr, then trial judge John Marshall held that it was appropriate to call the U.S. president to testify at Burr's trial, distinguishing what separates U.S. elected officials from a monarchy:

> [T]he crown is hereditary, and the monarch can never be a subject . . . [T]he president is elected from the mass of people, and, on the expiration of the time for which he is elected, returns to the mass of the people again. . . . If, upon any principle, the president could be construed to stand exempt from the general provisions of the constitution, it would be, because his duties as chief magistrate demand his whole time for national objects. But it is apparent that this demand is not unremitting. . . .

*In re U.S. Dep't of Educ.*, 25 F.4th at 701 (quoting *United States v. Burr*, 25 F. Cas. 30, 34 (C.C.D. Va. 1807)). Governor Brown was similarly elected from the mass of the people, and on the expiration of the time for which she was elected, she has returned to the mass of the people again. Although the Court agreed with Defendants that deposing Governor Brown while she remained in office would interfere with her official duties as governor, the demands of the job have now remitted. As a result, although the deposition privilege continues to apply (*see In re U.S. Dep't of Educ.*, 25 F.4th at 705),[7] the rationale behind the deposition privilege applies with less force.[8] *See Thomas*, 715 F. Supp. 2d at 1049-50 (finding that "[t]he general rule prohibiting

---

[7] The dissenting judge in *In re U.S. Department of Education* observed that "no court of appeals decision has resolved whether the 'extraordinary circumstances' doctrine should apply with the same force to a *former* secretary where the underlying rationales have limited applicability." *In re U.S. Dep't of Educ.*, 25 F.4th at 709.

[8] The *In re U.S. Department of Education* panel reasoned that the concerns about time constraints continued to apply to former officials, and that the threat of preparing and sitting for depositions could "hamper and distract officials from their duties while in office[,]" and "overwhelming and unnecessary discovery could also discourage [officials] from taking that office in the first place or leaving office when there is controversy." *In re U.S. Dep't of Educ.*, 25

PAGE 17 – OPINION AND ORDER

depositions of high-ranking government officials applies to former high-ranking officials, although in the case of former high-ranking government officials, one important rationale for the rule is absent" and citing prior case "noting that rationale based on interference with official duties is absent" (citing *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 320 (D.N.J. 2009))).

The deposition privilege is important to protect high-ranking government officials from harassment, distraction, or burden while they execute the demanding duties of their office. But now that Governor Brown has left office, a brief deposition is less burdensome and will not distract from any official duties.[9]

In addition, this is not a case of one AIC seeking to depose the governor about an individual claim, nor is there any evidence that Plaintiffs seek to depose former Governor Brown for any improper purpose. Instead, a certified class of thousands of individuals infected with COVID-19 while in the state's custody—including the estates of dozens who died—seek to ask Governor Brown questions about her knowledge of and actions regarding the spread of COVID-19 in Oregon's prisons while she served as Oregon's governor. To minimize the burden of a deposition on Governor Brown pursuant to Rule 26(c)(1), the Court limits its duration to two hours, and finds that a two-hour deposition in this certified class action is not too much to ask of a former elected official.

///

---

F.4th at 705. It seems unlikely that a gubernatorial candidate would be discouraged from seeking public office with knowledge that she might be required to sit for the brief deposition ordered here upon leaving office.

[9] There is nothing in the record to suggest that former Governor Brown is reemployed, nor that any new employment or duties would interfere with her ability to participate in a brief deposition.

PAGE 18 – OPINION AND ORDER

## CONCLUSION

For the reasons stated, the Court GRANTS Plaintiffs' motion to compel the deposition of former Governor Brown (ECF No. 441), DENIES Defendants' motion for a protective order barring the deposition (ECF No. 446), and ORDERS Defendants to make former Governor Brown available for a deposition, not to exceed two hours, at a time and location convenient to former Governor Brown.

**IT IS SO ORDERED.**

DATED this 7th day of June, 2023.

HON. STACIE F. BECKERMAN
United States Magistrate Judge