**Kerry J. Shepherd, OSB #944343**
KerryShepherd@MarkowitzHerbold.com
**Molly K. Honoré, OSB #125250**
MollyHonore@MarkowitzHerbold.com
**Jermaine F. Brown, OSB #073415**
JermaineBrown@MarkowitzHerbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085

Special Assistant Attorneys General for Defendants
Additional Counsel of Record Listed on Signature Page

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| PAUL MANEY; GARY CLIFT; GEORGE NULPH; THERON HALL; DAVID HART; SHERYL LYNN SUBLET; and FELISHA RAMIREZ, personal representative for the ESTATE OF JUAN TRISTAN, individually, on behalf of a class of other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> STATE OF OREGON; KATE BROWN; COLETTE PETERS; HEIDI STEWARD; MIKE GOWER; MARK NOOTH; ROB PERSSON; KEN JESKE; PATRICK ALLEN; JOE BUGHER; and GARRY RUSSELL, <br><br> Defendants. | Case No. 6:20-cv-00570-SB <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DECLARATION OF KEVIN E. CAHILL, PH.D.** |

Page 1 –   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE DECLARATION OF KEVIN E. CAHILL, PH.D.

INTRODUCTION

This Court should not strike Dr. Kevin Cahill's declaration (Dkt. 534) ("Cahill Decl."), which provides additional information regarding his methodology and qualifications. Dr. Cahill provided a declaration with that information to assist the Court in deciding plaintiffs' motion to exclude Dr. Cahill's trial testimony. Dr. Cahill's declaration will aid the Court in its resolution of plaintiffs' *Daubert* motion, but it does not change or supplement his expert opinions. As a result, FRCP 26 does not bar Dr. Cahill's declaration, and the Court should deny plaintiffs' motion to strike it.

ARGUMENT

As explained below, Dr. Cahill's declaration is not a disguised, tardy expert report; it merely elaborates on his methodology and the general acceptance of that methodology in the field. Put another way, the declaration provides additional information about Dr. Cahill's methodology for his *existing* opinions—it does not provide *new* opinions. Similarly, Dr. Cahill's deposition testimony is consistent with his declaration and any discrepancies were harmless and justified.

I.  **Defendants did not violate Rule 26(a) by submitting Dr. Cahill's declaration in response to plaintiffs' motion to exclude his testimony.**

Contrary to plaintiffs' motion, Dr. Cahill's declaration is not a disguised and untimely expert report. Among other things, FRCP 26(a)(2) requires that an expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them." But courts differentiate between (1) the statement of opinions and reasons required in the expert report and (2) testimony regarding the reliability of the expert's chosen methodology. When deciding *Daubert* motions, courts often consider additional testimony (either written or oral) from the expert about their methodology and qualifications. *See generally Daubert v. Merrell*

*Dow Pharms., Inc.*, 43 F.3d 1311, 1318-19 n.10 (9th Cir. 1995) (describing *Daubert* hearings). Courts differentiate between this testimony, which goes to the reliability of the expert's methodology, from the expert's underlying opinions about the case itself. Rule 26(a)(2)(B) requires that the expert report contain the expert's opinions and reasoning, but it does not require that the expert anticipate and respond to every methodological concern that an opposing party might raise in a *Daubert* motion. *See Bryant v. Wyeth*, No. C04–1706 TSZ, 2012 WL 11924298, at *3 (W.D. Wash. July 19, 2012) ("While Rule 26 demands that expert disclosures be complete, there is no requirement that such disclosures cover any and every objection or criticism of which an opposing party might conceivably complain[.]" (cleaned up)).

