**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
**Jessica Greenlick Snyder**, OSB No. 134911
SUGERMAN DAHAB
101 SW Main Street Ste. 910
Portland, OR 97204
Tel: (503) 228-6474
david@sugermandahab.com
nadia@sugermandahab.com
jessica@sugermandahab.com

**Juan C. Chavez**, OSB No. 136428
OREGON JUSTICE RESOURCE CENTER
P.O. Box 5248
Portland, OR 97208
Tel: (503) 944-2270
jchavez@ojrc.info

*Attorneys for Plaintiffs and the Class*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| PAUL MANEY; GARY CLIFT; GEORGE NULPH; THERON HALL; DAVID HART; SHERYL LYNN SUBLET; and FELISHIA RAMIREZ, personal representative for the ESTATE OF JUAN TRISTAN, individually, on behalf of a class of other similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>STATE OF OREGON; KATE BROWN, COLETTE PETERS; HEIDI STEWARD; MIKE GOWER; MARK NOOTH; ROB PERSSON; KEN JESKE; PATRICK ALLEN; JOE BUGHER; and GARRY RUSSELL,<br><br>　　　　　　　Defendants. | Case No. 6:20-cv-00570-SB<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN** |

**TABLE OF CONTENTS**

LOCAL RULE 7-1 CERTIFICATION………………………………………………………...1

MOTION................................................................................................................................ 1

MEMORANDUM IN SUPPORT......................................................................................... 1

I.    Background....................................................................................................................... 1

  A.    History of this Litigation…………………………………………...………...2

  B.    Mediation……………………………………………………………………6

II.   Terms of the Proposed Settlement ................................................................................. 7

III.  Proposed Distribution Plan ......................................................................................... 10

IV.   Proposed Notice Plan.................................................................................................... 12

V.    Argument ....................................................................................................................... 21

  A.    The Court should grant preliminary approval of the proposed settlement............21

    1.    The Rule 23(e)(2) and *Bluetooth* factors support preliminary approval of the proposed settlement..…………………………………………………………23

    2.    The *Churchill* factors also support preliminary approval of the proposed settlement……………………………………………………...………27

  B.    Plaintiffs' proposed notice plan complies with Rule 23(e) and due process…......32

  C.    Timely notice under CAFA will be provided……………...………………….34

VI.   Proposed Schedule for Final Approval ........................................................................ 34

VII.  CONCLUSION.............................................................................................................. 35

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) .................................................................................................. 34

*Boyd v. Bechtel Corp.,*
485 F. Supp. 610 (N.D. Cal. 1979) ........................................................................... 32

*Briseño v. Henderson,*
998 F.3d 1014 (9th Cir. 2021) .................................................................................. 24

*Christensen v. Epley,*
287 Or. 539 (1979) .................................................................................................... 15

*Churchill Vill., L.L.C. v. Gen. Elec.,*
361 F.3d 566 (9th Cir. 2004) ............................................................................. passim

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) .................................................................................. 23

*Fatnani v. JPMorgan Chase & Co.,*
2024 WL 7085446 (D. Or. Oct. 18, 2024) ............................................................... 24

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998) ...................................................................... 23, 24, 26

*Haugh v. Kilmer,*
71 Or. App. 345 (1984) ............................................................................................. 15

*Hernandez v. Garland,*
2022 WL 1176752 (C.D. Cal. Mar. 28, 2022) ......................................................... 33

*In re Bluetooth Headset Prods. Liab. Litig.,*
654 F.3d 935 (9th Cir. 2011) ............................................................................. passim

*In re Calif. Pizza Kitchen Data Breach Litig.,*
129 F.4th 667 (9th Cir. 2025) ............................................................................. 23, 24

*In re Mego Fin. Corp. Securities Litig.,*
213 F.3d 454 (9th Cir. 2000) .................................................................................... 24

*Lobatz v. U.S. W. Cellular of Calif., Inc.,*
222 F.3d 1142 (9th Cir. 2000) .................................................................................. 26

*Maney v. Brown,*
91 F.4th 1296 (9th Cir. 2024) ..................................................................................... 4

*Maney v. Oregon,*
2025 WL 1794110 (9th Cir. June 30, 2025) ............................................................... 5

*Officers for Just. v. Civil Serv. Comm'n of City & Cnty. of S.F.,*
688 F.2d 615 (9th Cir. 1982) .................................................................................... 24

*Torrisi v. Tucson Elec. Power Co.,*
8 F.3d 1370 (9th Cir. 1993) ...................................................................................... 23

**Statutes**

28 U.S.C. § 1715 ................................................................................................................ 35

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................... passim

ii – TABLE OF AUTHORITIES

**LOCAL RULE 7-1 CERTIFICATION**

Pursuant to LR 7-1, undersigned counsel for Plaintiffs and the Classes certifies that she has conferred with all Defendants' counsel regarding this motion and that Defendants do not oppose the motion.  Defendants also do not oppose entry of the proposed order filed herewith.

**MOTION**

Plaintiffs move for an order granting preliminary approval of the proposed settlement, appointing the Notice and Settlement Administrator, directing notice to the Damages and Wrongful Classes, and setting a schedule and hearing date for final approval of the settlement and related deadlines.  This motion is supported by the Declarations of Nadia H. Dahab ("Dahab Decl.") and Juan Chavez ("Chavez Decl."), filed concurrently herewith.

**MEMORANDUM IN SUPPORT**

I.    **Background**

This proposed class action settlement resolves the above-captioned action against the State of Oregon and several high-level State officials relating to Defendants' response to the COVID-19 pandemic in Oregon Department of Corrections (ODOC) institutions.  In their operative complaint, Plaintiffs allege civil rights and state-law claims against Defendants State of Oregon, Collette Peters, Heidi Steward, Mike Gower, Mark Nooth, Rob Persson, Ken Jeske, Joe Bugher, Garry Russell, and former Oregon Governor Kate Brown ("Defendants") for the willful, deliberately indifferent, and/or negligent failure to protect adults in ODOC custody (AICs) from heightened exposure to a serious communicable disease—specifically, COVID-19.[1]  Plaintiffs

---

[1]    Patrick Allen previously was named as a defendant but has since been dismissed from this action.  ECF 630 (limited judgment of dismissal).  The claims against former Oregon Governor Kate Brown and Ken Jeske were ordered dismissed on summary judgment.  ECF 635.

Page 1 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

are current and former AICs and the personal representative of the Estate of Juan Tristan, an AIC who died of COVID-19 while in ODOC custody. Defendants deny Plaintiffs' allegations.

In April 2022, this Court granted Plaintiffs' motion to certify two classes—the Damages Class and the Wrongful Death Class. Pursuant to that order, Plaintiffs Maney, Clift, Hall, and Hart are the representatives of the Damages Class—a class of persons who were incarcerated in an ODOC facility during the class period and who tested positive for or were otherwise diagnosed with COVID-19 at least 14 days after they entered ODOC custody. ECF 377, at 53–54. Plaintiff Ramirez, on behalf of the Estate of Juan Tristan, represents the Wrongful Death Class, which includes the estates of those who were incarcerated in an ODOC facility continuously since February 1, 2020, who died during the class period, and for whom COVID-19 caused or contributed to their death. ECF 377, at 54.

The proposed settlement, described more fully below, seeks to resolve the claims of each class. Under the parties' agreement, the claims of the Wrongful Death Class would be resolved for a total payment of $33,100,000, to be distributed on a per capita basis among members of the that class. The parties' agreement would resolve the claims of the Damages Class for a total payment of $15,900,000, to be distributed pursuant to a plan—set forth below—which seeks to account for each class member's injury in a way that is objective, equitable, and efficient.