For that reason, the proponents of expert testimony are not limited to the contents of the expert report when responding to a *Daubert* motion. Instead, it is perfectly appropriate for the expert to submit a declaration addressing the methodological concerns raised by the motion, and the expert is not limited to the information contained in the expert report when doing so. *See e.g.*, *Adv. Analytics, Inc. v. Citigroup Global Mkts., Inc.*, 301 F.R.D. 31, 42-43 (S.D.N.Y. 2014) (finding that "Rule [26(a)(2)(B)] does not require that the disclosures address the reliability of the principles and methods used or the reliability of the manner in which those principles and methods were applied in the case" and ruling that portion of declaration that addresses defendants' *Daubert*/FRE 702 motion could be considered for the limited purpose of that motion); *City of Owensboro v. Ky. Utils. Co.*, No. 4:04CV-87-M, 2008 WL 4542706, at *1 (W.D. Ky. Oct. 8, 2008) (denying motion to strike a statistical expert's affidavit submitted in support of a *Daubert* motion after deadline for Rule 26(a)(2) expert witness disclosure had passed and ruling that Rule 26(a)(2) is a trial-oriented rule and does not preclude consideration on *Daubert* motions of expert affidavits submitted after expert disclosure deadline); *Florists'*

Page 3 –    DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE
             DECLARATION OF KEVIN E. CAHILL, PH.D.

*Mut. Ins. Co. v. Lewis Taylor Farms, Inc.*, No. 7:05-CV-50 (HL), 2008 WL 875493, at *17 n.12 (M.D. Ga. Mar. 27, 2008) (same); *see also* 8A Charles Wright, Arthur Miller & Richard Marcus, FEDERAL PRACTICE & PROCEDURE § 2301.1, at 41-42 (3d ed. 2010) ("Because the disclosure requirement is keyed to trial, and absent a different directive from the court does not come into play until 90 days before trial, it may not apply to use of experts in various pretrial or nontrial activities.").

Throughout their motion to strike, plaintiffs characterize Dr. Cahill's declaration as containing new expert opinions or untimely rebuttal opinions. Plaintiffs are mistaken. Dr. Cahill did not offer new opinions in his declaration, he simply provided additional information regarding his methodology and qualifications. Dr. Cahill's declaration stated the facts that demonstrate his education, experience, and knowledge about econometrics and the methods he used to reach the conclusions in his report, which bear directly on plaintiffs' *Daubert* motion. His declaration explains the process he undertook during his analysis, from which he drew his conclusions and reached the opinions that appear in his July 31, 2023 expert report. (*E.g.*, Cahill Decl. ¶ 7 (referring to his "assignment in this matter"); ¶¶ 14-16 (describing internal and external validity checks performed in relation to the analyses *in his expert report* as shown in Stata and R code produced with his expert file); ¶ 17 (citing his expert report); ¶¶ 21-25, 29, 31, 34, 36-37 (same).) He also explained that the methods he used in his expert report are the same methods he has used in his peer-reviewed publications. (*Id.* ¶ 36.) None of those statements of fact are opinions subject to the disclosure requirements of Rule 26.

The cases cited by plaintiffs do not hold to the contrary. In each case, the expert offered new, undisclosed expert opinions. In *Eno v. Forest River, Inc.*, No. 2:20-CV-706-DWC, 2021 WL 6428636 (W.D. Wash. July 1, 2021), the expert submitted a written report from an unrelated

Page 4 –   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE
            DECLARATION OF KEVIN E. CAHILL, PH.D.

case that addressed different facts and parties. 2021 WL 6428636, at *2. The expert attempted to remedy the deficiency by submitting a declaration in opposition to a *Daubert* motion that rendered a similar opinion about the actual case at bar. *Id.* The declaration was found improper because it contained entirely new opinions about facts not addressed in the original report. *Id.* Similarly, in *Bell v. Boeing Co.*, the expert submitted a one-page expert report that stated its conclusions without "any rationale" and got the underlying facts of the case wrong. No. 20-CV-01716-LK, 2022 WL 1206728, at *3, *7 (W.D. Wash. Apr. 22, 2022). The expert then filed a supplemental declaration "shoring up omissions in his report and countering Boeing's attacks with previously unprovided substantive analysis." *Id.* at *3. In *Industrial Piping, Inc. v. Tao Zhang*, in response to a *Daubert* motion, a forensic accountant provided a new calculation that the defendant had misstated its financial forecast by $350 million, a calculation that did not appear in the expert report. No. 4:15-CV-450-BLW, 2019 WL 96220, at *1-2 (D. Id. Jan. 3, 2019) (stating that expert's recalculation in declaration was "certainly new").