Plaintiffs now seek preliminary approval of the parties' proposed settlement.

### A.    History of this Litigation

In April 2020, Plaintiffs, on behalf of a proposed class of medically vulnerable AICs, filed this class action seeking injunctive relief to protect those AICs from the dangers posed by COVID-19 in the prison setting. ECF 1. In June 2020, this Court denied Plaintiffs' motion for a temporary restraining order and preliminary injunction. ECF 108.

In August 2020, Defendants moved for partial summary judgment on Plaintiffs' claims, arguing that qualified immunity foreclosed Plaintiffs' § 1983 claims because no clearly established law addressed the appropriate constitutional response to COVID-19 in prisons, and that the State's discretionary immunity foreclosed certain aspects of Plaintiffs' negligence claims. ECF 115. In December 2020, this Court granted in part and denied in part Defendants' motion, entering partial summary judgment on discretionary immunity grounds with respect to some aspects of Plaintiffs' negligence claim, but denying Defendants' assertion of qualified immunity on Plaintiffs' Eighth Amendment claim. ECF 149.

In February 2021, while COVID-19 vaccines were being rolled out statewide, Plaintiffs sought and obtained injunctive relief requiring Defendants to prioritize AICs for vaccine distribution in the same category as other Oregonians living in congregate settings. ECF 154; 156; 178. In its order granting that relief, this Court provisionally certified a Vaccine Class, appointed Plaintiffs Hart and Sublet as class representatives, and directed Defendants to offer AICs in ODOC facilities who had not been offered a vaccine, a vaccine "as if they had been included in Phase 1A, Group 2, of Oregon's Vaccination Plan." ECF 178.

In May 2021, Plaintiffs filed an amended complaint and moved to certify the Damages and Wrongful Death Classes. ECF 202; 203. Between May 2021 and February 2022, the Court granted Defendants a period of extended discovery for the purposes of responding to Plaintiffs' motion. ECF 237; 246. In February 2022, the Court held a hearing on the motion. ECF 352.

In April 2022, the Court granted Plaintiffs' motion for class certification and certified the Damages Class and the Wrongful Death Class. ECF 377. Under the Court's certification order, the Damages Class includes adults incarcerated in ODOC facilities who were incarcerated at any point on or after February 1, 2020, and who, while incarcerated, tested positive or were

Page 3 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

otherwise diagnosed with COVID-19 at least fourteen days after the AIC entered ODOC custody. ECF 377, at 53–54. The Wrongful Death Class includes the estates of those adults incarcerated at ODOC facilities continuously since February 1, 2020, who died during the Wrongful Death Class period, and for whom COVID-19 caused or contributed to their death. ECF 377, at 54. The class period for each class runs from March 8, 2020, to May 31, 2022. ECF 377; 387. Defendants petitioned for interlocutory appeal of the Court's class certification order, ECF 384, which the Ninth Circuit denied, ECF 388.

Also in 2021 and 2022, Defendants moved to dismiss Plaintiffs' vaccine priority claim for damages against Governor Kate Brown and then-Defendant Patrick Allen, arguing that the claim was foreclosed based on Defendants' immunity under the Public Readiness and Emergency Preparedness (PREP) Act. ECF 281. This Court denied that motion. ECF 350. Defendants appealed, ECF 367; 370, and the Ninth Circuit reversed, concluding that Governor Brown and Defendant Allen were immune from suit and liability with respect to Plaintiffs' vaccine prioritization claim only, *see Maney v. Brown*, 91 F.4th 1296, 1303 (9th Cir. 2024). The parties thereafter stipulated to the dismissal of the vaccine prioritization claim, and later to the dismissal of all other claims against Defendant Allen. ECF 628.

In November 2023, the Court granted Plaintiffs' motion for leave to file a Seventh Amendment Complaint. ECF 481. Both parties then moved for summary judgment. ECF 510; 512. In Defendants' motion against all of Plaintiffs' claims, they argued that no dispute of material fact existed on any element of Plaintiffs' federal or state-law claims. ECF 512. Defendants separately moved for summary judgment on Plaintiffs' state-law claims for damages (ECF 489), on Plaintiffs' claims against Defendant Jeske and Oregon Corrections Enterprises (ECF 494), and on the ground that the single accident or occurrence limitation under the Oregon

Page 4 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

Tort Claims Act applies to Plaintiffs' negligence claims (ECF 493). Concurrently with those motions, Defendants moved to modify the class definitions and narrow the class period, ECF 496, and to strike under *Daubert* Plaintiffs' experts and expert reports, ECF 499; 502.

In February and March 2024, the Court held a two-day hearing on the parties' summary judgment and *Daubert* motions. ECF 619; 620. The Court thereafter granted in part and denied in part the parties' motions. ECF 635; 639. From the Court's ruling on their motion for summary judgment, Defendants filed an interlocutory appeal, arguing that this Court erred in denying summary judgment on qualified immunity grounds. ECF 640. After that notice of appeal was filed, the Court confirmed the stay of these proceedings pending the resolution of Defendants' appeal. ECF 647.

In June 2025, the Ninth Circuit affirmed this Court's order denying Defendants' motion for summary judgment and denied Defendants' petition for rehearing or rehearing en banc. *See Maney v. Oregon*, No. 24-2715, 2025 WL 1794110 (9th Cir. June 30, 2025); *id.* at 9th Cir. Dkt. 53. In February 2026, Defendants filed a petition for a writ of *certiorari* in the U.S. Supreme Court. *See Oregon v. Maney*, No. 25-960 (S. Ct.). That petition is currently pending.

Over the course of these proceedings, the parties have also exchanged substantial discovery on the merits of Plaintiffs' claims. Since the case was filed, Plaintiffs have served Defendants with 182 requests for production. Dahab Decl. ¶ 16. In total, the parties have taken 97 depositions of parties, fact witnesses, and expert witnesses. Dahab Decl. ¶ 17. Almost one million pages of documents have been exchanged. Dahab Decl. ¶ 18. Plaintiffs, for their part, retained seven experts, including in epidemiology, corrections medicine, corrections administration, statistics, nursing, and criminology and criminal justice. Dahab Decl. ¶ 19.

Page 5 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

Defendants likewise retained several experts, including in statistics and mathematics, infectious disease, medicine, ventilation and HVAC, and nursing, among others.  Dahab Decl. ¶ 19.

### B.    Mediation

Since the outset of the case, the parties have attempted to resolve the claims in this case several times.  Over several days in April 2020, before Plaintiffs had alleged claims for damages, the parties participated in a Judicial Settlement Conference with the Honorable Mustafa Kasubhai.  The case did not resolve at that time.  *See* ECF 101; 102; 103; 104; 105; 106.

In 2022, after the Court certified the Damages and Wrongful Death Classes, the parties participated in a formal mediation with Senior Judge Henry Kantor.  Dahab Decl. ¶ 20.  Class Counsel and defense counsel attended for their respective clients.  Dahab Decl. ¶ 20.  Counsel vigorously represented their clients' positions, but the case did not resolve.  Dahab Decl. ¶ 20.

In early 2024, while Defendants appeal remained pending, the parties participated in informal shuttle mediation, again with Senior Judge Kantor.  Dahab Decl. ¶ 21.  Again, all counsel participated on behalf of their respective clients.  Dahab Decl. ¶ 21.  After several exchanges in January, February, and March 2024, the case did not resolve.  Dahab Decl. ¶ 21.