Dr. Cahill's declaration does not suffer from any of the flaws identified in those cases. Dr. Cahill provided a 25-page expert report that contained a complete statement of all opinions he will offer in this case. (07/31/23 Expert Report of Kevin E. Cahill, attached to Decl. of Nadia Dahab in Supp. of Pls.' Mot. To Exclude Expert Op. of Kevin E. Cahill, Ph.D. ("Dahab Decl."), (Dkt. 509-1) at Ex. A at 4-28, Dkt. 509-1 ("Cahill Report").) In his report, he identified the facts and data he relied on in forming his opinions, which defendants produced on August 24, 2023. (Decl. of Anit K. Jindal in Supp. of Defs.' Opp'n to Pls.' Mot. to Exclude Expert Op. of Kevin E. Cahill, Ph.D. (Dkt. 536) ("Jindal MTE Report Decl.") ¶ 2; *see also* Cahill Report, Dahab Decl., Ex. A at 98-104.) Dr. Cahill's declaration does not contain new opinions that were omitted from his report. Instead, it provides elaboration on the methodology used to render his existing

Page 5 –   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE
           DECLARATION OF KEVIN E. CAHILL, PH.D.

opinions to respond to plaintiffs' *Daubert* motion. That is permissible and commonplace in *Daubert* motions practice.

For this same reason, contrary to plaintiffs' motion, the declaration is not improper "under Rule 702." (Pls.' Mot. to Strike (Dkt. 579) ("Mot.") at 5.) Although the Court must ultimately assess the reliability of an expert's methodology, courts routinely consider testimony from the expert in making this assessment. Regardless, whether Dr. Cahill's methodology and conclusions meet the standard of FRE 702 is the proper subject of plaintiffs' *Daubert* motion, not the proper subject of a motion to strike. The Court is permitted to rely on Dr. Cahill's testimony, via declaration, to determine whether the data he relied on, methodology he used, and conclusions he reached are admissible.

The Court should deny plaintiffs' motion to strike Dr. Cahill's declaration and consider it for the purpose of deciding plaintiffs' *Daubert* motion.

## II. Dr. Cahill accurately responded to plaintiffs' deposition questions regarding his methodology.

Plaintiffs also assert that when asked, Dr. Cahill made "no mention whatsoever" of the validity checks he performed on ODOC's data. (*See* Mot. at 8.) Plaintiffs' assertions are false. When asked, Dr. Cahill explained that he performed "certain tests . . . to see if the data is accurate." (09/19/23 Kevin Cahill Dep. at 38:15-22 attached to Decl. of A. Jindal in Supp. of Defs.' Opp. to Pls.' Mot. to Strike Decl. of Kevin E. Cahill, Ph.D. ("Jindal Supp. Decl.") as Ex. 1.) As an example, Dr. Cahill testified that he created a "longitudinal version of the dataset" which he then "used to assess the accuracy of the underlying data because values over time can then be compared with other studies to see if the ODOC dataset is consistent with data published elsewhere." (Cahill Dep. 38:24-39:12.) Dr. Cahill went on to identify one study that he compared to the ODOC dataset. (*Id.* at 40:9-41:5 (*citing* Carson, E. A., Nadel, M., Gaes, G.

(2022). "Impact of COVID-19 on State and Federal Prisons, March 2020–February 2021" (NCJ 304500). Washington, D.C.: U.S. Department of Justice. (*available at*: https://bjs.ojp.gov/content/pub/pdf/icsfp2021.pdf) ("Carston study").)  Plaintiffs' counsel then moved on to other topics and never returned to ask about other tests Dr. Cahill performed to determine the accuracy of the ODOC dataset.

Dr. Cahill's deposition testimony is strikingly similar to his declaration on the same topic.  Dr. Cahill's declaration explains that he "compared information from both the ODOC dataset and the UCLA Law dataset with data published by the Oregon Health Authority (OHA) and the academic literature."  (Cahill Decl. ¶ 16.)  Dr. Cahill then goes on to identify the exact *same* study that he identified in his deposition as one source of data in "the academic literature" that confirmed the validity of the ODOC data.  (*Id.* ¶ 16 & n.19 (citing Carson study).)  There is therefore no inconsistency between Dr. Cahill's deposition testimony and his declaration.  To the extent that plaintiffs wanted additional details regarding Dr. Cahill's validity tests, they could have asked about them in the deposition.  They simply failed to do so.