In April 2026, the parties agreed to convene a two-day mediation, again with Senior Judge Kantor as mediator.  Dahab Decl. ¶ 22.  On April 16, 2026, all counsel convened in person for an all-day mediation at the Oregon Department of Justice.  Dahab Decl. ¶ 22.  On April 22, 2026, the parties reconvened for a second day of mediation at the offices of Markowitz Herbold.  Dahab Decl. ¶ 22.  Over the course of the mediation, the parties separately negotiated the recovery for each class, each of which was independently evaluated by Class Counsel throughout.  Dahab Decl. ¶¶ 22–23.  By the end of the day on April 22, 2026, the parties had

reached an agreement in principle on each class.  Dahab Decl. ¶ 22.  A terms sheet was executed

thereafter, and a settlement agreement was finalized on June 10, 2026.  Dahab Decl. ¶ 22.

## II.     Terms of the Proposed Settlement

The proposed settlement provides monetary relief to both Classes.[2]  For the Wrongful

Death Class, Defendants will make a total payment of $33,100,000, inclusive of attorneys' fees,

costs, expenses, and service awards to resolve the claims of the class.  Agreement ¶ 1.  For the

Damages Class, Defendants will make a total payment of $15,900,000, inclusive of attorneys'

fees, costs, expenses, and service awards to resolve the claims of the class.  Agreement ¶ 1.

Payment of the above amounts will be made in two stages.  The first will occur shortly

after this Court enters an order preliminarily approving the proposed settlement, at which time

Defendants will make an initial payment (referred to in the agreement as the "Initial Settlement

Payment") of $10,000,000.  Agreement ¶ 1.  That payment will be made directly to the Court-

approved Settlement Administrator.  Agreement ¶ 1.  Under the agreement, $6,755,103 of the

initial payment will be allocated to the Wrongful Death Class, and $3,244,897 of that payment

allocated to the Damages Class.  Agreement ¶ 1.  The parties' agreement provides that the initial

payment is to be used solely for class member payments and reimbursement of costs and

expenses incurred to date; it is not to be allocated to attorneys' fees.  Agreement ¶ 1.

The second settlement payment will be made after the Oregon Legislative Assembly

approves and appropriates the funding necessary to pay the remaining $39,000,000 (referred to

in the agreement as the "Remaining Settlement Payment").  Agreement ¶ 1.  Under the

agreement, Defendants will make good-faith efforts to obtain the necessary legislative approval

---

[2]     A copy of the Settlement Agreement ("Agreement") is attached for the Court's review.
Dahab Dec. ¶ 2, Ex. A.

Page 7 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT
ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

to fund the remaining settlement payment during the 2027 Oregon legislative session. Agreement ¶ 1. Because the Executive branch cannot bind the Legislature to make that appropriation, the obligation to make the remaining settlement payment is conditioned on Legislative approval and appropriation. Agreement ¶ 1. The State will initiate the remaining settlement payment after entry of the Court's final approval order and final judgment and expiration of time for appeals or resolution of such appeals. Agreement ¶ 1.

If the Oregon Legislative Assembly fails to approve funding for the remaining settlement payment during the 2027 legislative session, the settlement agreement would become void, and the case would return to litigation. Agreement ¶ 2. If that occurs, the classes will retain the initial settlement payment (totaling $10,000,000) previously paid. Agreement ¶ 2. Any future settlement or judgment resulting from the claims in this case would be subject to a $10,000,000 offset for that initial payment. Agreement ¶ 2.

Before settlement payments are issued to class members, Class Counsel will develop, subject to this Court's approval, a proposed distribution plan for each class. Agreement ¶ 7. Class Counsel's proposed distribution plan is set forth in **Section III**, below. Class Counsel will separately apply to this Court for an award of attorneys' fees, costs, expenses, and service awards to be paid from the total settlement fund. Agreement ¶ 8.

The settlement agreement also provides that the total settlement fund may be reduced in certain circumstances. Under the agreement, each Damages Class member who submits a valid and timely request for exclusion will result in a reduction of the total settlement amount for the Damages Class. Agreement ¶ 3. The amount of the reduction will be determined based on the amount assigned for that class member by Class Counsel pursuant to the Court-approved distribution plan. Agreement ¶ 3. Likewise, for each Wrongful Death Class member who

Page 8 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

submits a valid and timely request for exclusion, the total settlement amount will be reduced by the per-capita, per-member share, including fees and costs, for each opt out from the class. Agreement ¶ 4. Additionally, if probate court approval is not obtained for a Wrongful Death Class member estate's settlement payment, the amount allocated to the Wrongful Death Class will be reduced by that estate's per-capita per-member share, including fees and costs, and that share will not be redistributed to the remaining estates. Agreement ¶ 4. The per-capita amount payable to each remaining estate is unaffected by any such reduction. Agreement ¶ 4.

The settlement agreement also addresses Defendants' pending appeal. Under the agreement, the parties jointly moved in the Ninth Circuit to lift the stay and issue the mandate in Defendants' appeal from this Court's order denying summary judgment on qualified immunity grounds. Agreement ¶ 12. The mandate issued on June 17, 2026. 9th Cir. Dkt. 64. Within seven days of an order from this Court granting preliminary approval of the proposed settlement, Defendants will withdraw the pending petition for a writ of *certiorari*. Agreement ¶ 12.

Also upon entry of the preliminary approval order, Plaintiffs will dismiss the individual defendants without prejudice, subject to tolling of the statute of limitations on claims against the individual defendants in the event that the settlement becomes void or is not finally approved. Agreement ¶ 9.[3] After entry of the final approval order and final judgment, Plaintiffs agree, on behalf of the Classes, to release and discharge Defendants from any and all claims relating to this case. Agreement ¶ 10.

---

[3]     As noted, *supra* note 1, Defendant Allen has been dismissed in a limited judgment. The Settlement Agreement's dismissal and tolling provision thus does not apply to Defendant Allen.

Page 9 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

### III.    Proposed Distribution Plan

Class Counsel proposes the following distribution plan for each class:

**<u>Wrongful Death Class:</u>**

Pursuant to the proposed settlement, Class Counsel proposes that the Wrongful Death Class settlement be divided equally among each of the 38 class member estates.  Each estate will receive a gross payment of approximately $871,052.  Each estate's share of attorneys' fees, costs, expenses, and service awards would be deducted from this amount.

Each class member estate will receive two payments.  A first payment will be issued after the State has made the initial settlement payment to the Settlement Administrator, and after the deadlines to issue notice, object, and opt out have passed.  That initial payment (totaling $6,755,103, for the Wrongful Death Class) will be distributed after deducting the class's share (50 percent) of costs and expenses incurred to date.  Thereafter, the total net payment will be divided equally among the class member estates.  A second payment will be made after the State makes the remaining settlement payment to the Settlement Administrator.  That payment will be distributed to class members after deducting the class's share of Court-approved attorneys' fees and any remaining expenses.

If funds remain after the second payment, the Settlement Administrator will redistribute those funds equally among the class member estates who previously received funds.  If, after the redistribution, any funds remain unclaimed, those funds will be distributed through *cy pres*.  A *cy pres* recipient has not yet been identified.  Plaintiffs propose that *cy pres* recipients be nominated by Class Counsel and approved by the Court at a later date, if necessary.  Defendants reserve the right to object to such nomination at that time.