Plaintiffs also cite deposition testimony from Dr. Cahill in which he says he "accepted" ODOC's data.  But this testimony is unhelpful to plaintiffs for three reasons.  First, in context, it is clear that Dr. Cahill is explaining that he "accepted" the accuracy of the data only *after* performing his internal and external validity checks.  The use of the word "accepted" is part of the same discussion in which Dr. Cahill describes his various "analyses. . . and have found the data to be accurate when doing those comparisons."  (*See* Cahill Dep. 38:15-41:9.)

Second, to confirm this understanding, Dr. Cahill submitted an errata sheets that corrected this testimony to explain that he "deemed" the datasets to be reliable to correct any

Page 7 –   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE
            DECLARATION OF KEVIN E. CAHILL, PH.D.

misimpression left by his use of the word "accepted."[1] (Cahill Decl. ¶ 14 n.16.) Third, any minor discrepancy between the declaration and deposition testimony is not sufficient to justify striking the declaration. In this circuit, before striking a declaration the Court must determine that the declaration is a "sham" and contains "clear and unambiguous" inconsistencies with the deposition testimony. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009). Conversely, a declarant "is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding" the declaration. *Id.* at 999. Here, Dr. Cahill's declaration merely elaborates on and explains the steps he took before accepting the accuracy of the ODOC data. There is no "clear and unambiguous" inconsistency.[2]

---

[1] In a footnote, plaintiffs assert that defendants failed to send the errata sheets to the court reporter within the 30-day time period mandated by Rule 30(e). Plaintiffs are mistaken. (Decl. of Lynn A. Gutbezahl in Supp. of Defs.' Opp. To Pls.' Mot to Strike Decl. of Kevin E. Cahill, Ph.D. ("Gutbezahl Decl.") ¶ 3, Ex. 2.) (email to court reporter submitting errata sheets).) Upon receiving plaintiffs' motion to strike, defendants reached out to the court reporter and confirmed that the errata were timely and that the reporter inadvertently failed to attach it when sending the transcript to plaintiffs' counsel. (Jindal Supp. Decl. ¶ 4, Ex. 2.) Plaintiffs did not separately confer on the errata sheets issue before filing their motion to strike. If they had, the parties and the court reporter could have resolved this simple clerical error without involving the Court.

[2] In a footnote, plaintiffs assert that Dr. Cahill was also "evasive" when answering questions about the substance of his opinions. (Mot. at 8 n.5.) This argument fails for three reasons. First, testimony regarding the scope of Dr. Cahill's *opinions* is irrelevant to this motion, which challenges defendants' disclosures regarding his underlying *methodology*. Second, if Dr. Cahill refused to answer plaintiffs' questions, plaintiffs could have and should have filed a timely motion to compel. *See* FRCP 37(a)-(b).

Third, and more fundamentally, plaintiffs misstate the record. As is becoming an unfortunate pattern, in making this argument plaintiffs merely truncate the quotations to omit the relevant portion of the deposition testimony. As just one example, plaintiffs contend that Dr. Cahill refused to say whether he analyzed "implementation" as opposed to "adoption" of policies. (Mot. 8 n.5.) But Dr. Cahill answered this question clearly and directly: "It was not part of my assignment to look at implementation. This analysis looks at policy adoption

### III. Under FRCP 37, any minor deficiency in the expert report or deposition testimony was justified or harmless.

Consistent with FRCP 37, striking Dr. Cahill's entire declaration is unwarranted because any Rule 26 violation was either (1) substantially justified, or (2) harmless. FRCP 37(c)(1). Much of Dr. Cahill's declaration is dedicated to describing publicly-available information regarding the use of econometric analyses in academic journals generally. (*E.g.*, Cahill Decl. ¶¶ 6-7, 26, 29, 36 (stating that statistics principles he used have been widely used in peer-reviewed academic journals).) Further, in document discovery, Dr. Cahill provided the underlying Stata and R code for his work, which showed every internal validity check that Dr. Cahill performed on the data. (Jindal MTE Report Decl. ¶ 2 (Dkt. 536).) Thus, plaintiffs had full access to Dr. Cahill's internal validity checks through document discovery; therefore, any failure to describe those same checks in deposition testimony was harmless.