Page 10 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT
ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

**Damages Class:**

Class Counsel proposes a tiered payment structure for Damages Class members based on the timing and nature of each member's COVID-19 illness as documented in their ODOC medical records.  Under Plaintiffs' proposed distribution, each class member will receive a base payment of $1,000, with additional amounts for qualifying criterion the class member meets:

| Payment Tier | Qualifying Criterion | Amount |
|---|---|---|
| Base payment | All Damages Class members | $1,000 |
| Early infection enhancement | COVID-19 diagnosis or positive test before April 1, 2021 (prior to vaccine availability in ODOC facilities) | +$1,000 |
| Extended symptoms enhancement | Seven or more days of documented COVID-19 symptoms, confirmed by ODOC medical record review to be conducted by the Settlement Administrator | +$2,000 |
| Hospitalization enhancement | Transfer to hospital or emergency room for COVID-19 treatment | +$37,000 |
| **Maximum gross payment** | All four criteria met | **$41,000** |

A class member may qualify for multiple enhancements.  By way of illustration, a class member diagnosed in May 2020 who experienced more than seven days of documented symptoms and was hospitalized would receive a total gross payment of $41,000 ($1,000 + $1,000 + $2,000 + $37,000).  A class member diagnosed in July 2021 with five days of symptoms and no hospitalization would receive $1,000.

As with the Wrongful Death Class, payments will be made in up to three distributions.  In the first, each class member will receive a pro rata share of the State's initial $3,244,897 payment to the Damages Class, after deducting the class's share (50 percent) of costs and expenses incurred to date.  In the second distribution, after Oregon Legislative appropriation of the remaining settlement funds, each class member will receive the remainder of their individual

Page 11 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

payment as calculated under the formula set forth above, after deducting the class's share of attorneys' fees and any remaining expenses.  If more than four percent of the total Damages Class fund remains unclaimed after the second payment, a third distribution will occur, in which undistributed funds are divided equally among class members who were located for prior distributions.[4]  Funds remaining after the third distribution, or any funds remaining after the second distribution if the undistributed amount is four percent or less, will be distributed through *cy pres*.  A *cy pres* recipient has not yet been identified.  Plaintiffs propose that *cy pres* recipients be nominated by Class Counsel and approved by the Court at a later date, if necessary. Defendants reserve the right to object to such nomination at that time.

## IV.    Proposed Notice Plan

Plaintiffs propose the following plan for notice of this proposed class action settlement.

### A.    <u>**Wrongful Death Class**</u>

Notice to the Wrongful Death Class will be directed to the estates and beneficiaries of those persons incarcerated at an ODOC facility continuously since February 1, 2020, who died during the Wrongful Death Class period, and for whom COVID-19 caused or contributed to their death.  ECF 377.  The Wrongful Death Class period runs from March 8, 2020, to May 31, 2022.

**Form of Notice:** A proposed "Class Action Notice" for the Wrongful Death Class is attached as **Exhibit B**.  The proposed notice is designed to incorporate best practices developed through original research on comprehensibility and effectiveness of class action notices by the

---

[4]    Class Counsel proposes 4 percent as a reasonable threshold for a third distribution based on a comparison of the cost of undertaking that distribution and the corresponding monetary benefit that class members would receive.

Impact Fund, a nonprofit, nonpartisan organization with considerable expertise in class action litigation.  Dahab Decl. ¶ 3.  Defendants do not oppose the proposed notice.  Dahab Decl. ¶ 3.

**Notice Administrator:** Plaintiffs propose that Verita Global, LLC ("Verita") serve as the independent Settlement Administrator for the settlement of this case. Dahab Decl. ¶¶ 10–13. Attached as **Exhibit H** to this filing is a resume for Verita.

**Timeline for Settlement Notice:** Plaintiffs propose that the settlement notice be issued to the Wrongful Death Class as soon as practicable, but not later than 90 days, after this Court enters an order granting preliminary approval of the proposed settlement and notice plan. Plaintiffs further propose that the deadline for members of the Wrongful Death Class to opt out of the proposed settlement be 90 days after notice is issued.

**Methods of Notice:** Under the proposed plan, the Settlement Administrator will mail the settlement notice directly to any counsel for an estate's personal representative known to Class Counsel and, in the absence of an identified personal representative, to any known and findable child, spouse, parent, other beneficiary of a class member estate for whom contact information is available to Class Counsel.  Plaintiffs further propose that, before sending notice, the Settlement Administrator update any last known addresses for any attorney for the personal representative or, in the event that a personal representative is not known, to any identified child, spouse, parent, other beneficiary, of a class member estate for whom contact information is available to Class Counsel, through the U.S. Postal Service's National Change of Address database.  The Settlement Administrator will also make reasonable efforts to update addresses and resend notices for any returned notice mailings.

Since the Wrongful Death Class initially was certified, Class Counsel has undertaken substantial efforts to identify the statutory beneficiaries for each member of the Wrongful Death

Page 13 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

Class.  Dahab Decl. ¶ 4.  Class Counsel has identified and confirmed that estates have been created for 21 class members, and has referred additional estates to probate counsel to begin the process of seeking and appointing a personal representative.  Dahab Decl. ¶ 4.  Class Counsel will continue those efforts with the assistance of the Settlement Administrator.  Dahab Decl. ¶ 4.

**Additional Communication with Class Members:** Plaintiffs further propose additional mechanisms through which Wrongful Death Class members, including beneficiaries and personal representatives of class member estates, can communicate with the Settlement Administrator and Class Counsel, learn about the proposed settlement, and opt out of the settlement if they choose to do so.  Those mechanisms include (1) a dedicated website, and (2) a toll-free number accessible to all class members.

The website and toll-free number will be created and maintained by the Court-approved Settlement Administrator.[5]  The website will include the information shown on the settlement notice, answers to FAQs, important case documents (including but not limited to the Settlement Agreement, the motion for preliminary approval, the motion for final approval, and the motion for attorneys' fees, costs, and service awards), and contact information for the Settlement Administrator and Class Counsel.  The toll-free number will include a recorded set of answers to FAQs, with an option to dial directly to the offices of Class Counsel, as well as live telephone support from the Settlement Administrator during business hours.

**Mechanism for Objecting:** Wrongful Death Class members may object to the settlement by sending a letter to the Court that is postmarked by a date no later than 90 days after the notice

---

[5]    Class Counsel will work with the Settlement Administrator to determine whether the website created for class pendency notice, www.odoccovidclassaction.com, may be used as the settlement website.

Page 14 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

is issued.  The letter must state whether the objection applies only to the class member, to a part of the class, or to the entire class.  The letter should state, among other things, the reasons for the objection and whether the class member or their lawyer (if they have one) intends to appear at the final fairness hearing.

**Mechanism for Opting Out of the Class:** Under Oregon law, for the Wrongful Death Class, a decision to opt out of the class may be made only by (1) a court-appointed personal representative or (2) jointly by all beneficiaries to the wrongful death action.  *See Christensen v. Epley*, 287 Or. 539, 545–46 (1979); *Haugh v. Kilmer*, 71 Or. App. 345, 347–48 (1984).  For that reason, the parties propose that any decision to opt out of the Wrongful Death Class must be communicated directly to the Settlement Administrator or Class Counsel by letter postmarked no later than 90 days after the date of notice.  The proposed settlement notice advises beneficiaries that, if an estate has not yet been created, they should immediately contact Class Counsel or another attorney to assist them in doing so.

**Impacts on Government Benefits:** Plaintiffs anticipate that some beneficiaries of Wrongful Death Class member estates may be receiving government benefits, and that they may have questions about whether the estate's settlement payments—*i.e.*, any distribution they receive after the settlement and distribution plan is approved by the probate court—may affect their eligibility for those benefits.  Benefit programs include, for instance, Supplemental Security Income (SSI), Oregon Medicaid, In-Home Care/Long-Term Care, Food Stamps (SNAP), and Subsidized Housing (Section 8/HUD).