Additionally, defendants are not responsible for plaintiffs' non-receipt of Dr. Cahill's errata sheets. Defendants provided it to the court reporter 28 days after defendants received Dr. Cahill's final deposition transcript. (Gutbezahl Decl. ¶¶ 2-3, Exs. 1-2.) The court reporter inadvertently did not circulate the errata sheets to the other parties after defendants timely submitted it. (Jindal Supp. Decl. ¶ 4, Ex. 2.) Thus, defendants' actions surrounding the errata were "substantially justified," and the Court should not use any delay in plaintiffs receiving the errata sheets as a basis to strike the declaration.

Given defendants' substantial justification and the lack of harm to plaintiffs, striking the declaration is not appropriate under FRCP 37. *See* FRCP 37(c)(1); *Karma Auto. LLC v. Lordstown Mot. Corp.*, No. SACV 20-2104 JVS (DFMx), 2023 WL 6814583, at *2 (C.D. Cal.

---

dates . . . ." (Cahill Dep. at 75:13-77:24.) Plaintiffs merely clip around the question and answer to give the impression that Dr. Cahill refused to respond.

Page 9 –   DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE
              DECLARATION OF KEVIN E. CAHILL, PH.D.

Aug. 15, 2023) (denying in part motion to strike portions of supplemental expert report because it contained no new opinions and only recalculated amounts based on previously unavailable data); *Schedler v. Fieldturf USA, Inc.*, No. 3:16-cv-0344-JR, 2018 WL 5083883, at *7 (D. Or. Oct. 18, 2018) (finding sanction of dismissal of defendant's counterclaim for its violation of Rule 26 too harsh despite plaintiff's refusal to provide a computation of damages during discovery); *Scruggs v. Vance*, No. 2:06–cv–0633 KJM KJN P, 2012 WL 423486, at *5 (E.D. Cal. Feb. 8, 2012) (sanctions inappropriate where defendant's failure to assist in resolving discovery dispute frustrated the court but defendant had obeyed specific requirements of court's order); *Rooney v. Sierra Pac. Windows*, No. 10–CV–00905–LHK, 2011 WL 2149097, at *4 (N.D. Cal. June 1, 2011) (finding the sanction of exclusion "excessively severe" where court had ordered a rolling production, and defendants had produced most of the documents on the deadline to complete rolling productions); *Greens v. Sprout Café*, No. C–08–5175 EMC, 2010 WL 2555753, at *1 (N.D. Cal. June 21, 2010) (finding that preclusion sanction would be "excessively severe" where defendants belatedly produced nearly all discovery sought, and plaintiff did not suffer irreparable prejudice).

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court deny plaintiffs' motion to strike the declaration of Kevin E. Cahill, Ph.D. (Dkt. 534), filed in support of defendants' opposition to plaintiff's motion to exclude Dr. Cahill's testimony (Dkt. 533).

DATED: February 26, 2024.

ELLEN ROSENBLUM ATTORNEY GENERAL FOR THE STATE OF OREGON

*s/ Anit K. Jindal*

Kerry J. Shepherd, OSB #944343
KerryShepherd@MarkowitzHerbold.com
Molly K. Honoré, OSB #125250
MollyHonore@MarkowitzHerbold.com
Jermaine F. Brown, OSB #073415
JermaineBrown@MarkowitzHerbold.com
1455 SW Broadway, Suite 1900
Portland, OR 97201
Telephone: (503) 295-3085

*Special Assistant Attorneys General for Defendants*

R. Kyle Busse, OSB #070994
KyleBusse@MarkowitzHerbold.com
Chad A. Naso, OSB #150310
ChadNaso@MarkowitzHerbold.com
Anit K. Jindal, OSB #171086
AnitJindal@MarkowitzHerbold.com
Allison L. Rothgeb, OSB #222086
AllisonRothgeb@MarkowitzHerbold.com
*Attorneys for Defendants*

Tracy Ickes White, OSB #904127
Tracy.I.White@doj.state.or.us
DEPARTMENT OF JUSTICE
1162 Court Street NE
Salem, OR  97301-4096

*Attorneys for Defendants*

2100245.6