As part of the settlement, Plaintiffs propose to make available to beneficiaries and personal representatives services they can access for advice about whether the payment will affect their eligibility for these programs.  Plaintiffs further propose that each settlement notice

Page 15 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

include as an insert a summary of those services and how Wrongful Death Class members can access them. Plaintiffs' proposed insert is attached as **Exhibit E**. The proposed settlement notice (**Exhibit B**) also includes a Q&A that refers class members to the insert.

Whether receipt of settlement payments impacts a government benefit turns on the amount received, the specific program, and—at times—the uses to which settlement proceeds are put. It is therefore class-member-specific. Class Counsel has previously worked with settlement planning provider, Sage Settlement Consulting, to provide this service, and proposes to retain them to assist class members with these questions. This service would be provided at a total cost of $100,000.

**Structuring Settlement Payments:** Finally, Plaintiffs anticipate that some members of the Wrongful Death Class may wish to structure their settlement payment through a mechanism that may pay beneficiaries over time. Should they choose to do so, Plaintiffs propose to make available to beneficiaries and personal representatives services they can access for advice and assistance in that process. Plaintiffs' proposed settlement notice (**Exhibit B**) includes a Q&A that refers class members to that service. Class Counsel proposes to engage Sage Settlement Consulting, *see supra*, to provide this service, which is included in the cost set forth above.

### B.      Damages Class

The Damages Class notice will be directed to all persons incarcerated in an ODOC facility on or after February 1, 2020; who, while incarcerated, tested positive or were otherwise diagnosed with COVID-19; and if they became incarcerated after February 1, 2020, tested positive or were otherwise diagnosed with COVID-19 at least fourteen days after they entered ODOC custody. ECF 377. The Damage Class period runs from March 8, 2020, to May 31, 2022. ECF 386; 387.

Page 16 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

**Form of Notice:** A proposed "Class Action Notice" for the Damages Class is attached as **Exhibit C**.  Again, this proposed notice is designed to incorporate best practices developed through original research on comprehensibility and effectiveness of class action notices by the Impact Fund, a nonprofit, nonpartisan organization with considerable expertise in class action litigation.  Dahab Decl. ¶ 5.  Defendants do not oppose the proposed notice.  Dahab Decl. ¶ 5.

**Settlement Administrator:** As with the Wrongful Death Class, Plaintiffs propose that Verita serve as the independent Settlement Administrator.  Dahab Decl. ¶ 10–13.   Attached as **Exhibit H** to this filing is a resume for Verita.

**Timeline for Settlement Notice:** Plaintiffs propose that the settlement notice be issued as soon as practicable but not later than 90 days after this Court enters an order granting preliminary approval of the proposed settlement and notice plan.  Plaintiffs further propose that the deadline for members of the Damages Class to opt out of the proposed settlement be 90 days after notice is issued.  For class members who seek to dispute the amount of their gross payment, Plaintiffs propose that the deadline to do so is also 90 days after the settlement notice is issued.

**Methods of Notice:** Plaintiffs propose to send notice by U.S. mail directly to Damages Class members, either at the institution in which they currently are incarcerated or, if they are no longer incarcerated, at their last known address.  Based on information obtained from Defendants, Plaintiffs understand that approximately 25 percent of the Damages Class remains incarcerated.

Since this Court issued its order certifying the Damages Class, the parties have jointly maintained a list of Damages Class members, including those who tested positive for COVID-19 while incarcerated and those who received a "reactive" result on a COVID-19 antibody test while incarcerated.  The parties used that list to jointly issue notice of pendency to Damages

Page 17 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

Class members.  Class Counsel has updated the addresses for class members who have provided updated addresses over the course of this litigation.  Several AICs who provided evidence that they meet the class definition have also been added to the Damages Class list.  That list, which the parties are currently finalizing, will be used to provide notice to the Damages Class.

For class members who have been released from ODOC custody, the Administrator will update addresses using the person's last known address on file with ODOC or maintained in the records of Class Counsel and then send notice.  Class Counsel will also make reasonable efforts to contact released Damages Class members through short notices to transitional housing and/or adult reentry programs.  A copy of Plaintiffs' proposed short notice is attached as **Exhibit D**.

For class members who remain incarcerated, the Administrator will send notice to the class member at the institution in which they are incarcerated, which Defendants will provide.

Notices will be available to Damages Class members in both English and Spanish.

**Additional Communication with Class Members:**  Plaintiffs further propose additional mechanisms through which Damages Class members can communicate with the Settlement Administrator and Class Counsel, learn about the proposed settlement, and opt out of the settlement if they choose to do so.  Those mechanisms include (1) a dedicated website, and (2) a toll-free number accessible to all class members, including those who remain in ODOC custody.

The website and the toll-free number will be created and maintained by the Court-approved independent Settlement Administrator.[6]  The website will include the information shown on the settlement notice, answers to FAQs, important case documents (including but not

---

[6]    Again, Class Counsel will work with the Settlement Administrator to determine whether the website created for class pendency notice, www.odoccovidclassaction.com, may be used as the settlement website.

Page 18 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

limited to the Settlement Agreement, the motion for preliminary approval, the motion for final approval, and the motion for attorneys' fees, costs, and service awards), and contact information for the Settlement Administrator for Class Counsel. The toll-free number will include a recorded set of answers to FAQs, with an option to dial directly to the offices of Class Counsel, as well as live telephone support from the Settlement Administrator during business hours. Plaintiffs propose that Defendants permit incarcerated class members to call the Settlement Administrator at no charge, and Defendants are currently working to confirm that that is possible.

**Mechanism for Objecting:** Class members may object to the settlement by sending a letter to the Court that is postmarked by a date no later than 90 days after the notice is issued. The letter must state whether the objection applies only to the class member, to a part of the class, or to the entire class. The letter should state, among other things, the reasons for the objection and whether the class member or their lawyer (if they have one) intends to appear at the final fairness hearing.

**Mechanism for Opting Out:** Class members may opt out of the settlement in one of two ways. The first will be to send an opt-out form or letter to the Settlement Administrator requesting that the class member be excluded from the settlement. Each Damages Class member will receive an opt-out form enclosed with their settlement notice. A proposed "Opt Out Form" for the Damages Class is attached as **Exhibit F**. Defendants do not object to this proposed form. The opt-out form or letter must be mailed to the Administrator and postmarked no later than 90 days after the date the notice is issued.

The second way to opt out of the settlement will be to submit an opt-out request online. For Damages Class members who are not incarcerated or otherwise have access to the Internet,

Page 19 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

they can submit a form through the Settlement Administrator's dedicated website requesting to be excluded.  The form must be submitted online within 90 days of the date the notice is issued.

Instructions for opting out of the proposed settlement are clearly set forth in the proposed notice attached as **Exhibit C**.

**Impacts on Government Benefits:** As with the Wrongful Death Class, Plaintiffs anticipate that some members of the Damages Class may be receiving government benefits and may have questions about whether their settlement payments affect their eligibility for those benefits.  Benefit programs include Supplemental Security Income (SSI), Oregon Medicaid, In-Home Care/Long-Term Care, Food Stamps (SNAP), and Subsidized Housing (Section 8/HUD).

Plaintiffs also propose to make available to Damages Class members services they can access for advice about whether the settlement payment will affect their eligibility for these programs.  Plaintiffs propose that each settlement notice include as an insert a summary of those services and how Damages Class members can access them.  Plaintiffs' proposed insert is attached as **Exhibit E**.  The proposed settlement notice (**Exhibit C**) also includes a Q&A that refers class members to the insert.  Class Counsel proposes to engage Sage Settlement Consulting, *see supra*, to provide this service, which is included in the cost set forth above.

**Pooled Trust Option:** Finally, Plaintiffs anticipate that certain members of the Damages Class—*i.e.*, those who were hospitalized and are receiving a gross settlement payment of at least $38,000—may wish to deposit their settlement payment into a pooled discretionary trust.  Should they choose to do so, Plaintiffs propose to make available to those class members services they can access for advice and assistance in that process.  To provide information on that service, Plaintiffs propose to include in the settlement notice for class members receiving a gross payment of at least $38,000 the insert attached as **Exhibit G**.  Class Counsel proposes to engage

Page 20 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

Sage Settlement Consulting, *see supra*, to provide this service, which is included in the cost set forth above.

**Check Cashing Reminder Postcards:** Depending on Damages Class check-cashing rates provided by the Settlement Administrator after the initial payment is distributed, Plaintiffs may propose that the Settlement Administrator send postcards reminding class members to cash their settlement checks.  If that becomes necessary, Plaintiffs will submit the proposed postcard to the Court for review and approval before it is mailed.

## V.    Argument

The Court should grant preliminary approval of the proposed settlement and notice plan.

### A.    The Court should grant preliminary approval of the proposed settlement.

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  Under that rule, a district court considers whether (A) the class representatives and Class Counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; and (C) the relief provided by the settlement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (D) the proposal treats class members equitably relative to each other.  *Id.*

The Ninth Circuit has separately set forth eight factors—the so-called *Churchill* factors—this Court must consider in determining the fairness and adequacy of the proposed settlement under Rule 23(e)(2).  Those factors are: (1) the strength of the plaintiffs' case; (2) the risk,

Page 21 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class

action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

completed and the stage of the proceedings; and (6) the experience and views of counsel; (7) the

presence of a governmental participant; and (8) the reaction of the class members to the proposed

settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Hanlon*

*v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Torrisi v. Tucson Elec. Power Co.*, 8

F.3d 1370, 1375 (9th Cir. 1993).[7]

Additionally, "although 'strong judicial policy . . . favors settlements,' the settlement may

not be the product of collusion among the negotiating parties." *Churchill Vill.*, 361 F.3d at 576

(quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). In *In re*

*Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011), the Court

identified three "subtle signs that class counsel have allowed pursuit of their own self-interests

and that of certain class members to infect the negotiations." *Id.* at 946–47. Those are "(1) when

counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a

'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an

agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause

that returns unawarded fees to the defendant, rather than the class." *Briseño v. Henderson*, 998

F.3d 1014, 1023 (9th Cir. 2021) (quoting *Bluetooth*, 654 F.3d at 947) (second internal quotations

and alterations omitted). "If these indicia of implicit collusion are present, then a proposed

settlement 'must withstand an even higher level of scrutiny for evidence of collusion or other

---

[7]     In 2018, Rule 23(e) was amended to reflect many of the *Churchill* factors, although the "remaining ones can still be considered." *In re Calif. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025). For the sake of completeness, Plaintiffs address each of the Rule 23(e) factors and the *Churchill* factors separately.

conflicts of interest than is ordinarily required under Rule 23(e).' " *Calif. Pizza Kitchen*, 129 F.4th at 675 (quoting *Bluetooth*, 654 F.3d at 946).

This Court must comprehensively review the *Churchill* and *Bluetooth* factors. *Bluetooth*, 654 F.3d at 947 ("The district court's approval order must show not only that 'it has explored [the *Churchill*] factors comprehensively,' but also that the settlement is 'not[ ] the product of collusion among the negotiating parties.' " (quoting *In re Mego Fin. Corp. Securities Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)) (alterations in *Bluetooth*). When examining a proposed settlement, the Court must take the settlement "as a whole, rather than [in] individual component parts." *Hanlon*, 150 F.3d at 1026. "The settlement must stand or fall in its entirety." *Id.*

At the preliminary approval stage, the Court must consider whether, based on all the factors set forth above, the settlement is "within the range of possible approval, *i.e.*, whether the settlement is 'fair, reasonable, and adequate' and 'is not the product of fraud or overreaching by, or collusion between, the negotiating parties.' " *Fatnani v. JPMorgan Chase & Co.*, 2024 WL 7085446, at \*1 (D. Or. Oct. 18, 2024) (quoting *Officers for Just. v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)).

## 1. The Rule 23(e)(2) and *Bluetooth* factors support preliminary approval of the proposed settlement.

The Rule 23(e)(2) factors support preliminary approval of the proposed settlement. It is also not the product of collusion among the parties. The *Bluetooth* factors also support approval.

### a. The class representatives and Class Counsel have adequately represented the class.

The class representatives and Class Counsel have vigorously and capably represented the interests of both classes throughout this litigation. As the Court knows, and as set forth above, this case has been pending since April 2020, and Class Counsel has litigated it through multiple

Page 23 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

rounds of briefing on dispositive motions, two successful class certification motions, four trips to the Ninth Circuit, and several rounds of mediation. Class Counsel are experienced civil rights and class action attorneys who have devoted substantial resources to this case over more than six years. The Plaintiffs and class representatives similarly have actively participated in the litigation and have interests that are co-extensive with those of the classes they represent. There is no basis to question the adequacy of representation. This factor supports approval.

> **b.      The proposed settlement is the result of arm's-length, non-collusive negotiations.**

The proposed settlement was reached through a rigorous, adversarial process that bears none of the hallmarks of collusion of which the Ninth Circuit in *Bluetooth* has warned. The parties engaged in formal private mediation on two separate occasions, with an informal, shuttle mediation session in between. The second formal mediation took place over two days in April 2026, with experienced counsel, including Class Counsel, vigorously representing their respective clients throughout.

Nor is any collusion evident from the face of the settlement agreement. This is not a scenario in which Class Counsel will "receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Bluetooth*, 654 F.3d at 947 (quoting *Hanlon*, 150 F.3d at 1021). The settlement agreement does not include a "clear sailing" arrangement, which the Ninth Circuit has warned "carries 'the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class.'" *Id.* (citing *Lobatz v. U.S. W. Cellular of Calif., Inc.*, 222 F.3d 1142, 1148 (9th Cir. 2000)). There is also no arrangement for any unclaimed class funds or unawarded fees to revert to the State. *See id.*

Page 24 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

Furthermore, the parties negotiated the recovery for each of the two Classes separately and independently.  Before the mediation, Class Counsel retained ethics counsel to advise on how best to protect each class's interest during mediation, and further to that advice, Counsel independently evaluated each Class's recovery throughout the negotiations.  Dahab Decl. ¶ 23.

Finally, the proposed settlement followed years of hard-fought litigation, including four appeals to the Ninth Circuit and a pending petition for a writ of *certiorari* before the United States Supreme Court.  These circumstances strongly support the conclusion that the settlement is the product of arm's-length, non-collusive bargaining and should be approved.

**c.     The relief provided by the settlement is adequate.**

The relief provided by the settlement is adequate taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement.  Fed. R. Civ. P. 23(e)(3)(C).

**Costs, risks, and delay of further litigation.**  The proposed settlement provides substantial, certain relief to both classes in the face of significant litigation risk.  Although this Court has twice rejected Defendants' qualified immunity arguments and the Ninth Circuit has affirmed, a pending petition for *certiorari* before the Supreme Court creates meaningful uncertainty.  Qualified immunity doctrine is an evolving area of law, and Supreme Court review—if granted—could result in reversal, potentially reducing recovery for class members. Likewise, Plaintiffs' state-law claims, to the extent that they are subject to the limitations set forth under the Oregon Tort Claims Act, create uncertainty even in the event that Plaintiffs

Page 25 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

prevail.  Furthermore, evolving standards on class action procedure could lead to reexamination and revision of the Court's class certification decision.  Finally, any post-trial judgment in Plaintiffs' favor would be subject to further appellate review, adding years of delay before class members would see any recovery. The settlement eliminates these risks and provides class members with timely, meaningful compensation.  This factor supports approval.

**Effectiveness of the proposed method of distributing relief.**  The proposed distribution plans for both classes are straightforward, administratively workable, and designed to deliver meaningful relief to class members efficiently.  For the Wrongful Death Class, the settlement amount will be divided equally among the 38 class member estates, with two payments, and the possibility of a redistribution of unclaimed funds to maximize recovery to class member estates. For the Damages Class, distribution will be based on objective, documented criteria drawn from ODOC medical records, with payments calibrated to the severity of each class member's acute COVID-19 infection—from a base payment of $1,000 to a maximum of $41,000 for the most seriously impacted class members.  The use of existing ODOC records to determine payment categories eliminates the need for class members to submit individualized claims, reducing administrative burden and the risk that eligible class members will fail to recover.  An experienced, independent Settlement Administrator will oversee the notice, records review, and distribution process.  This factor supports approval.

**Terms of the proposed attorneys' fee award.**  Class Counsel will apply to this Court for an award of attorneys' fees, costs, and expenses to be paid from the total settlement fund. The motion for fees will be filed sufficiently in advance of the deadline to allow class members a full opportunity to review and object.  The settlement itself is structured as a common fund, which aligns the interests of Class Counsel with those of the classes and improves transparency

Page 26 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

as to the total dollars available for distribution.  Class Counsel anticipates that the requested fee will be no greater than 20 percent of the common fund, and that costs and expenses will be approximately $1.3 million.  Dahab Decl. ¶ 33.  This factor favors approval.

**Agreements required to be identified under Rule 23(e)(3).**  The settlement agreement contains no side agreements of the kind contemplated by Rule 23(e)(3) that would require disclosure here.  Dahab Decl. ¶ 2.  This factor favors approval.

> ### d.    The settlement treats class members equitably relative to each other.

The settlement also  treats class members equitably.  For the Wrongful Death Class, each of the 38 estates will receive an equal per-capita share of the settlement fund.  For the Damages Class, the tiered payment structure ensures that class members who suffered more serious harm—those infected before vaccines were available in ODOC, those who experienced prolonged symptoms, and those who were hospitalized—receive greater compensation, while every class member receives a minimum a base payment acknowledging their injury.  This approach appropriately and equitably reflects the varying nature and severity of class members' COVID-19 infection.  This factor favors approval.

> ### 2.    The *Churchill* factors also support preliminary approval of the proposed settlement.

The *Churchill* factors also support approval of the proposed settlement.  Again, those factors are: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel; (7) the presence of a governmental

Page 27 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

participant; and (8) the reaction of the class members to the proposed settlement. *Churchill*, 361 F.3d at 575.

### a.    The strength of Plaintiffs' case

Throughout this litigation, Plaintiffs have demonstrated that their claims have merit. This Court twice denied Defendants' qualified immunity defense at summary judgment, and the Ninth Circuit affirmed. The classes have certified Eighth Amendment and negligence claims arising from Defendants' management of COVID-19 in ODOC facilities during the early and most dangerous phase of the pandemic. And the Court denied Defendants' motions for summary judgment against each and every element of Plaintiffs' federal and state-law claims, ruling that Plaintiffs' § 1983 claim, along with several specifications of negligence, should go to trial.

At the same time, however, Plaintiffs acknowledge that prevailing at trial is not certain. Defendants continue to dispute liability, and the pending petition for *certiorari*—asserting entitlement to qualified immunity as a matter of law—introduces the possibility of a significant adverse ruling before trial is reached. The proposed settlement appropriately reflects the strength of Plaintiffs' position and the real risks that remain. This *Churchill* factor favors approval.

### b.    The risk, expense, complexity, and likely duration of further litigation

This case has been pending for more than six years and, absent the proposed settlement, would face further substantial proceedings, including the resolution of Defendants' pending petition for a writ of *certiorari*, trial preparation, trial itself, post-trial motions, and likely additional, protracted appellate litigation. Even setting aside the pending Supreme Court proceedings, bringing a complex, multi-plaintiff class action involving claims of negligence and deliberate indifference to trial—with a State defendant and extensive expert and fact witness

Page 28 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT
ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

testimony—would be costly, time-consuming, and uncertain, all of which are detrimental to the interests of both classes. The settlement avoids these costs and delays and delivers relief to class members now rather than at the end of a litigation process that could continue for many years. This *Churchill* factor favors approval.

>### c. The risk of maintaining class action status throughout trial

Class certification was heavily litigated and is subject to continuing scrutiny. Although this Court certified two classes in April 2022 and the Ninth Circuit denied Defendants' Rule 23(f) petition for interlocutory review, a certified class may be decertified or modified at any point before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C). Defendants may also appeal the class certification order upon entry, if any, of a final, post-trial judgment in Plaintiffs' favor. Thus, there is a nontrivial risk that class certification could be challenged again, either in this Court or on appeal. The proposed settlement eliminates this risk. This factor favors approval.

>### d. The amount offered in settlement

The proposed settlement—$33,100,000 for the Wrongful Death Class and $15,900,000 for the Damages Class—represents a substantial recovery for each Class. For the Wrongful Death Class, each of the class member estates will receive a gross payment of approximately $871,052. For the Damages Class, individual recoveries will range from $1,000 to $41,000 depending on the severity and timing of each class member's illness, with meaningful additional payments for those who suffered the most serious harm.[8] These amounts reflect the strength of

---

[8] Additionally, any unclaimed funds from either class will be redistributed among class members who were located for prior distributions. For instance, if Class Counsel and the Administrator is able to identify only 37 estates in the Wrongful Death Class, a third distribution would increase the gross recovery of the remaining estates. Likewise, if only 80 percent of the Damages Class settlement funds are claimed, a third distribution would increase the gross recovery of the remaining class members.

Page 29 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

Plaintiffs' claims as well as the risks of further litigation, including the risk that some claims could be eliminated if the Supreme Court grants *certiorari* and reverses on qualified immunity grounds. The proposed settlement is the product of hard-fought, informed negotiations and represents a fair outcome under the circumstances. This factor favors approval.

### e. The extent of discovery completed and the stage of the proceedings

As the Court knows, this case has been extensively litigated. The parties have engaged in substantial discovery, including review of voluminous ODOC records. Collectively, the parties have taken 97 depositions and exchanged almost one million pages of discovery. Dahab Decl. ¶¶ 17, 18. Each retained and prepared several experts and expert reports. Dahab Decl. ¶ 19. The Court has ruled on multiple rounds of dispositive motions; both parties have moved for summary judgment; and the case has been before the Ninth Circuit on four different occasions. By the time the latest mediation concluded, Class Counsel had a thorough understanding of the strengths and weaknesses of the classes' claims and Defendants' arguments in response. The proposed settlement is thus the product of well-informed negotiations based on a complete factual and legal record. This *Churchill* factor favors approval.

### f. The experience and views of counsel

Class Counsel are experienced litigators with substantial expertise in civil rights, class actions, and in litigating against governmental defendants. *See* Dahab Decl. ¶¶ 24–30; Chavez Decl. ¶¶ 2–12. Defense counsel are similarly experienced. Both sides negotiated at arm's length, with the benefit of more than two rounds of private mediation. Class Counsel supports the settlement as a fair, reasonable, and adequate resolution of the Classes' claims. That assessment, based on years of experience with this litigation and class action and civil rights

Page 30 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

practice generally, is entitled to significant weight. *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."). This factor favors approval.

### g. The presence of a governmental participant

Defendants here include the State of Oregon and several high-level state officials. The involvement of governmental defendants presents both additional litigation risk—including immunity defenses and the complexities of seeking and collecting a judgment against the State— as well as limitations on the settlement structure. Because the Executive branch cannot bind the Oregon Legislative Assembly to make an appropriation, the remaining settlement payment after the initial $10,000,000 is conditioned on legislative approval during the 2027 Oregon legislative session, with the Executive branch committed to making good-faith efforts to secure that appropriation. This structure reflects the constitutional constraints on the settlement of claims against the State and is a reasonable accommodation of those constraints given the substantial initial payment, which is unconditional, and the protections built into the agreement in the event legislative funding is not secured. *See, e.g.*, *Hernandez v. Garland*, 2022 WL 1176752, at *7 (C.D. Cal. Mar. 28, 2022) (considering preservation and accommodation of public resources in Rule 23(e) analysis). This factor favors approval.

### h. The reaction of the class members to the proposed settlement

Notice has not yet been issued to the classes, so the reaction of class members is not yet known. Objections or opt-outs will be due after notice is issued. Plaintiffs' proposed notice plan is robust and designed to reach class members effectively, including through U.S. mail, a dedicated settlement website, and a toll-free telephone hotline—ensuring that class members

have a full and fair opportunity to assess the settlement, ask questions, and, if they choose, object or opt out.

*   *   *   *   *

For the foregoing reasons, the proposed settlement satisfies the standard for preliminary approval. The Rule 23(e)(2) factors confirm that the settlement is fair, reasonable, and adequate: it was reached through arm's-length, non-collusive negotiations; it provides substantial, certain relief to both classes in the face of meaningful litigation risk; and it treats class members equitably. The *Churchill* factors independently support approval, reflecting the strength of Plaintiffs' claims, the risks and costs of continued litigation, the advanced stage of the proceedings, the experience of counsel on both sides, and the substantial recovery achieved for each class. And none of the *Bluetooth* warning signs of collusion are present here. Plaintiffs respectfully suggest that the settlement is certainly "within the range of possible approval" and requests that the Court grant preliminary approval.

**B.      Plaintiffs' proposed notice plan complies with Rule 23(e) and due process.**

Under Rule 23(e)(1)(B), the Court "must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement, voluntary dismissal, or compromise. Class members are entitled to the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). "Notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). The notice must state clearly in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the claims, issues, or defenses;

Page 32 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

(iv) that the class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment under Rule 23(c)(3).  Fed. R. Civ. P. 23(c)(2)(B).

Plaintiffs have developed a proposed notice plan with the assistance of Verita, Plaintiffs' proposed Settlement Administrator, that will include direct mail notice to all class members. Verita will also maintain a settlement website with detailed information about the settlement and a toll-free number that class members can call to obtain more information.

All of the Plaintiffs' proposed notices are drafted in plain English so they will be easy to understand.  They include a summary of the claims and defenses in the case, important information about the settlement's terms, the deadline to request exclusion or object to the settlement and instructions for how to do so, the date of the Fairness Hearing (and that the hearing date may change without further notice), as well as information specific to each class that the class member needs to make a decision.  For instance, for the Damages Class, the notice makes clear that the class member has a right to dispute their estimated settlement payment based on a review of the class member's medical records.  For the Wrongful Death Class, the notice makes clear that an estate should be created—and a personal representative appointed— before the settlement payment can be distributed.  The notices also provide information about impacts on government benefits, federal and state taxes, and other questions that may arise for individual class members.  They provide detailed information about the impact of the settlement on each class members' rights, including that class members who do not opt out will not be able to sue individually and will release any related claims.  Finally, the notices provide contact information for the Settlement Administrator, Class Counsel, and the Court.

Page 33 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

The proposed notice plan complies with Rule 23 and due process. In Plaintiffs' view, the notice plan provides the best notice practicable under the circumstances.

### C.    Timely notice under CAFA will be provided.

Pursuant to 28 U.S.C. § 1715 and the Settlement Agreement, Class Counsel or the Settlement Administrator will serve notice of the proposed settlement upon the Attorney General of the United States and the Oregon Attorney General within 10 days of the filing of this motion. Dahab Decl. ¶ 34. Because the classes consist of individuals who were incarcerated in ODOC facilities during the class period, many class members are likely to reside in Oregon. Dahab Decl. ¶ 35. Because, however, the current address of many released class members is not yet known, notice pursuant to 28 U.S.C. § 1715 will be provided to regulators in all 50 states. Dahab Decl. ¶ 35. Once CAFA notice is complete, the parties will file confirmation of service with the Court.

## VI.    Proposed Schedule for Final Approval

To the extent that the Court grants this motion, Plaintiffs propose the following schedule:

| Event | Deadline |
|---|---|
| Deadline to initiate Initial Settlement Payment to Settlement Administrator | 7 days after entry of preliminary approval order and State's receipt of complete payment instructions from Plaintiffs |
| Deadline for Settlement Administrator to issue notice | 90 days after entry of preliminary approval order |
| Deadline to file motions for attorneys' fees, costs, expenses, and service awards | 45 days after deadline to issue notice |
| Deadline for class members to file objections, request exclusions, or (for Damages Class only) dispute gross settlement payment | 90 days after deadline to issue notice |
| Hearing on motion for reimbursement of costs and expenses incurred to date | Date to be determined by Court. |

Page 34 – PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, APPOINTMENT OF NOTICE AND SETTLEMENT ADMINISTRATOR, AND APPROVAL OF NOTICE PLAN

| Event | Deadline |
|---|---|
| Deadline to issue first settlement payment to class members (Damages and Wrongful Death Class) | 21 days after entry of order on motion for reimbursement of costs and expenses incurred to date |
| Deadline to complete review of Damages Class member disputes | 60 days after deadline to dispute gross settlement payment |
| Deadline to notify Damages Class member of outcome of dispute review | 14 days after deadline to complete review |
| Deadline to file motion for final approval | 14 days after legislative approval and appropriation of Remaining Settlement Payment |
| Fairness Hearing | Date to be determined by Court. |
| Effective Date | The first date by which the following has occurred: the Court has entered a final approval order and final judgment and expiration of time for appeals or resolution of such appeals has run. |
| Deadline to initiate Remaining Settlement Payment to Settlement Administrator | 7 days after Effective Date, the State has received complete payment instructions from Plaintiffs, and DAS has received the funding from the legislative appropriation necessary to make the payment |
| Deadline to issue second settlement payment to class members (Damages and Wrongful Death Classes) | 60 days after Effective Date |

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court enter an order (1) granting preliminary approval of the proposed settlement; (2) directing notice to be disseminated to Damages and Wrongful Death Class members in the form and manner proposed by Plaintiffs; (3) appointing Verita as the Settlement Administrator; and (4) setting a schedule and hearing date for final approval of the settlement and related deadlines.

DATED this 24th day of June, 2026.

SUGERMAN DAHAB

By: /s/ Nadia H. Dahab

**David F. Sugerman**, OSB No. 862984
**Nadia H. Dahab**, OSB No. 125630
**Jessica Greenlick Snyder,** OSB No. 134911
101 SW Main Street, Suite 910
Portland, Oregon 97204
Tel: 503-228-6474
david@sugermandahab.com
nadia@sugermandahab.com
jessica@sugermandahab.com

**Juan C. Chavez**, OSB No. 136428
OREGON JUSTICE RESOURCE CENTER
P.O. Box 5248
Portland, OR 97208
Tel: 503-944-2270
jchavez@ojrc.info

*Attorneys for Plaintiff and the Class*